# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| BRITTANY WATTS | ) | CASE NO. 4:25-cv-00049 |
| | ) | |
| Plaintiff | ) | JUDGE SARAH LIOI |
| | ) | |
| v. | ) | **MOTION FOR JUDGMENT ON THE PLEADINGS ON BEHALF OF DEFENDANTS BON SECOURS MERCY HEALTH, MERCY HEALTH YOUNGSTOWN LLC D/B/A ST. JOSEPH WARREN HOSPITAL, CONNIE MOSCHELL, JORDAN CARRINO, SUZANNE ZUPKO, AND FRED RAINES** |
| | ) | |
| BON SECOURS MERCY HEALTH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Now come Defendants, Bon Secours Mercy Health, Mercy Health Youngstown LLC d/b/a St. Joseph Warren Hospital, Connie Moschell, Jordan Carrino, Suzanne Zupko, and Fred Raines (hereinafter "Defendants"), by and through counsel, and respectfully move this Court pursuant to Civ.R. 12(c) for judgment on the pleadings as to Plaintiff's § 1983 claims and state law claims for malicious prosecution, intentional infliction of emotional distress, unauthorized disclosure of confidential medical information, and conspiracy. Even when construing the allegations in the Amended Complaint in Plaintiff's favor, such claims fail as a matter of law. A Memorandum in Support is attached hereto and incorporated by reference herein.

Respectfully submitted,
**REMINGER CO., L.P.A.**

*/s/ Patrick Kasson*
Patrick Kasson (0055570)
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311/(614) 232-2410
pkasson@reminger.com

*/s/ Thomas A. Prislipsky*
THOMAS A. PRISLIPSKY (0067623)
950 Windham Court Suite 200
Youngstown, Ohio 44512
(330) 744-1311/(330) 744-7500 fax
tprislipsky@reminger.com

*Attorneys for Defendants Bon Secours Mercy Health, Mercy Health Youngstown LLC d/b/a St. Joseph Warren Hospital, Connie Moschell, Jordan Carrino, Parisa Khavari, Suzanne Zupko, and Fred Raines*

**MEMORANDUM IN SUPPORT**

Plaintiff presented to St. Joseph Warren Hospital hours after miscarrying a 22-week-old baby. She had flushed the 10 inch long baby down the toilet. Plaintiff had told authorities none of this. So, law enforcement was contacted so they could find the baby. Law enforcement conducted an *independent investigation,* finding the baby halfway flushed down the toilet. Charges were filed and a judge determined there was probable cause with no involvement from these defendants. Ultimately, despite there being no dispute Plaintiff flushed a 1 pound ten inch long baby down the toilet, a grand jury declined to indict Plaintiff as protests and media outrage were forming. Somehow, Plaintiff sued these defendants whose only involvement was to start the process so the baby could be found in the toliet.[1]

Plaintiff's § 1983 and state law claims against these are based on Defendants based on disclosure of information to law enforcement and aiding in law enforcement's investigation. They should be dismissed because:

- **Absolute Immunity**: Defendants are immune pursuant to statutory reporting mandates;

- **Absolute Privilege**: The absolute judicial privilege shields Defendants from liability for making statements to law enforcement;

- **Duplicative state remedies**: Plaintiff's due process claim fails because she asserts state law remedies in her Amended Complaint and her claim is duplicative of her Fourth Amendment claims;

- **No Color of Law**: Plaintiff has failed to allege sufficient facts to establish Defendants acted under color of law in order to sustain her § 1983 claims;

- **Lack of *Ashcroft* specificity**: Plaintiff has failed to plead her conspiracy claims with specificity—her conclusory allegations are not supported by material facts;

---

[1] While not part of the record for this Motion, Plaintiff recently testified she wanted the baby found and wanted the healthcare providers to tell the police about it – so the baby could be found.

- **Defendants did not cause the arrest**: Plaintiff has failed to allege sufficient facts to establish that Defendants instituted her prosecution and arrest; and

- **Qualified immunity**: Defendants are entitled to qualified immunity for disclosing information to police officers.

I. STATEMENT OF FACTS[2]

On September 22, 2023, Watts miscarried a 22-week pregnancy at home. (Am. Compl., ECF No. 30, PageID #236, ¶ 6). She tried to flush the baby, causing her toilet to overflow. (*Id.* at PageID #242, ¶ 46). Attempting to clear the toilet, she scooped some things (not the baby) with a bucket. (*Id.*).

Later that day, Watts presented to St. Joseph Warren Hospital (the "Hospital"). (*Id.* at PageID #243, ¶ 49). Nurses Connie Moschell ("Moschell") and Jordan Carrino ("Carrino") spoke with Watts. (*Id.* at ¶ 50). Moschell contacted the police after consulting with Suzanne Zupko ("Zupko") of the Hospital's risk management department and Fred Raines ("Raines"), a law enforcement officer employed by the Hospital. (*Id.* at PageID #243-244, ¶ 65, 70).

Officer Nicholas Carney of the Warren Police Department ("Carney") came to the Hospital and questioned Watts. (*Id.* at PageID #245, ¶ 61). Moschell aided Carney in his questioning. (*Id.* at PageID #245-246, ¶ 61). Watts told Carney and Moschell that if the baby had not been scooped up in the bucket, it must still be in the toilet. (*Id.* at PageID #246, ¶ 71). In fact, the baby was lodged in the toilet's P-trap. (*Id.* at PageID #243, ¶ 48). Following his investigation, Carney filed a charge against Watts for abuse of a corpse – she flushed the baby down the toilet after all. (*Id.* at PageID #247, ¶ 76). A grand jury ultimately declined to indict Watts. (*Id.* at PageID #249, ¶ 92).

---

[2] This Motion is based on the allegations in Watts' Amended Complaint, which are taken as true for purposes of this Motion only. Defendants do not admit any allegations not expressly admitted in their Answer.

On January 10, 2025, Watts filed a Complaint against Bon Secours Mercy Health and Mercy Health Youngstown LLC d/b/a St. Joseph Warren Hospital (collectively, "Mercy Health"), Moschell, Carrino, and other named and unnamed defendants. (Compl., ECF No. 1, PageID #1-27). On August 21, 2025, Watts amended the complaint, adding Zupko and Raines as defendants. (Am. Compl., ECF No. 30, PageID #235-262). Watts brings the following claims against the moving Defendants:

- Count I – Fourth and Fourteenth Amendments – False Arrest and Prosecution without Probable Cause – 42 U.S.C. 1983 (against Moschell, Carrino, Zupko, and Raines);
- Count II – Fifth and Fourteenth Amendments – Unconstitutional Interrogation – 42 U.S.C. 1983 (against Moschell);
- Count III – Fourteenth Amendment – Due Process – 42 U.S.C. 1983 (against Moschell and Carrino);
- Count IV – Conspiracy – 42 U.S.C. 1983 (against Moschell, Carrino, Zupko, and Raines);
- Count VI – State Law Claim – Malicious Prosecution (against Moschell, Carrino, Zupko, and Raines);
- Count VII – State Law Claim – Intentional Infliction of Emotional Distress (against Moschell, Carrino, Zupko, and Raines);
- Count XI – State Law Claim – Unauthorized Disclosure of Confidential Medical Information (against Mercy Health, Moschell, Carrino, Zupko, and Raines);
- Count XII – State Law Claim – Conspiracy (against Moschell and Carrino); and
- Count XIII – State Law Claim – Respondeat Superior (against Mercy Health).

(*Id.*).

Defendants timely filed their Answer to the Amended Complaint. (Answer to Pl.'s Am. Compl., ECF No. 31, PageID #263-285).

## II. LAW AND ARGUMENT[3]

### A. Defendants Are Immune from Plaintiff's § 1983 Claims and State Law Claims Because the Report was Mandatory under State Law.

These Defendants are immune. To be sure, federal and state law permit medical providers to disclose protected health information without prior authorization in certain circumstances, such as when disclosure is required or permitted by law. Simply, Ohio law required an autopsy for the baby and for the authorities to know of the death. In this circumstance, Defendants were statutorily mandated to disclose Plaintiff's conduct and the fetal death to law enforcement and to assist law enforcement in its investigation.

*First*, 45 CFR § 164.512 permits a health care provider to use or disclose protected health information without a written authorization: 1) as required by law, 2) in the course of any judicial proceeding, or 3) for a law enforcement purpose. *See* 45 CFR § 164.512(a)(1), (e)(1), (f)(1). And the Ohio Supreme Court has long held that a medical provider is privileged to disclose otherwise confidential medical information when "disclosure is made in accordance with a statutory mandate or common law duty, or where disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality." *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395 (1999), paragraph two of the syllabus.

And, the Ohio Supreme Court has detailed the public policy underlying this rule, stating that "[a]gainst the interest of the patient in having his condition remain confidential, must be

---

[3] **Motion for Judgment on the Pleadings standard**: Fed. R. Civ. P. 12(C) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings under Rule 12(C) is the same as that for a motion to dismiss under Rule 12(B)(6). *EEOC v. J.H. Houth Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Courts should grant a motion for judgment on the pleadings when "all well-pleaded material allegations of the pleadings of the opposing party [are] taken as true, and . . . the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

balanced the interest of the public in detecting crimes in order to protect society." *State v. Richardson*, 2018-Ohio-4254, ¶ 24 (12th Dist.), quoting *State v. Antill*, 176 Ohio St. 61, 64-65 (1964). In order to further that interest, the Ohio legislature enacted the predecessor statute to R.C. 2921.22. *Antill*, 176 Ohio St. at 65. R.C. 2921.22 mandates the reporting of felonies and deaths. Specifically, it provides that "no person, knowing that a felony has been or is being committed, shall knowingly fail to report such information to law enforcement authorities." R.C. 2921.22(A)(1). Failure to report such information constitutes failure to report a crime, a misdemeanor of the fourth degree. R.C. 2921.22(J). The statute further mandates that:

> No person who discovers the body or acquires the first knowledge of the death of a person shall fail to report the death immediately … to a law enforcement officer, an ambulance service, an emergency squad, or the coroner in a political subdivision in which the body is discovered, the death is believed to have occurred, or knowledge concerning the death is obtained. …

R.C. 2921.22(C).

*Second*, R.C. 2921.22(D) states as follows:

> No person shall fail to provide upon request of the person to whom a report required by division (C) of this section was made, or to any law enforcement officer who has reasonable cause to assert the authority to investigate the circumstances surrounding the death, any facts within the person's knowledge that may have a bearing on the investigation of the death.

Any person who fails to report or provide information in accordance with R.C. 2921.22(C) or (D) is guilty of failure to report knowledge of death, which is a misdemeanor of the fourth degree. R.C. 2921.22(K). Importantly, Ohio law requires that "[t]he fetal death of the product of human conception of at least twenty weeks of gestation [] be registered on a fetal death certificate." R.C. 3705.20(A); *see also* R.C. 3705.16 (requiring a fetal death of the product of human conception of at least twenty weeks of gestation occurring in this state to be registered with the

7

local registrar of vital statistics of the district in which the fetal death occurred by the funeral director or other person in charge of the final disposition of the remains).

Moreover, no "product of human conception of at least twenty weeks of gestation that suffers a fetal death" may be interred or otherwise disposed of "until a fetal death certificate or provisional death certificate has been filed with and a burial permit is issued by the local registrar of vital statistics of the registration district in which the fetal death occurs, or the body is found." R.C. 3705.20(B). R.C. 3705.29(C)(4) provides that no person shall "[r]efuse to comply with the requirements of this chapter or violate any of the provisions of this chapter."

R.C. 2921.22(I) explicitly provides that disclosure of information pursuant to R.C. 2921.22 does not give rise to any liability for breach of privilege or confidence. That is because "[t]he purpose of R.C. 2921.22 is to compel the release of information necessary to aid in the solving of crimes without fear of recourse against the divulging party." *Whipple v. Render*, 1989 Ohio App. LEXIS 3493, *2 (9th Dist. Sept. 13, 1989); *see also Kelly v. Accountancy Bd. of Ohio*, 88 Ohio App.3d 453, 459 (10th Dist. 1993) (R.C. 2921.22 "unambiguously reveals an intent on the part of the legislature to encourage the reporting of felonies and to prohibit recrimination against individuals who make such required disclosures"). Notably, disclosure of information pursuant to R.C. 2921.22 encompasses a range of disclosure acts, including participation in a criminal investigation. *Kelly*, 88 Ohio App.3d at 458-460. And, in fact, R.C. 2921.23 criminalizes the failure or refusal to aid a law enforcement officer in apprehending or detaining an offender when such aid does not result in substantial risk of physical harm to the person giving it.

*Third*, Plaintiff alleges that she miscarried at home at 22 weeks pregnant and presented to the Hospital without the baby. She further alleges that she told Defendants that she did not hear noise or see movement, so she flushed the remains down the toilet and scooped the overflowing

8

contents into a bucket. How she could hear the baby cry when she dropped it into a toilet right away is unknow. *Regardless, flushing a 22 week only baby down the toilet could certainly be considered a crime.* See R.C. 2927.01 (abuse of a corpse).[4] Plaintiff seeks to hold Defendants civilly liable, alleging they reported her to the police, assisted in law enforcement's interrogation, and caused her to be criminally charged – solely because the baby was discovered in the toilet.

*Fourth*, Defendants were permitted under federal and state law to disclose such information to law enforcement. In fact, Defendants had a statutory duty pursuant to R.C. 2921.22 to report knowledge of the fetal death and Watts' conduct in flushing the baby. Further, Defendants' disclosure was necessary for the purpose of locating the baby, so the required autopsy could occur. Indeed, Watts violated R.C. 3705.20 by disposing of the fetal remains without first obtaining a death certificate and a burial permit. Further, Defendants were statutorily mandated to aid law enforcement in obtaining additional information pertinent to the investigation. *See* R.C. 2921.22(D); R.C. 2921.23. In fact, failure to do so would have subjected Defendants to prosecution. In complying with their statutory duties,

*Finally*, Defendants are thus immune from liability pursuant to 45 CFR § 164.512, *Biddle*, and R.C. 2921.22. *See, e.g., Lowe v. Fiorini*, 1997 Ohio App. LEXIS 3953, *4-5 (5th Dist. Aug. 21, 1997) (physician was entitled to immunity pursuant to R.C. 2921.22 for disclosing to police that patient was filling multiple prescriptions for narcotics). They cannot be prosecuted for following the law. *Id.*

---

[4] It is not a coincidence that Plaintiff fails to mention a judge determined probable cause for this crime. (See Ex A.)

9

## B. Defendants Moschell and Carrino Are Shielded from Liability Under the Doctrine of Absolute Privilege in a Judicial Proceeding.

Ohio courts have long recognized that freedom of speech is essential in judicial proceedings to ascertain the truth and achieve justice. In that vein, "Ohio affords an absolute privilege 'to statements made in a judicial proceeding that are related to the proceeding's purpose.'" *Garrett v. Fisher Titus Hosp.*, 318 F.Supp.2d 562, 577 (N.D. Ohio 2004), quoting *Snyder v. AG Trucking, Inc.*, 57 F.3d 484, 490 (6th Cir.1995); *see also Elling v. Graves*, 94 Ohio App.3d 382, 386-387 (6th Dist. 1994), citing *Willitzer v. McCloud*, 6 Ohio St.3d 447, 448-449 (1983) ("To assure that all participants in a judicial proceeding feel free to testify, question and act, Ohio courts prohibit civil actions based on statements made by parties and witnesses during the course of and relevant to judicial proceedings").

The privilege extends to statements and other information provided to a prosecuting attorney reporting the possible commission of a crime. *Id.*, quoting *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505 (1994). Such statements must only "bear some reasonable relation to the proceeding" to invoke the privilege. *Ventura v. Cincinnati Enquirer*, 246 F.Supp.2d 876, 882 (S.D. Ohio 2003), quoting *DiCorpo*, 69 Ohio St.3d at 506. Thus, as a matter of public policy, claims alleging that defamatory remarks or statements were made during the course of and relevant to judicial proceedings are barred by the doctrine of absolute immunity. *Id.*; *Erie Cty. Farmers' Ins. Co. v. Crecelius*, 122 Ohio St. 210, 171 N.E. 97 (6th Dist.1930).

The Ohio Supreme Court has highlighted the importance of this doctrine:

> We agree with the court of appeals' conclusion that the doctrine of absolute privilege for statements made in a judicial proceeding applies in circumstances where, as here, an affidavit or statement is submitted to a prosecutor for purposes of reporting the commission of a crime. As a matter of public policy, extension of an absolute privilege under such circumstances will encourage the reporting of criminal activity by removing any threat of reprisal in the form of

> civil liability. This, in turn, will aid in the proper investigation of criminal activity and the prosecution of those responsible for the crime.

(Emphasis added). *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505 (1994).

Furthermore, a witness is immune from civil liability for giving false testimony. *Elling*, 94 Ohio App.3d at 387, citing *Schmidt v. Statistics, Inc.*, 62 Ohio App.2d 48 (6th Dist. 1978); *Patterson v. Patterson*, 1989 Ohio App. LEXIS 1311 (2d Dist. Apr. 14, 1989). This ban on civil liability for false statements applies even in cases where the party testifying knew his statements were false. *Stoll v. Kennedy*, 38 Ohio App.3d 102 (9th Dist. 1987); *Schmidt*, *supra*.

Here, Plaintiff alleges that Defendant Moschell "met with prosecutors to discuss the evidence …" and that Defendants Moschell and Carrino "made statements to prosecutors." (Am. Compl., ECF No. 30, PageID #248, 255, ¶ 87, 131-132). Those allegations are the basis of Plaintiff's malicious prosecution claim. However, pursuant to well-established law, Defendants Moschell and Carrino enjoy an absolute privilege for any such statements. Accordingly, Plaintiff's claim for malicious prosecution against Moschell and Carrino fails as a matter of law. To the extent that Plaintiff's remaining claims are based on statements made by Moschell and/or Carrino to prosecutors, those claims must also fail.

**C. Plaintiff's Due Process Claim Fails Due to Her Failure to Plead Lack of an Adequate State Remedy and Because There Is an Explicit Textual Source of Constitutional Protection Against the Alleged Conduct.**

A plaintiff cannot bring a procedural due process claim if the state provides an adequate remedy for the alleged violation, i.e. false arrest or malicious prosecution. *Massengale v. Perhacs*, 2025 U.S. Dist. LEXIS 107434, *16 (N.D. Ohio May 6, 2025), citing *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990) (en banc). "Failure 'to plead that [a plaintiff] lacks an adequate state remedy that comports with procedural due process' will doom a procedural due process claim under

11

Section 1983." *Id.*, quoting *Desmond v. Cnty. of Monroe*, 2024 U.S. Dist. LEXIS 127029, *5 (E.D. Mich. July 18, 2024). Further, a plaintiff cannot plausibly allege a cognizable substantive due process claim where there is an "explicit textual source of constitutional protection" against the alleged conduct. *Id.* at *16-17, quoting *Partin v. Davis*, 675 Fed.Appx. 575, 581 (6th Cir. 2017) and *Kue v. North*, 2024 U.S. App. LEXIS 18432, *6 (6th Cir. July 25, 2024).

In *Massengale*, this Court dismissed the plaintiff's due process claim concerning fabrication of evidence, suppression of exculpatory material, conspiracy to manipulate legal proceedings, and retaliatory prosecution on two bases. *Massengale*, 2025 U.S. Dist. LEXIS 107434 at *15-16. First, the plaintiff not only failed to plead lack of an adequate state remedy but asserted state law remedies in his complaint and amended complaint. *Id.* at *16. Second, the due process claim was "merely another way of asserting a Fourth Amendment malicious prosecution claim and a First Amendment retaliation claim." *Id.* at *17. Thus, the claim failed as a matter of law regardless of whether it was a procedural or substantive due process claim. *Id.* at *18.

Here, Plaintiff brings a due process claim against Moschell and Carrino alleging fabrication of evidence. (Am. Compl., ECF No. 30, PageID #252, ¶ 111-113). As in *Massengale*, Plaintiff has failed to plead that she lacks an adequate state law remedy and has instead asserted state law remedies in her Amended Complaint. (*Id.* at PageID #252, 254-259) *See Massengale* at *16. Further, her due process claim is merely another way of asserting Fourth Amendment false arrest and prosecution without probable cause claims. *See id.* at *17. Accordingly, Plaintiff's due process claim fails as a matter of law regardless of whether it is raised as a procedural or substantive due process claim.

### D. Plaintiff Cannot Sustain Her § 1983 Claims Against Defendants Because She Fails to Allege Sufficient Facts to Establish Defendants Were Acting Under Color of Law.

In general, 42 U.S.C. § 1983 imposes liability ***only*** on those persons acting under color of state law. (Emphasis added.) *Kerr v. Hurd*, 694 F.Supp.2d 817, 837 (S.D. Ohio 2010); *see also*

12

*Blythe v. Schlievert*, 245 F.Supp.3d 959, 967 (N.D. Ohio 2017) ("Action under color of state law is a sine qua non of a § 1983 suit"). The U.S. Supreme Court has held that "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Wilkerson v. Warner*, 545 Fed.Appx. 413, 419 (6th Cir. 2013), *quoting Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) ("[Fourteenth] Amendment erects no shield against merely private conduct, however discriminatory or wrongful.").

The Sixth Circuit recognizes three tests to determine whether private conduct is fairly attributable to the state—the public function test, the state compulsion test, and the nexus test. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). The public function test "'requires that the private entity exercise powers which are traditionally exclusively reserved to the state.'" *Id.*, *quoting Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). To satisfy the state compulsion test, the plaintiff must prove that "the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state." *Id.*, citing *Wolotsky*, 960 F.2d at 1335. Lastly, the nexus test is met if there is "a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state." *Id.*, citing *Wolotsky* at 1335.

Here, Plaintiff brings § 1983 claims against the moving individual Defendants but fails to allege that Zupko and Raines were acting under color of law. Further, Plaintiff only alleges that Moschell and Carrino were "acting in conspiracy with Defendant Carney and thus under color of law." (Am. Compl., ECF No. 30, PageID #239, ¶ 21). However, Plaintiff fails to allege any facts sufficient to satisfy either the public function, state compulsion, or nexus test. The Amended Complaint does not allege that there was state compulsion, that Defendants exercised any powers

13

which are traditionally exclusively reserved to the state, or that the state had a significantly close relationship to Defendants as to be a joint participant and/or interdependent with Defendants. *See, e.g., Ellison v. Univ. Hosp. Mobile Crisis Team*, 108 Fed. Appx. 224, 226-227 (6th Cir. 2004).

Specifically, Plaintiff does not set forth any factual allegations to establish that Zupko or Raines did anything other than agreeing with Moschell that she would contact law enforcement. (Am. Compl., ECF No. 30, PageID #243-244, ¶ 50-55). With respect to Carrino, Plaintiff alleges that she wrote a medical note and told Watts that police had been called because there was a biohazard at her home. (*Id.* at PageID #244, ¶ 56, 60). Plaintiff's remaining allegations regarding Carrino, asserted "on information and belief,"[5] are that Carrino met with Carney and Moschell to "discuss their plan" when Carney arrived at the hospital and that she provided ultrasound pictures for use in Watts' "interrogation." (*Id.* at PageID #245-246, ¶ 62, 70). Regarding Moschell, Plaintiff alleges that she called the police, aided Carney in questioning Watts at the hospital regarding her miscarriage and the location of the fetal remains, and met with prosecutors for the preliminary hearing. (*Id.* at PageID #244-246, 248, ¶ 57, 62-71, 87). These allegations, even if taken as true, fail to establish that Defendants acted under color of law. Accordingly, Plaintiff's § 1983 claims against the moving Defendants fail as a matter of law.

E. **Plaintiff Fails to Allege Sufficient Facts to Establish Her Claims for Conspiracy.**

"'It is well-settled that conspiracy claims must be pled with some degree of specificity; vague conclusory allegations <u>that are unsupported by material facts</u> are not sufficient to state a § 1983 claim.'" (Emphasis added.) *Dressler v. Rice*, 2017 U.S. Dist. LEXIS 111308, *19 (S.D. Ohio July 18, 2017), *quoting Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). The United States Supreme Court has held that "if 'a complaint alleges facts that are merely consistent with liability[,] …the

---

[5] *See Massengale v. Perhacs*, 2025 U.S. Dist. LEXIS 107434, *24-25 (N.D. Ohio May 6, 2025) ("[G]iven that he alleges this "on information and belief'—is not something that he actually knows happened").

14

existence of obvious alternative explanations [will] illustrate[] the unreasonableness of the inference sought and the implausibility of the claims made.'" *Massengale v. Perhacs*, 2025 U.S. Dist. LEXIS 107434, *34 (May 6, 2025), quoting *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013).

Plaintiff is required to allege "sufficient facts to state a claim that '(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed.'" *Massengale v. Perhacs*, 2025 U.S. Dist. LEXIS 107434, *32 (May 6, 2025), *quoting Arsan v. Keller*, 784 Fed.Appx. 900, 914 (6th Cir.2019). Similarly, a state law conspiracy claim requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Id.*, *quoting Siefert v. Hamilton Cty.*, 951 F.3d 753 (6th Cir. 2019).

Here, Plaintiff's "allegations rest on logical leaps and the hope the Court will indulge allegedly nefarious inferences." *Massengale v. Perhacs*, 2025 U.S. Dist. LEXIS 107434, *34 (May 6, 2025). Plaintiff's conclusory allegation that Defendants "agreed among themselves and with other individuals to act in concert in order to deprive Ms. Watts of her constitutional rights" is unsupported by material facts. (Am. Compl., ECF No. 30, PageID #252, ¶ 115). Plaintiff does not allege any material facts to establish that Defendants "shared a conspiratorial objective." (*See generally id.*). *See Dressler v. Rice*, 2017 U.S. Dist. LEXIS 111308, *16 (S.D. Ohio July 18, 2017) ("[M]erely furnishing information to police officers who then choose to take action does not constitute a conspiracy for purposes of Section 1983 liability").

In support of her § 1983 conspiracy claim, Plaintiff alleges Defendants engaged in overt acts, "such as reporting false evidence, making false promises of leniency…, instigating Ms. Watts's arrest and prosecution." (*Id.* at ¶ 117). However, Plaintiff does not allege any material facts that support

15

such allegations. "When a defendant's job regularly involves taking an action, the fact that the defendant took that action will not plausibly support liability." *Id.* at *34-35. It is ordinary for a nurse to ask a patient questions when rendering care and to inform the patient that she is there to help. It is also ordinary for a nurse to document information in the patient's medical record. Therefore, the fact that Moschell and Carrino did so does not plausibly support liability. Regardless, these allegations, even if construed in a light most favorable to Plaintiff, do not establish a shared objective to deprive Plaintiff of her rights.

In support of her state law conspiracy claim, Plaintiff alleges that Defendants committed overt acts including "Ms. Watts false arrest and intentional infliction of emotional distress upon her." (*Id.* at PageID #259, ¶ 163). Plaintiff's intentional infliction of emotional distress claim alleges that Defendants interrogated Plaintiff in her hospital bed and caused her arrest and criminal proceedings. (*Id.* at PageID #256, ¶ 140). As already mentioned, Moschell's questioning of Plaintiff while providing care is a routine aspect of her job as a nurse. Thus, her conduct in asking Plaintiff questions does not plausibly support liability. Further, Plaintiff has not alleged any facts to establish that Defendants caused Plaintiff's arrest or her criminal proceedings. In fact, Plaintiff alleges that "Defendant Carney searched for a way to ensure Ms. Watts would be charged with a crime" and that "[h]e ultimately filed charges…" against Plaintiff. (*Id.* at PageID #247, ¶ 76). Further, Plaintiff alleges that Carney arrested her. (*Id.* at ¶ 78). But all she did was assit in helping finding the flushed baby.

Accordingly, Plaintiff's conspiracy claims fail as a matter of law as her conclusory allegations are not supported by material facts.

such allegations. "When a defendant's job regularly involves taking an action, the fact that the defendant took that action will not plausibly support liability." *Id.* at *34-35. It is ordinary for a nurse to ask a patient questions when rendering care and to inform the patient that she is there to help. It is also ordinary for a nurse to document information in the patient's medical record. Therefore, the fact that Moschell and Carrino did so does not plausibly support liability. Regardless, these allegations, even if construed in a light most favorable to Plaintiff, do not establish a shared objective to deprive Plaintiff of her rights.

In support of her state law conspiracy claim, Plaintiff alleges that Defendants committed overt acts including "Ms. Watts false arrest and intentional infliction of emotional distress upon her." (*Id.* at PageID #259, ¶ 163). Plaintiff's intentional infliction of emotional distress claim alleges that Defendants interrogated Plaintiff in her hospital bed and caused her arrest and criminal proceedings. (*Id.* at PageID #256, ¶ 140). As already mentioned, Moschell's questioning of Plaintiff while providing care is a routine aspect of her job as a nurse. Thus, her conduct in asking Plaintiff questions does not plausibly support liability. Further, Plaintiff has not alleged any facts to establish that Defendants caused Plaintiff's arrest or her criminal proceedings. In fact, Plaintiff alleges that "Defendant Carney searched for a way to ensure Ms. Watts would be charged with a crime" and that "[h]e ultimately filed charges…" against Plaintiff. (*Id.* at PageID #247, ¶ 76). Further, Plaintiff alleges that Carney arrested her. (*Id.* at ¶ 78). But all she did was assit in helping finding the flushed baby.

Accordingly, Plaintiff's conspiracy claims fail as a matter of law as her conclusory allegations are not supported by material facts.

**F. Plaintiff's Amended Complaint Fails to Allege Sufficient Facts to Establish Her Claims for Malicious Prosecution and False Arrest and Prosecution Without Probable Cause Against Defendants.**

In order to establish a § 1983 malicious prosecution claim, a plaintiff must demonstrate four elements:

> (1) that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute;" (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was "resolved in the plaintiff's favor."

*Bower v. Vill. of Marblehead*, 2020 U.S. Dist. LEXIS 112173, *23-24 (N.D. Ohio June 26, 2020). A "private individual may be held civilly liable for the initiation of criminal proceedings only if the information provided was known to be false or if the individual's desire to have the proceedings initiated was the determining factor in the official's decision to commence the prosecution." *Reasbeck v. Wheeling Pittsburgh Steel Corp.*, 2000 U.S. App. LEXIS 23678, *6 (6th Cir. Sept. 18, 2000), citing *Archer v. Cachat*, 165 Ohio St. 286, 288 (1956).

Similarly, under state law, a malicious prosecution requires that the plaintiff demonstrate "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the criminal defendant." *Trussell v. GMC*, 53 Ohio St.3d 142 (1990), citing *Rogers v. Barbera*, 170 Ohio St. 241, 241 (1960). Notably, the exercise of an officer's discretion "makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings." *Woods v. Summertime Sweet Treats, Inc.*, 2009-Ohio-6030, ¶ 25 (7th Dist.), quoting *Archer v. Cachat*, 165 Ohio St. 286, 287-88 (1956); *see also Baryak v. Kirkland*, 137 Ohio App.3d 704, fn. 5 (2000), citing *Robbins v. Fry*, 72 Ohio App.3d 360, 362-363 (1991) and *Archer*, 165 Ohio St. at 287-289

(a prosecutor's involvement in the decision to prosecute generally insulates the complainant(s) from civil liability for criminal prosecution).

Here, Plaintiff does not allege any material facts to establish that Defendants initiated the criminal prosecution against her. (*See generally* Am. Compl., ECF No. 30). And in fact, Plaintiff's allegations establish that Carney conducted his own investigation and unilaterally decided to file charges against Plaintiff. (*Id.* at PageID #247, ¶ 76). Further, Plaintiff does not allege that Defendants had any involvement in or say over whether Plaintiff was subject to criminal charges. (*See generally id.*). And they fail to mention a judge determined probable cause (See. Ex A.)

Accordingly, Plaintiff has failed to state claims for malicious prosecution—under § 1983 and state law—against Defendants upon which relief can be granted. *See Reasbeck*, 2000 U.S. App. LEXIS 23678 at *6 ("[T]he record is devoid of evidence that Wheeling instituted or continued the criminal proceedings against Reasbeck"); *Woods v. Summertime Sweet Treats, Inc.*, 2009-Ohio-6030, ¶ 27 (7th Dist.) (malicious prosecution claim was appropriately dismissed on summary judgment when the evidence demonstrated that after the defendant relayed information to the police, the police conducted an independent investigation and decided to charge the plaintiff); *see also Meluch v. O'Brien*, 2007-Ohio-6633, ¶ 33 (8th Dist.) (finding that a prosecutor's involvement in the decision to prosecute shielded the complainants from civil liability for criminal prosecution).

### G. Defendants Are Entitled to Qualified Immunity for Reporting to Law Enforcement.

Statements made to police officers are protected by a qualified privilege. *Popke v. Hoffman*, 21 Ohio App. 454, 456 (6th Dist. 1926); *Stokes v. Meimaris*, 111 Ohio App. 3d 176, 189 (8th Dist. 1996); *see also Paramount Supply Co. v. Sherlin Corp.*, 16 Ohio App. 3d 176 (8th Dist. 1984) (statements made to federal customs agents about possible illegal exportation of goods are qualifiedly privileged); *Tillimon v. Sullivan,* 1988 Ohio App. LEXIS 2616 (June 30, 1988) (court

Case: 4:25-cv-00049-SL Doc #: 40 Filed: 10/29/25 19 of 20. PageID #: 341

endorsed trial court's statement that information given to a police office or police detective is under a qualified privilege). The privilege applies when:

> (1) [the defendant] acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties.

*Mosley v. Evans*, 90 Ohio App. 3d 633, 636 (1993); *Hahn v. Kotten*, 43 Ohio St. 2d 237, 246 (1975); *see also A & B-Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 8 (1995).

Here, Defendants are entitled to qualified immunity from Plaintiff's § 1983 and state law claims relative to disclosure of information to law enforcement. The factual allegations set forth in the Amended Complaint establish that Moschell disclosed information to law enforcement after consulting both the Hospital's risk management department and a law enforcement officer employed by the Hospital. (*See generally* Am. Compl., ECF No. 30). Such allegations establish that Moschell acted in good faith. And Defendants did not disclose information to any other party. (*Id.*).

Per the Amended Complaint, Plaintiff thought she had a miscarriage, flushed the a 22-week baby down the toilet. (*Id.*). These allegations establish that there was an interest to be upheld and that the occasion was proper. Specifically, Defendants contacted law enforcement and disclosed information for the purpose of locating the baby. The factual allegations further establish that additional information was provided to Officer Carney to aid in his questioning of Plaintiff regarding the location of the baby in the toilet. Thus, the disclosure was limited in scope to the purpose of upholding that interest. Accordingly, Defendants are entitled to qualified immunity relative to the disclosure of information to law enforcement.

## III. CONCLUSION

Defendants just followed the law and cooperated with police. They were told a baby was flushed down the toilet after all. Should they really be sued for leading to the discovery of a 22 week old baby half flushed down a toilet? There is no claim for this. Dismissal is proper.

Respectfully submitted,

**REMINGER CO., L.P.A.**

*/s/ Patrick Kasson*
Patrick Kasson (0055570)
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311/(614) 232-2410
pkasson@reminger.com

*/s/ Thomas A. Prislipsky*
THOMAS A. PRISLIPSKY (0067623)
950 Windham Court Suite 200
Youngstown, Ohio 44512
(330) 744-1311/(330) 744-7500 fax
tprislipsky@reminger.com

*Attorneys for Defendants Bon Secours Mercy Health, Mercy Health Youngstown LLC d/b/a St. Joseph Warren Hospital, Connie Moschell, Jordan Carrino, Parisa Khavari, Suzanne Zupko, and Fred Raines*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed electronically this 29th day of October, 2025. All parties will receive notice of this filing by operation of the Court's electronic filing system.

*/s/ Patrick Kasson*
THOMAS A. PRISLIPSKY (0067623)
PATRICK KASSON (0055570)