**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| BRITTANY WATTS | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-00049 |
| | ) | |
| v. | ) | |
| | ) | Hon. Sara Lioi, Chief Judge |
| BON SECOURS MERCY HEALTH, | ) | |
| *et al.* | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**<u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES ............................................................................. 1

SUMMARY OF THE ARGUMENT ....................................................................... 1

LEGAL STANDARD............................................................................................. 2

FACTS .................................................................................................................... 2

ARGUMENT .......................................................................................................... 5

A.     Defendants Have Not Established Any Immunity or Other Defense ................................ 5

     1.     Immunity for reporting a felony ................................................................. 5

     2.     Requirement of an autopsy and fetal death certificate........................................ 6

     3.     Requirement to report a dead body........................................................ 7

     4.     Requirement to aid a law enforcement officer........................................ 8

     5.     Absolute privilege in a judicial proceeding .............................................. 9

     6.     Qualified immunity for statements to law enforcement ...................................... 10

     7.     Health Insurance Portability and Accountability Act ........................................... 10

B.     Plaintiff Has Sufficiently Alleged a Conspiracy.................................................. 11

C.     Plaintiff Has Sufficiently Alleged that Defendants Acted Under Color of Law .............. 13

D.     Plaintiff States Malicious Prosecution Claims under Federal and State Law.................. 14

     1.     Federal malicious prosecution ................................................................. 15

E.     Plaintiff's Due Process Claim for Fabrication of Evidence Is Viable .............................. 19

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adamson v. May Co.*,
    456 N.E.2d 1212 (Ohio App. 1982) ................................................................ 18

*Adickes v. S. H. Kress & Co.*,
    398 U.S. 144 (1970) ................................................................................. 14

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    551 F. Supp. 580 (S.D. Ohio 1982) ................................................................ 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 12

*Bickerstaff v. Lucarelli*,
    830 F.3d 388 (6th Cir. 2016) ....................................................................... 17

*Bradley v. Reno*,
    749 F.3d 553 (6th Cir. 2014) ....................................................................... 17

*Brady v. Maryland*,
    373 U.S. 83 (1963) ................................................................................... 19

*Braley v. City of Pontiac*,
    906 F.2d 220, 225 (6th Cir. 1990) (en banc) .............................................. 11, 12

*Buehner v. City of Cleveland*,
    788 F. Supp. 3d 827 (N.D. Ohio 2025) ........................................................... 2

*Caskey v. Fenton*,
    No. 2:20-CV-1549, 2023 WL 4491756 (S.D. Ohio July 12, 2023) ........................... 15

*Cooper v. Parrish*,
    203 F.3d 937 (6th Cir. 2000) ....................................................................... 14

*Cox v. Kobacker Stores, Inc.*,
    Case No. 85CA2, 1985 WL 8081 (Ohio Ct.App. Aug. 30, 1985) ........................... 18

*Daily Services., LLC v. Valentino*,
    756 F.3d 893 (6th Cir. 2014) ................................................................... 19, 20

**Cases**                                                                                          **Page(s)**

*Darrah v. City of Oak Park*,
  255 F.3d 301 (6th Cir. 2001) ................................................................................17

*Dennis v. Sparks*,
  449 U.S. 24 (1980) ...............................................................................................14

*Dressler v. Rice*,
  No. 1:15CV606, 2017 WL 3033877, (S.D. Ohio July 18, 2017),
  *aff'd* 739 F. App'x 814 (6th Cir. 2018) ................................................................13

*Farmer v. Phillips*,
  No. 20-5730, 2021 WL 6210609 (6th Cir. Oct. 19, 2021) ....................................12

*Gokor v. Schlievert*,
  474 F. Supp. 3d 929 (N.D. Ohio 2020) .................................................................15

*Harris v. Bornhorst*,
  No. 5:03CV1827, 2004 WL 7340519 (N.D. Ohio Aug. 13, 2004) ...........................5

*Hinchman v. Moore*,
  312 F.3d 198 (6th Cir. 2002) ................................................................................17

*Howlett By & Through Howlett v. Rose*,
  496 U.S. 356 (1990) ................................................................................................5

*Jelovsek v. Bredesen*,
  545 F.3d 431 (6th Cir. 2008) ................................................................................16

*Johnson v. Moseley*,
  790 F.3d 649 (6th Cir. 2015) ................................................................................15

*King v. Harwood*,
  852 F.3d 568 (6th Cir. 2017) ................................................................................15

*Leta v. TriHealth, Inc.*,
  No. 23-3406, 2024 WL 229563 (6th Cir. Jan. 22, 2024) ......................................14

*Lively v. Donald Dunning, D.D.S., Inc.*,
  2013-Ohio-1350 .....................................................................................................15

*MacMaster v. Busacca*,
  No. 2:21-CV-11052, 2025 WL 311500 (E.D. Mich. Jan. 27, 2025) .................15, 16

iii

**Cases**                                                                                   **Page(s)**

*Manuel v. City of Joliet, Ill.*,
    137 S.Ct. 911 (2017) ........................................................................................................17

*Massengale v. Perhacs*,
    No. 1:24-CV-1793, 2025 WL 1573190 (N.D. Ohio May 6, 2025) ....................................19, 20

*Massengale v. Perhacs*, No. 1:24-CV-01793, 2025 WL 1452707
    (N.D. Ohio May 21, 2025) ................................................................................................19

*Mayes v. Columbus*,
    105 Ohio App. 3d 728, (1995) ..........................................................................................18

*Miller v. Maddox*,
    866 F.3d 386 (6th Cir. 2017) ............................................................................................15

*Mitles v. Young*,
    394 N.E.2d 335 (Ohio App. 1978) ...............................................................................17, 18

*Monroe v. Pape*,
    365 U.S. 167 (1961) ..........................................................................................................20

*Novak v. City of Parma*,
    932 F.3d 421 (6th Cir. 2019) ............................................................................................12

*Parratt v. Taylor*,
    451 U.S. 527 (1981) ..........................................................................................................20

*Paskvan v. City of Cleveland Civil Serv. Comm'n*,
    946 F.2d 1233 (6th Cir. 1991) ............................................................................................2

*Powers v. Hamilton County Pub. Def. Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ..............................................................................................9

*Reasbeck v. Wheeling Pittsburgh Steel Corp.*,
    230 F.3d 1359 (6th Cir. 2000) ..........................................................................................18

*Reister v. Gardner*,
    2020-Ohio-5484, 164 Ohio St. 3d 546 ..............................................................................9

*Revis v. Meldrum*,
    489 F.3d 273 (6th Cir. 2007) ............................................................................................14

**Cases**                                                                                                   **Page(s)**

*Richards v. County of Washtenaw*,
    818 F. App'x 487 (6th Cir. 2020) ............................................................................15

*Robertson v. Lucas*,
    753 F.3d 606 (6th Cir. 2014)................................................................................17

*Rudd v. City of Norton Shores, Michigan*,
    977 F.3d 503 (6th Cir. 2020)................................................................11, 13, 14, 15

*Sanders v. Jones*,
    728 F. App'x 563 (6th Cir. 2018) ........................................................................15

*Schertz v. Waupaca County*,
    875 F.2d 578 (7th Cir. 1989)................................................................................17

*Sykes v. Anderson*,
    625 F.3d 294 (6th Cir. 2010)................................................................................15

*Tanner v. Walters*,
    98 F.4th 726 (6th Cir. 2024) ...........................................................................19, 20

*Tapply v. Whirlpool Corp.*,
    148 F.4th 407 (6th Cir. 2025) ...............................................................................2

*Thomas v. United States*,
    849 F.3d 669 (6th Cir. 2017)................................................................................16

*Van Hull v. Marriott Courtyard*,
    87 F.Supp.2d 771 (N.D. Ohio 2000)...............................................................15, 16

*Webb v. United States*,
    789 F.3d 647 (6th Cir. 2015)...........................................................................11, 12

*Weberg v. Franks*,
    229 F.3d 514 (6th Cir. 2000)...........................................................................11, 12

*Weser v. Goodson*,
    965 F.3d 507 (6th Cir. 2020)................................................................................14

*Wilkerson v. Warner*,
    545 F. App'x 413 (6th Cir. 2013) ........................................................................14

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
    727 F.3d 502 (6th Cir. 2013)................................................................................13

**Rules**

Fed. R. Civ. P. 12(c) ..................................................................................1, 2

Fed. R. Civ. P. 12(b)(6).................................................................................2

**Statutes & Other Authorities**

Ohio Rev. Code § 2921.22(A) ......................................................................5, 6

Ohio Rev. Code § 2921.22(C) ........................................................................7

Ohio Rev. Code § 2921.22(D) ........................................................................8

Ohio Rev. Code § 2921.22(H) ........................................................................6

Ohio Rev. Code § 2921.23 ..............................................................................8

Ohio Rev. Code § 3705.16 ..............................................................................7

Ohio Rev. Code § 3705.20 ..............................................................................7

42 U.S.C § 1983 ............................................................................5, 11, 14, 20

45 CFR § 164.512 ....................................................................................10, 11

Plaintiff Brittany Watts, through her attorneys, responds as follows in opposition to Defendants' motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.

### STATEMENT OF THE ISSUES

1. Whether Defendants have established any immunity from suit on the pleadings.

2. Whether Plaintiff has sufficiently alleged the elements of her claims that Defendants challenge.

### SUMMARY OF THE ARGUMENT

Brittany Watts committed no crime in connection with her heartbreaking second-trimester miscarriage in September 2023. Nor did she ever appear to have committed a crime. But when Ms. Watts, an unmarried Black woman, came to St. Joseph Warren Hospital for the third time in four days, gravely in need of medical care, Defendants chose to pursue her as a criminal. They conspired with law enforcement to violate many of Ms. Watts's legal rights, including rights guaranteed by the United States Constitution, causing her to be arrested and prosecuted. Fortunately, a grand jury correctly found no probable cause for this prosecution and refused to indict Ms. Watts. She then filed this lawsuit to vindicate her rights under federal and state law.

Defendants Connie Moschell, Jordan Carrino, Suzanne Zupko, and Fred Raines ("Defendants"), all employees of St. Joseph Warren Hospital, have now moved under Fed. R. Civ. P. 12(c) for judgment on the pleadings. In support of this motion, Defendants first invoke an array of state law immunities. But each of these asserted immunities is either inapplicable to the conduct Plaintiff alleges or cannot be decided on the pleadings. Defendants also claim immunity under a federal HIPAA regulation, but this regulation is irrelevant to the claims in this case.

Even more wrongheadedly, Defendants assert that the state law immunities they invoke apply to Plaintiff's federal claims, and they similarly argue that Plaintiff's fabrication claim

1

under the federal Due Process Clause is preempted by state law. Both propositions are flatly incorrect under Sixth Circuit precedent.

Beyond all that, Defendants continually ignore the standard for a motion under Rule 12(c), which is the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. They do so by improperly relying on (purported) facts from outside the complaint, misrepresenting Plaintiff's allegations, failing to construe Plaintiff's allegations in her favor, and failing to grant her all reasonable inferences. In this way, Defendants demonstrate that this is not a case that can be resolved on the pleadings. Disputes about the parties' conduct and intent are central, and they present classic jury questions.

The Court should deny Defendants' motion in its entirety.

## LEGAL STANDARD

A Rule 12(c) motion may be granted only "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard applied to motions to dismiss under Rule 12(b)(6). *Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 863 (N.D. Ohio 2025). The complaint must be construed in the light most favorable to the plaintiff, accepting the allegations as true, and drawing all reasonable inferences in the plaintiff's favor. *Tapply v. Whirlpool Corp.*, 148 F.4th 407, 413 (6th Cir. 2025).

## FACTS

By September 22, 2023, the under-one-pound fetus Plaintiff Brittany Watts was carrying had died *in utero* (through no fault of her own). Dkt. 30, ¶¶ 6, 48. Ms. Watts, who was in the second trimester of her pregnancy, miscarried at home on the toilet early that morning. *Id.* ¶¶ 3, 23, 42-43. At the time of the miscarriage, she had known for almost three days that the fetus she

was carrying was not viable. *Id.* ¶¶ 27, 30. She knew this because doctors and nurses at Defendant St. Joseph Warren Hospital had told her so numerous times. *Id.* Eventually, a pathologist determined that the fetus's "prolonged intrauterine death" had resulted from infection and a lack of amniotic fluid, both stemming from the premature rupture of membranes first diagnosed at St. Joseph days earlier. *Id.* ¶¶ 3, 75. In other words, the fetus died in utero. *Id.*

Ms. Watts believed that her miscarriage would be the end of her days-long ordeal. No one from the hospital had told her either time she left there before miscarrying what to expect or do if she miscarried at home. *Id.* ¶¶ 41, 47. All they had told her was that miscarriage was inevitable. *Id.* ¶¶ 27, 30.

The scene was extremely bloody. *Id.* ¶¶ 43-46. Ms. Watts had no idea what the deceased fetus would look like—she did not even expect it to be intact. *Id.* ¶¶ 41, 44. She heard no sign of life because there was none, and so she did what untold numbers of women experiencing miscarriage at home have also done: She flushed the toilet. *Id.* ¶¶ 7, 44-47. She then lay bleeding on the bathroom floor. *Id.* ¶ 45.

Under the mistaken belief that the worst was over, Ms. Watts attempted to regain some sense of normalcy. She cleaned up herself and the bathroom as best she could. *Id.* ¶ 46. All that was visible in the toilet, which was clogged and nearly overflowing, was blood. *Id.* ¶¶ 43-46. She used a bucket to try to scoop out what was in the toilet, and she assumed the fetal remains, which again, she did not expect to be intact, had been scooped up. *Id.*

Ms. Watts eventually collected herself, but she was losing so much blood that she returned to St. Joseph Warren Hospital. *Id.* ¶ 49. Her life was in danger and she needed surgery to complete the miscarriage. *Id.* ¶¶ 8, 62.

3

Defendants, all employees of St. Joseph Warren Hospital, were aware of the nonviability of Ms. Watts's pregnancy, which is clearly documented in her medical records. *Id.* ¶¶ 30, 31, 50, 58. Defendant Moschell, an experienced medical professional, also would have known that Ms. Watts's actions when she miscarried at home were understandable, typical, and most certainly not criminal. *Id.* ¶¶ 9, 10, 50, 51, 58, 99-101. But, with motives that discovery may reveal, Defendants chose to treat Ms. Watts as a criminal.

To that end, Defendant Moschell, with the blessing and assistance of Defendants Zupko and Raines, reported Ms. Watts to law enforcement, falsely suggesting she had abandoned a live baby. *Id.* ¶¶ 51-58. Moschell did so despite knowing that the fetus was not viable, could not be saved, and had been delivered hours earlier without making any sound or movement. *Id.* ¶ 58. Then Moschell met with Detective Carney, also a defendant in this case, and agreed to interrogate Ms. Watts in her hospital bed as she awaited surgery. *Id.* ¶¶ 62-63. Defendant Carrino assisted as this unconscionable, hour-long interrogation proceeded. *Id.* ¶¶ 63-72. Later, Defendants and their agents provided false and twisted information to prosecutors to ensure Ms. Watts would be arrested and prosecuted. *Id.* ¶¶ 72-74, 87-88.

Following on the false crime reported by Defendants Moschell, Carrino, Raines, and Zupko, Detective Carney testified at a preliminary hearing before a municipal judge, where he presented a false picture of a callous and unnatural woman who had intentionally mistreated a deceased baby, repeating the false narrative he had concocted with Defendants. *Id.* ¶¶ 88-91. Carney misled the judge about the nature of the interrogation he and Moschell conducted, not mentioning the audio recording of the interrogation. *Id.* Then, in a highly unusual and irregular occurrence, the judge then conceded he was unsure what the "abuse of a corpse" statute meant as it applied to a deceased fetus. Ex. 1 (Preliminary H'rg Transcript) at 64:7-65:7. He would leave it

4

to the grand jury to sort out, he explained. *Id.* Months later, the grand jury found no probable cause and declined to indict Ms. Watts. Dkt. 30, ¶ 92.

## ARGUMENT

### A. Defendants Have Not Established Any Immunity or Other Defense

Defendants cite numerous state laws and one federal regulation that they contend they bar all of Plaintiff's claims.[1] Immunities are affirmative defenses that, like other affirmative defenses, rarely can be resolved at the pleading stage. A "12(b) motion to dismiss on the basis of an affirmative defense can be granted only where the defense appears clearly on the face of the complaint," *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 551 F. Supp. 580, 591 (S.D. Ohio 1982), a situation not present in this case. Moreover, contrary to Defendants' contention, state law immunities do not apply to federal claims. *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."); *Harris v. Bornhorst*, No. 5:03CV1827, 2004 WL 7340519, at *22 (N.D. Ohio Aug. 13, 2004) ("State law immunities do not provide any bar to § 1983 claims.").

#### 1. Immunity for reporting a felony

One of Defendants' immunity arguments is that a law requiring the reporting of felonies shields them from liability. Ohio Rev. Code § 2921.22(A). Dkt. 40 at 7. This argument must be rejected both because it fails to credit Plaintiff's allegation and because it ignores an applicable exception to the Ohio misprision of felony statute.

First, Plaintiff plausibly alleges she committed no crime and did nothing to suggest otherwise to Defendants. She miscarried an already-deceased fetus into the toilet along with a

---

[1] Whether each defense Defendants raise can properly be termed an "immunity" is a question, but not one that must be answered to decide the pending motion.

great deal of blood and tissue. Dkt. 30, ¶¶ 43-46, 48, 75. She did not see the fetus or expect it to be intact, and she then flushed the toilet, as so many other women have done. *Id.* ¶¶ 44, 46-47. Nothing she did injured the fetus. *Id.* ¶ 75. Although Defendants did their best to make it look like she had committed a crime, *id.* ¶¶ 8-9, 50-58, 99-101, the grand jury and the County prosecutor concluded she had not, *id.* ¶¶ 74, 92.[2] Defendants contest these allegations, insisting Plaintiff committed a felony, but obviously Defendants are not entitled to such an inference. Moreover, Plaintiff's complaint contains no allegations that Defendants were aware of the "abuse of a corpse" statute in September 2023, let alone its elements, its *mens rea* requirement, and the distinction it makes between the felony and misdemeanor offenses. In other words, the precondition of "a felony" was not met.

Second, Defendants have overlooked that the statute they invoke, Ohio Rev. Code § 2921.22(A), does not mandate that hospitals report patients for felonies. The law exempts felonies learned about in the context of a privileged relationship, such as "physician and patient" or "advanced practice registered nurse and patient," *id.* § 2921.22(H), which is another reason Defendants have no refuge in § 2921.22(A).

### 2. Requirement of an autopsy and fetal death certificate

Defendants also argue they are immune from liability under laws requiring (1) an autopsy to be performed on fetuses that die after reaching 20-weeks' gestation, and (2) the issuance of a fetal death certificate before disposal of a fetus at that stage of development. These requirements, Defendants contend, mean they had no choice but to report Brittany Watts to the police.

---

[2] Defendants seek to cast the grand jury decision as invalid, saying that the grand jury "declined to indict Plaintiff as protests and media outrage were forming," Dkt. 40 at 3, a characterization that has no place in a motion for judgment on the pleadings. Defendants' further contention that the municipal judge's initial probable cause finding is binding in some way is rebutted *infra* at 16-18.

This argument is a quintessential red herring. A law does require that a fetal death certificate be issued before disposal of a fetus, Ohio Rev. Code § 3705.20, but this law contains no requirement that a hospital ensure the issuance of such a certificate *for a fetus that was delivered elsewhere and disposed of by someone else*. Defendants likewise cite to Ohio Rev. Code § 3705.16, but this provision applies only to a funeral director or other person charged with "final disposition of the remains," and requires only registration of the death, not a police report.

Defendants do not attempt to explain why they would be under a legal obligation to ensure these requirements are met when fetal deaths happen out in the world, rather than in their hospital. Beyond that, Plaintiff alleges that Defendant Moschell told police the baby might be alive, meaning she was not reporting a death. Dkt. 30, ¶ 57.

As for the purported autopsy requirement, Defendants provide no citation to any law, ignoring the basic tenet that legal arguments must be supported by relevant authority. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008) (failure to "support [an] argument with any legal authority" constitutes waiver). If such a law does exist—Plaintiff has not been able to find one—it presumably does not create any obligation for a hospital to ensure that a fetus delivered away from the hospital will be autopsied.

### 3. Requirement to report a dead body

A law requiring the reporting of a dead body does exist, *see* Ohio Rev. Code § 2921.22(C), but Defendants misrepresent it. Defendants quote the law as follows:

> No person who discovers the body or acquires the first knowledge of the death of a person shall fail to report the death immediately … to a law enforcement officer, an ambulance service, an emergency squad, or the coroner in a political subdivision in which the body is discovered, the death is believed to have occurred, or knowledge concerning the death is obtained.

Dkt. 40 at 7. The law actually reads:

7

> No person who discovers the body or acquires the first knowledge of the death of a person shall fail to report the death immediately **to a physician or advanced practice registered nurse whom the person knows to be treating the deceased for a condition from which death at such time would not be unexpected**, or to a law enforcement officer . . . .

*Id.* (emphasis added).

Without Defendants' ellipsis, it is clear this law did not require them to call the police. Even assuming for the sake of argument that the fetus Plaintiff delivered was a "body" within the meaning of the law,[3] the reporting requirement is fulfilled by a report to a physician or advanced practice nurse if the death "would not be unexpected." The death of Plaintiff's fetus was expected, and she reported it to the requisite medical professionals. This law does not further require a physician who receives the report of an expected death to call the police because most deaths are not criminal. Moreover, the law applies only to the person with "first knowledge" of the death, which was Plaintiff in this instance, not Defendants. And according to Plaintiff's complaint, Moschell did not report a death; she falsely reported a possibly living baby. Dkt. 30, ¶ 57.

Defendants also cite Ohio Rev. Code § 2921.22(D) in support of their claim of immunity, but this provision does not authorize the dissemination of false information. Nor does it demand or authorize unconstitutional hospital-bed interrogations.

### 4. Requirement to aid a law enforcement officer

Defendants cite Ohio Rev. Code § 2921.23 as requiring them to aid law enforcement. They do not identify the "aid" they were enlisted to provide, but presumably they mean the

---

[3] The unavailability of a wrongful death cause of action for pre-viability fetuses strongly suggests a pre-viability fetus cannot properly be termed "a body." *See Egan v. Smith*, 87 Ohio App. 3d 763, 766 (1993).

hospital-bed interrogation of Ms. Watts. This statute, however, applies only when a person is "called upon for assistance in preventing or halting the commission of an offense, or in apprehending or detaining an offender." *Id.* This law does not conceivably require civilians to conduct interrogations. And again, Plaintiff committed no crime was not evading detention.

### 5. Absolute privilege in a judicial proceeding

Ohio courts recognize an absolute privilege for statements made in a judicial proceeding or that are relevant to a judicial proceeding. *Reister v. Gardner*, 2020-Ohio-5484, 164 Ohio St. 3d 546, 548 ("The litigation privilege provides absolute immunity to parties, witnesses, lawyers, and judges from future lawsuits for *statements* made during and relevant to judicial proceedings.") (emphasis in original). Defendants argue that Plaintiff's malicious prosecution claim cannot proceed because this privilege precludes liability for Defendants' statements to prosecutors. But Plaintiff's malicious prosecution claim also relies also on Defendants' statements to non-prosecutors, as well as on Defendants' actions, including writing false medical records, entering into a conspiracy, and interrogating Plaintiff. Dkt. 30, ¶¶ 62-72. Only statements are privileged, while acts and omissions are not. *Id.* (reversing grant of motion for judgment on the pleadings because liability was based on the rejection of rejecting settlement offers rather than on statements).

Although Defendants' discussions with prosecutors in preparation for a judicial proceeding cannot themselves provide a basis for liability, they are still relevant to Plaintiff's claims. These communications are evidence of Defendants' ongoing influence over the prosecution, meaning the causal chain was not broken. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007) ("Even if an intervening third party is the immediate

trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable.").

### 6. Qualified immunity for statements to law enforcement[4]

Defendants contend an Ohio qualified immunity doctrine shields them from liability for their statements to law enforcement. *See Mosley v. Evans*, 90 Ohio App. 3d 633, 636 (1993). As Defendants note, for this immunity to apply, the person asserting it must have made the statements in question in good faith and under proper circumstances. *Id.* Defendants contend that Moschell's contacts with Zupko and Raines before calling 911 definitively establish her good faith, but this is an inference would be a stretch even if Defendants were the nonmovants. Plaintiff alleges that Moschell enlisted Zupko and Raines to her nefarious cause. Dkt. 30, ¶¶ 52-55. Moschell then called 911 and falsely reported that a live baby may be struggling to survive. *Id.* ¶¶ 8-9, 57-58. Defendant Carrino made a false statement in a medical record to help incriminate Plaintiff. *Id.* ¶ 56. Plaintiff has more than adequately pleaded Defendants' bad faith in making statements to law enforcement, and moreover, as explained above, Defendants did more than merely make statements in their quest to have Plaintiff prosecuted, including by actively participating in an hour-long hospital-bed interrogation. Dkt. 30, ¶¶ 62-72. They simply cannot establish immunity on Plaintiff's allegations.

### 7. Health Insurance Portability and Accountability Act

The one federal law Defendants point to as granting them immunity is 45 CFR § 164.512, a regulation effectuating the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). This regulation relieves medical providers from HIPAA's confidentiality requirements under certain circumstances, including for "law enforcement purposes." *Id.* But

---

[4] This doctrine has no relationship to federal qualified immunity.

10

whether Defendants were authorized by HIPAA to disclose otherwise confidential health information is irrelevant to this case, which does not concern HIPAA violations. Defendants also make no attempt to grapple with the numerous qualifiers that limit HIPAA's law enforcement exception. *Id.* § 164.512(f)(1)-(6). Regardless, as explained above, whether Defendants had any justification for revealing Plaintiff's private medical information to law enforcement is a disputed fact. Plaintiff plausibly alleges that she committed no crime, meaning there was no crime for Defendants to report.

### B. Plaintiff Has Sufficiently Alleged a Conspiracy

The Sixth Circuit describes its test to evaluate whether a Plaintiff has stated a claim for a Section 1983 conspiracy as "simple." *Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 517 (6th Cir. 2020). The plaintiff need allege only (1) "a single plan existed"; (2) "each alleged coconspirator shared in the general conspiratorial objective," and (3) "an overt act was committed in furtherance of the conspiracy." *Id*. (internal citations and quotation marks omitted). "An express agreement need not exist, and each conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id.* (cleaned up). "Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire,… [and] circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000); *Webb v. United States*, 789 F.3d 647, 671 (6th Cir. 2015).

Plaintiff alleges Defendants Moschell, Zupko, and Raines met and communicated, knowing Plaintiff had done nothing illegal, and jointly decided to call police despite a lack of probable cause. Dkt. 30 ¶¶ 51-55. She further alleges Defendant Moschell participated in her unconscionable interrogation, aided by Defendant Carrino. *Id.* ¶¶ 62-71. During that

11

interrogation, Moschell made false promises of leniency[5] and caused Plaintiff to make involuntary statements that foreseeably were used against her, in a twisted form, in criminal proceedings. Dkt. 30, ¶¶ 50-55, 57-58, 60-71, 99-101. Defendant Carrino also made false statements in a medical record to influence the investigation. *Id.* ¶¶ 9, 10, 50, 56, 60, 62. In sum, Plaintiff alleges that all of the defendants engineered the criminal case against her. *Id.* ¶ 92. Defendants fail to address any of these allegations.

Defendants nevertheless argue, with little elaboration, that Plaintiff's allegations are too conclusory to establish a shared objective to deprive Plaintiff of her rights. But when a plaintiff names coconspirators, alleges they agreed to do something unlawful, and alleges they accomplished something unlawful, the plaintiff has provided "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Novak v. City of Parma*, 932 F.3d 421, 436 (6th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Defendants also argue that Plaintiff pleaded no facts alleging a "shared conspiratorial objective," but the Sixth Circuit rejects conspiracy claims on this basis only when there is a *complete absence* of allegations that the defendants acted in concert. *See, e.g., Farmer v. Phillips*, No. 20-5730, 2021 WL 6210609, at *4 (6th Cir. Oct. 19, 2021). A plaintiff need only show circumstantial evidence of acts toward a common objective. *Weberg*, 229 F.3d at 528; *Webb*, 789 F.3d at 671. Here, a reasonable inference—perhaps the only reasonable inference—is that Defendants were aware their knowingly false reports to police would cause Ms. Watts to be

---

[5] Defendants contend Plaintiff's allegations of false promises of leniency are unsupported by material facts, Dkt. 40 at 15, but Plaintiff specifically alleges that Defendants falsely told her she was not in trouble. Dkt. 30, ¶ 67. This is an unconstitutional false promise of leniency. *See, e.g., United States v. Siler*, 526 F. App'x 573, 575-76 (6th Cir. 2013).

investigated and prosecuted for a crime she did not commit. This is a sufficient allegation that Defendants acted with a common unlawful objective.

Defendants next assert that they cannot be held liable for conspiracy simply for furnishing information to police, citing *Dressler v. Rice*, No. 1:15CV606, 2017 WL 3033877, at *6 (S.D. Ohio July 18, 2017), *aff'd* 739 F. App'x 814 (6th Cir. 2018). But this argument assumes that the information Defendants provided to law enforcement was true (or only mistakenly incorrect), *id.*, despite Plaintiff's allegations that Defendants lied intentionally, Dkt. 30, ¶¶ 50-51, 54, 55, 57, 58, 61. Similarly, Defendants contend that the interrogation of Plaintiff was an ordinary nursing activity for which they cannot be liable. Dkt. 40 at 15-16. But interrogating a patient after calling the police to falsely report a crime is neither a nursing activity nor remotely ordinary. And even if Defendants plan to argue to a jury that their conduct was ordinary, they are not entitled to judgment as a matter of law. *Rudd,* 977 F.3d at 517 (specific, plausible allegations of conspiracy suffice "even if a defendant's briefing identifies a 'more likely alternative explanation[ ]' for what occurred," quoting *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013)).

Finally, although Plaintiff does allege that Defendant Carney searched for a way to bring charges, this is consistent with Plaintiff's claim of conspiracy. A goal of the conspiracy alleged in this case was to bring criminal consequences onto Brittany Watts, one way or another. Defendant Carney, the law enforcement officer, was playing his part.

### C. Plaintiff Has Sufficiently Alleged that Defendants Acted Under Color of Law

The same allegations that establish a claim for conspiracy establish that Defendants were acting under color of law. *See* Dkt. 30, ¶¶ 50-58, 62-71, 99-101, 114-119, 161, 163. As the Supreme Court has held, private individuals act under color of law when they conspire with a

13

public actor, like a detective. *Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). At the pleading stage, "'claims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors.'" *Rudd*, 977 F.3d at 512, quoting *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007)); *see also Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983—even though the party would not be eligible to assert a qualified immunity defense.").

Defendants argue Plaintiff has not alleged that they acted under color of law because Plaintiff, they say, did not allege that performance of a public function, compulsion by a state actor, or a sufficient nexus to the state action. Dkt. 40 at 12-13. But a "plaintiff may also show state action by establishing 'that a private party has engaged in a conspiracy or concerted action with other state actors.'" *Leta v. TriHealth, Inc.*, No. 23-3406, 2024 WL 229563, at *3 (6th Cir. Jan. 22, 2024), quoting *Weser v. Goodson*, 965 F.3d 507, 516 (6th Cir. 2020). And a conspiracy is itself a nexus sufficient to establish color of law. *Wilkerson v. Warner*, 545 F. App'x 413, 421 & n.2 (6th Cir. 2013). Defendants also contend Plaintiff did not allege Zupko and Raines acted under color of law, but Plaintiff alleged they participated in a conspiracy with a state actor, which, again, is sufficient. *E.g., Rudd*, 977 F.3d at 512.

### D. Plaintiff States Malicious Prosecution Claims under Federal and State Law

Defendants deny that Plaintiff has stated a malicious prosecution claim under federal or state law, once again ignoring Plaintiff's facts and relying on inferences in their favor.

14

### 1.  Federal malicious prosecution[6]

A Fourth Amendment malicious prosecution claim encompasses "wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (internal citation and quotation marks omitted). To state a federal malicious prosecution claim, Plaintiff must allege, as relevant here: (1) Defendants made, influenced, or participated in the decision to prosecute the plaintiff; and (2) there was no probable cause for the criminal prosecution. *Id.*; *see also King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017); *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017). "Active participation" is required, *Richards v. Cnty. of Washtenaw*, 818 F. App'x 487, 493 (6th Cir. 2020), meaning a plaintiff must allege some level of blameworthiness, such as providing a "deliberate or reckless falsehood," or participating in a conspiracy to maliciously prosecute, *Johnson v. Moseley*, 790 F.3d 649, 654-55 (6th Cir. 2015); *MacMaster v. Busacca*, No. 2:21-CV-11052, 2025 WL 311500, at *4 (E.D. Mich. Jan. 27, 2025) (blameworthiness established by knowingly falsely reporting a crime and participating in conspiracy to maliciously prosecute). Plaintiff's allegations meet these requirements.[7]

On the first element, Defendants' influence on the prosecution is shown by their knowing or reckless provision of false information to law enforcement. *Sanders v. Jones*, 728 F. App'x 563, 565 (6th Cir. 2018) (filing false police report, knowingly or recklessly, is malicious prosecution under the Fourth Amendment); *Gokor v. Schlievert*, 474 F. Supp. 3d 929, 936 (N.D.

---

[6] Defendants make no argument about Plaintiff's federal false arrest theory and have therefore waived any argument that this theory of Fourth Amendment liability should be dismissed. *Sykes*, 625 F.3d at 308 (distinguishing malicious prosecution from false arrest).

[7] Influence on a criminal case and lack of probable cause are fact-intensive inquiries that often cannot be resolved at summary judgment, let alone on the pleadings. *See Caskey v. Fenton*, No. 2:20-CV-1549, 2023 WL 4491756, at *6 (S.D. Ohio July 12, 2023); *Van Hull v. Marriott Courtyard*, 87 F.Supp.2d 771, 776 (N.D.Ohio 2000); *see also Lively v. Donald Dunning, D.D.S., Inc.*, 2013-Ohio-1350, ¶ 20.

Ohio 2020) (expert's knowing submission of false report leading to a wrongful prosecution satisfies first element of federal malicious prosecution claim). Engaging in a conspiracy to ensure that a person is pursued for criminal charges without probable cause also establishes the requisite influence. *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008); *MacMaster*, 2025 WL 311500, at *4. Defendants, Plaintiff alleges, did just that, *see* Dkt. 30, ¶¶ 9, 10, 50-57, 62-70, setting in motion the prosecution they not only foresaw but intended, satisfying the requirement of proximate cause.

Defendants, relying exclusively on state court cases,[8] argue that Detective Carney conducted an "independent investigation" and unilaterally decided to file charges, breaking the causal chain. But far from describing Carney's independence, Plaintiff alleges that Defendants Moschell joined him to interrogate Plaintiff with the assistance of Defendant Carrino. Dkt. 30, ¶¶ 62-70, 87-88. This is far more involvement than civilians commonly have in criminal investigations, and "[w]hether a civilian's instigation is sufficient to expose it to liability for a wrongful arrest made by an officer depends on the facts of each case," *Van Hull*, 87 F.Supp.2d at 776.

As to the second element, absence of probable cause, Plaintiff's allegations are also more than sufficient. Plaintiff alleges Defendants knew there was no probable cause because the fetus was not viable and had died before delivery, knew Plaintiff did not see the fetus, and knew she had no intent to harm the fetus. Dkt. 30, ¶¶ 9, 50, 55, 99-101, 131. Moreover, a nonviable fetus is not a "corpse" under Ohio law. *Id.* ¶ 101.

---

[8] Defendants' analysis relies almost exclusively on state law cases, meaning Defendants have developed no argument for dismissal of Plaintiff's federal malicious prosecution claim. *See Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) ("A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation").

Ignoring these allegations, Defendants simply point to the municipal court judge's probable cause finding in the preliminary hearing. Whether Defendants are arguing preclusion[9] or something else is unclear; in any event, Plaintiff's allegations that Defendants presented the municipal judge with false and misleading testimony and failed to present the exonerating audio recording of Plaintiff's interrogation, *see* Dkt. 30, ¶¶ 87-91, rebut any presumption of probable cause. *See Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 916-20 & n.8 (2017); *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (judicial finding of probable cause is rebutted "when the defendants knowingly present false testimony to the grand jury to obtain an indictment or when they testify with a reckless disregard for the truth") (cleaned up); *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014); *Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002) ("[A] finding of probable cause in a prior criminal proceeding does not bar a plaintiff in a subsequent civil action from maintaining a claim for malicious prosecution . . . where the claim is based on a police officer's supplying false information to establish probable cause.") (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001)); *Schertz v. Waupaca Cnty.*, 875 F.2d 578, 581 (7th Cir. 1989) ("[T]he preliminary hearing determination does not preclude relitigation of the probable cause issue.").

### 2. State law malicious prosecution

Defendants do not distinguish between federal and state malicious prosecution and make the same arguments for both. As explained above, Defendants, who set this investigation in motion and participated in it, are not entitled to an inference that Defendant Carney conducted an "independent investigation." *See Mitles v. Young,* 394 N.E.2d 335, 338 (1978) (finding that

---

[9] *Bradley v. Reno*, 749 F.3d 553, 558 (6th Cir. 2014) (holding there is no "§ 1983/probable cause exception to the norm that unappealable rulings are not eligible for issue preclusion").

private citizens had instigated the plaintiff's arrest by "point[ing] the finger of crime" at him); *Cox v. Kobacker Stores, Inc.,* Case No. 85CA2, 1985 WL 8081, at *2 (Ohio Ct.App. Aug. 30, 1985) (denying summary judgment where a reasonable inference could be drawn that the defendant "*intended* the police to apprehend" the plaintiff) (emphasis added).

Also as under federal law, a judicial finding of probable cause is not binding under state law. *Adamson v. May Co.*, 8 Ohio App. 3d 266, 268–69, 456 N.E.2d 1212, 1215–16 (1982) ("It should be obvious that the bind over order and the indictment should not have conclusive weight."). The finding is rebutted if it was based on false information from a defendant, *see Reasbeck v. Wheeling Pittsburgh Steel Corp.*, 230 F.3d 1359 (6th Cir. 2000) (Table) (applying Ohio law) (private individuals may be held civilly liable for an unreasonable prosecutorial seizure claim "if the information provided" to institute criminal proceedings "was known to be false"), which is what Plaintiff alleges. Dkt. 30, ¶¶ 87-91.

Additionally, under state law, a judicial probable cause finding can be rebutted if the proceeding was "irregular." *Mayes v. Columbus*, 105 Ohio App. 3d 728, 738 (1995); *Adamson,* 8 Ohio App. 3d at 268-69. And the preliminary proceedings in this case were highly irregular indeed. Just before finding probable cause, the judge conceded he did not understand the law he was applying, stating:

> I am not going to put myself in a position to determine the legal status of this birthing tissues, body, corpse fetus and whatever. . . . There were better scholars than I am to determine the exact legal status of this fetus, corpse, body, birthing tissue, whatever it is. . . . At what point something becomes viable and what time something because that's—I'm not going to make a position on that matter. Therefore, based on the evidence that I did hear, the court does find Probable cause, this defendant to be bound over to the grand jury, bond will be continued.

Ex. 1 (Preliminary H'rg Transcript) at 64:7-65:7. This explicit punt by a judge was highly unusual and further undermines this preliminary probable cause finding.

18

**E. Plaintiff's Due Process Claim for Fabrication of Evidence Is Viable**

Plaintiff claims in Count III that Defendants violated the Fourteenth Amendment's Due Process Clause by fabricating evidence against her. Defendants argue this claim cannot proceed because Ohio provides a cause of action for malicious prosecution. The Sixth Circuit, however, recognizes a "standalone fabrication-of-evidence claim," one that is rooted in federal due process and does not require any inquiry into state tort law. *See Tanner v. Walters*, 98 F.4th 726, 732-34 (6th Cir. 2024).

Defendants' mistaken argument stems from a misplaced reliance on the district court case *Massengale v. Perhacs*, No. 1:24-CV-1793, 2025 WL 1573190, at *6 (N.D. Ohio May 6, 2025). In that decision, the magistrate judge relied on dicta from *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990) (en banc), to reject the plaintiff's due process claims for fabrication of evidence and suppression of exculpatory evidence, stating that such claims cannot proceed "if a state provides an adequate remedy for an alleged violation, for instance, if it permits tort actions for false arrest, false imprisonment, or malicious prosecution." *Massengale*, 2025 WL 1573190, at *6.[10] Because every state allows such tort actions, a huge swath of federal constitutional claims, including all *Brady*[11] claims, would be wiped out if *Massengale* were correct.

*Massengale*, however, was wrongly decided in at least two ways. First, the Sixth Circuit has held that "*Braley* does not apply where, as here, the plaintiff did not seek damages in state court." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 900 (6th Cir. 2014). Second, the Sixth Circuit has rejected the *Braley* dicta cited in *Massengale,* which Defendants rely upon, as unpersuasive and contrary to "the well-established principles that a plaintiff may maintain a

---

[10] These aspects of the magistrate judge's conclusions were never reviewed. *See Massengale v. Perhacs*, No. 1:24-CV-01793, 2025 WL 1452707 (N.D. Ohio May 21, 2025).

[11] *Brady v. Maryland*, 373 U.S. 83 (1963) (exculpatory evidence may not be suppressed).

§ 1983 action without exhausting state judicial remedies." *Id.*, citing *Monroe v. Pape,* 365 U.S. 167 (1961). The *Braley* dicta had stretched *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), well beyond its holding that procedural due process is satisfied if the state provides a post-deprivation remedy for deprivations of *property* that are the result of "random and unauthorized act[s]." *Id.* The Sixth Circuit set things straight in *Daily Services*, which controls here, but which *Massengale* does not discuss.

Defendants also rely on *Massengale* for the idea that Plaintiff's due process fabrication claim cannot proceed alongside her Fourth Amendment malicious prosecution claim. But in *Tanner v. Walters*, another Sixth Circuit case not mentioned in *Massengale*, the plaintiff was permitted to proceed on her federal due process fabrication claim at the time as her Fourth Amendment federal malicious prosecution claim, even though the latter claim was "premised on the same facts underlying her claim for fabrication of evidence." 98 F.4th at 732-34. Plaintiff's case presents the same situation, and so Plaintiff's case also must be permitted to proceed. *Massengale* is not persuasive or reliable authority.

## CONCLUSION

For the reasons given above, Defendants' motion for judgment on the pleadings, Dkt. 40, should be denied in full.

Dated: November 28, 2025                    Respectfully submitted,

                                            *s/ Julia Rickert*
                                            JON LOEVY
                                            JULIA RICKERT
                                            RACHEL BRADY
                                            RENEE SPENCE
                                            Loevy + Loevy
                                            311 N. Aberdeen St., 3rd Floor

20

Chicago, IL  60607
P: (312) 243-5900
F: (312) 243-5902
julia@loevy.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Northern District of Ohio Local Civil Rul. 7.1(f), I hereby certify that this memorandum adheres to the page limitations set forth in Rule 7.1(f).

s/ Julia Rickert
*One of Plaintiff's Attorneys*
