# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| BRITTANY WATTS<br><br>    Plaintiff<br><br>v.<br><br>BON SECOURS MERCY HEALTH,<br>*et al.*,<br><br>    Defendants. | CASE NO. 4:25-cv-00049<br><br>JUDGE SARAH LIOI<br><br>**REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON BEHALF OF DEFENDANTS [#40]** |

Plaintiff's Reply and the attached transcript demonstrate there is no dispute as to the following facts:

- The Plaintiff gave birth to an 11-inch one-pound baby into the water of her toilet.

- She then tried to flush the 11-inch-long baby down the toilet.

- And when she was unsuccessful in doing so, she attempted to use a plunger to flush the baby down the toilet.

- These Defendants had no involvement in the probable cause hearing where a state court judge determined probable cause existed for the commission of a crime.

- Plaintiff has alleged no facts demonstrating a conspiracy with state actors to meet the narrow exception which would impose 1983 liability upon Defendants and abrogate the state law immunities.

The Amended Complaint simply has no facts which would establish these Defendants conspired with the police, which would implicate federal law. Rather, there was a clear chance the baby had been born alive, and at the very least it needed to be examined by the coroner and a death certificate issued. Simply telling the police that a fully formed baby, which had the potential to live after birth for a period of time, was somewhere laying around Plaintiff's house, cannot impose

liability on the hospital Defendants. But that is all the Amended Complaint alleges, and it thus must be dismissed.

**A. Plaintiff Has Failed to Plausibly Allege State Action to Support Her § 1983 Claims.**

Plaintiff relies exclusively on a conspiracy theory to show state action—a required element in § 1983 claims. Despite her belief otherwise, her conspiracy claim cannot simply be based on an allegation that Defendants refused to follow state law. As a general rule, private actors cannot be held liable under § 1983 except "in <u>rare</u> circumstances." (Emphasis added.) *Leta v. TriHealth, Inc.*, 2024 U.S. App. LEXIS 1548, *7 (6th Cir. Jan. 22, 2024). Plaintiff must plead specific facts, and her allegations must be plausible. *See Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887-888 (6th Cir.2024); *Rudd v. City of Norton Shores*, 977 F.3d 503, 517 (6th Cir.2020). Plaintiff does not meet this test.

*First,* Plaintiff's assertion that Defendants conspired to deprive her of her constitutional rights is anything but plausible. The Amended Complaint's only allegations of communication between Carney, the only state actor involved in the alleged conspiracy, and these Defendants are speculative—based on information and belief—rather than factual. (Doc. #: 30 at ¶ 62, 70.) *See Smith v. GM LLC*, 988 F.3d 873, 885 (6th Cir.2021), quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir.2006) ("[C]omplaints grounding claims on 'information and belief' … 'must set forth a factual basis for such belief,' and plaintiffs cannot 'base claims of fraud on speculation and conclusory allegations'"). Plaintiff fails to set forth a factual basis for such belief as required to survive a motion for judgment on the pleadings. *Id.* Simply, Plaintiff fails to adequately allege a single plan existed and that Defendants shared a conspiratorial objective to deprive Plaintiff of her constitutional rights. *Leta*, 2024 U.S. App. LEXIS 1548 at *7-8.

*Second,* in support of her conspiracy claim, Plaintiff claims that her allegation that "Defendants were aware their knowingly false reports to police would cause Ms. Watts to be investigated and prosecuted for a crime she did not commit" sufficiently alleges a common unlawful objective. (Doc #: 44 at p. 12-13). This argument fails for two reasons. For one, Plaintiff miscites her own allegations. The Amended Complaint alleges that Moschell consulted Raines and Zupko and *either* told them that Plaintiff had given birth at home to a viable, live baby" *or* that Plaintiff "had not delivered a viable fetus or living baby." (Doc. #: 30 at ¶ 51-54.) Clearly, Plaintiff has no idea what conversation took place between Defendants. For two, this suggests that the Mercy Health Defendants *alone* shared a conspiratorial objective. However, per the intracorporate conspiracy doctrine, "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Novak v. City of Parma*, 932 F.3d 421, 436 (6th Cir.2019). This allegation is not supported.

B.  **The Transcript of the Preliminary Hearing Requires Dismissal.**

The transcript of the preliminary hearing, which Plaintiff attached as an exhibit to her Reply, demonstrates that the court found probable cause *with no involvement* from the moving Defendants. (*See generally* Doc #: 44-1.) Plaintiff (a) flushed the 11-inch one-pound baby down the toilet; (b) plunged the toilet several times; and (c) then went to a hair appointment before going to the hospital without the baby. (Doc #: 44-1 at p. 24-25, 47-48.) At 22-weeks, the baby was developed and looked like a "small child." (*Id.* at p. 14-15, 35). The forensic pathologist who performed the autopsy testified that the baby could have been born alive and lived for a period of time. (*Id.* at p. 43). He testified that proper disposal of the baby would be by burial or incineration by a specialized, licensed company—not thrown into the garbage or flushed down the toilet. (*Id.* at p. 43-44). Generally, when a baby in the second trimester is delivered into a toilet, first

3

responders are called, and they remove the fetal remains. (*Id.* at p. 47.) But Plaintiff did not call first responders or remove the fetal remains for proper disposal.

All this transcript shows is (a) these Defendants had no involvement in the probable cause finding—no testimony or statements from these Defendants were used to find probable cause. And that probable cause—by an Ohio state court judge—was determined to exist for the crime. Both of these facts bar Plaintiff's claims.

**C. Plaintiff Misrepresents and Misapplies the Law.**

Plaintiff misguidedly argues that Defendants are not immune under R.C. 2921.22 because she claims she did not commit a crime and because of the physician/advance practice registered nurse and patient privilege. (Doc #: 44 at p. 5-6.) But Plaintiff concedes that Ohio law requires that a fetal death certificate be issued before disposition of fetal remains. (*Id.* at p. 7.) It therefore logically follows that Plaintiff did commit a crime—she disposed of fetal remains improperly and without first obtaining a fetal death certificate. (*See generally* Doc #: 44-1.) However, Defendants do not need to prove that Plaintiff committed a crime. Their reasonable belief and the fact that probable cause was found at the preliminary hearing are enough to entitle them to immunity under the reporting statutes and to entitle them to qualified immunity for disclosing information to police. *See* R.C. 2921.22; *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395 (1999), paragraph two of the syllabus; *Popke v. Hoffman*, 21 Ohio App. 454, 456 (6th Dist.1926); *Stokes v. Meimaris*, 111 Ohio App. 3d 176, 189 (8th Dist.1996).

Further, Plaintiff erroneously argues that she fulfilled the requirements of R.C. 2921.22(C) by reporting the fetal death to Defendants. The circular logic of Plaintiff's position here is obvious: she told the hospital Defendants of the death—but they were then unable to tell anybody else, so that an autopsy and death certificate could be obtained?

In any event, she did not report a fetal death to the Defendants. She showed up to the hospital without the baby. She "believed" but did not know that she had miscarried. (Doc #: 30 at ¶ 44.) She assumed she had because she looked at the toilet but did not see the baby. And because she heard no sound or saw no movement. (*Id.*) Let's ignore the logical nature of Plaintiff's position—she dropped the 11-inch baby into the toilet water, but thought it was not alive because she did not hear it cry? How could it—she dropped it into water? And despite this, Plaintiff did not do anything more to see whether the baby was alive. (*Id.*) Instead, she flushed the toilet and attempted to scoop up its contents with a bucket when it overflowed. (*Id.* at ¶ 46.) Plaintiff had no idea whether the baby was alive and only learned that the baby had died in utero after an autopsy was performed. (*Id.* at ¶ 48.) Defendants properly contacted police so that the baby could be located.

Defendants were authorized by Ohio's reporting statutes to report Plaintiff's conduct which was in violation of the Revised Code and to report the fetal death so that the remains could be located, a fetal death certificate could be issued, and the remains could be properly disposed of. R.C. 2921.22 provides that no disclosure of information under the section can give rise to any cause of action or recrimination of any kind for breach of privilege or confidence. *See* R.C. 2921.22. This immunity extends to disclosure of information which is privileged and which the person disclosing it is not required to disclose. *See* R.C. 2921.22, 1974 Committee Comment to H511.

D. **Plaintiff Attempts to Repaint Her Allegations.**

Plaintiff ironically misrepresents her own allegations. But there is no dispute that Plaintiff did not know with certainty that the baby had not survived when she delivered it into the toilet and flushed the toilet. (Doc. #: 30 at ¶ 44, 46.) And in fact, the baby could have been born alive and

5

lived for a short period of time. To be sure, Plaintiff did not learn that the baby had died in utero until after investigators had removed it from the toilet and an autopsy was performed. (*Id.* at ¶ 75.) And there is no dispute that Plaintiff presented to the hospital without the baby.

Further, Plaintiff does not dispute that Defendants cannot be held liable for making statements to prosecutors in this case. (Doc #: 44 at p. 9.) Plaintiff simply alleges—with mere conclusions—that some type of conspiracy or malice took place here. But there are absolutely no facts which suggest these Defendants engineered any type of prosecution of the Plaintiff. Simply, conclusions are not sufficient. *Dressler v. Rice*, 2017 U.S. Dist. LEXIS 111308, *19 (S.D. Ohio July 18, 2017), quoting *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). This is especially true when a judge independently finds probable cause that a crime was committed. Simply, how could the Defendants be liable for reporting something that a judge independently determined was probable cause for the existence of a crime?

Finally, Plaintiff essentially abandons her claim for unauthorized disclosure of confidential medical information by asserting that "whether Defendants were authorized by HIPAA to disclose otherwise confidential information is irrelevant to this case, which does not concern HIPAA violations." (Doc #: 44 at p. 10-11.).

Respectfully submitted,

**REMINGER CO., L.P.A.**

*/s/ Patrick Kasson*
Patrick Kasson (0055570)
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311/(614) 232-2410
pkasson@reminger.com

*/s/ Thomas A. Prislipsky*
THOMAS A. PRISLIPSKY (0067623)
950 Windham Court Suite 200

Youngstown, Ohio 44512
(330) 744-1311/(330) 744-7500 fax
tprislipsky@reminger.com

*Attorneys for Defendants Bon Secours Mercy Health, Mercy Health Youngstown LLC d/b/a St. Joseph Warren Hospital, Connie Moschell, Jordan Carrino, Parisa Khavari, Suzanne Zupko, and Fred Raines*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed electronically this 17th day of December, 2025. All parties will receive notice of this filing by operation of the Court's electronic filing system.

*/s/ Patrick Kasson*
THOMAS A. PRISLIPSKY (0067623)
PATRICK KASSON (0055570)