# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| BRITTANY WATTS, | ) | CASE NO. 4:25-cv-49 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| BON SECOURS MERCY HEALTH, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is the motion of defendants Bon Secours Mercy Health, Mercy Health Youngstown LLC d/b/a St. Joseph Warren Hospital, Connie Moschell, Jordan Carrino, Parisa Khavari, Suzanne Zupko, and Fred Raines (the "Hospital Defendants") for leave to file an initial motion for summary judgment and stay all expert discovery. (Doc. No. 59 (Motion).)[1] The Hospital Defendants argue that this court should stay expert discovery and allow them to file an initial motion for summary judgment (without prejudice to their ability to file another summary judgment motion if the early motion is unsuccessful) because (1) plaintiff Brittany Watts "has refuted almost every material allegation in the [c]omplaint" during her deposition (*id.* at 3) and (2) one of the claims against defendant Khavari is "clearly time-barred" by the statute of limitations. (*Id.* at 13.) Watts opposes the motion (Doc. No. 66 (Opposition)), arguing that the issues are better

---

[1] The motion suggests that it was filed on behalf of *all defendants*—including the City of Warren, Ohio and Nicholas Carney. (*See* Doc. No. 59, at 1 n.1 (including "City of Warren, Ohio[] and Nicholas Carney" in definition of "Hospital Defendants").) The Court assumes that the inclusion of the City of Warren, Ohio and Nicholas Carney was a mistake because counsel for the City of Warren, Ohio and Nicholas Carney did not sign on to the motion.

addressed after discovery closes.

Although Watts's deposition testimony gives the Court pause, it ultimately agrees with Watts that the Hospital Defendants' arguments are better addressed after discovery closes. Responding to the Hospital Defendants' first argument will likely require additional discovery—including expert discovery. Further, a summary judgment motion based on the Hospital Defendants' second argument would, at most, resolve only a small portion of this case, causing piecemeal litigation of dispositive motions and wasting judicial resources. Accordingly, a summary judgment motion now would be premature, and the motion is **DENIED**.

## I.    BACKGROUND

This case begins with the unfortunate miscarriage suffered by Watts in September of 2023. As alleged in her amended complaint, Watts first arrived at St. Joseph Warren Hospital 21 weeks pregnant and bleeding from her vagina. (Doc. No. 30 (Amended Complaint) ¶¶ 22–23.) Doctors concluded that Watts had developed a premature rupture of membranes, that the amniotic fluid had drained from her uterus, that she had an infection, that her pregnancy was not viable, and that her fetus would likely die in utero or shortly after delivery. (*Id.* ¶¶ 28–31.) Despite these findings, and despite hours of waiting at the hospital over two days, as Watts alleges, Hospital Defendants—including Watts's obstetrician-gynecologist, Khavari—never provided Watts with care. (*Id.* ¶¶ 25–26, 34–39.)

After returning home, Watts painfully miscarried. (*Id.* ¶¶ 42–44.) Watts evacuated blood, blood clots, tissue, and, unbeknownst to her, her now dead fetus. (*Id.* ¶¶ 43–44, 48.) An autopsy would later confirm that the fetus had died in utero. (*Id.* ¶ 75.)

Watts alleges that, upon her return to the hospital following her miscarriage, the Hospital

2

Defendants made false statements, fabricated evidence, and conspired with law enforcement to have Watts wrongfully charged with a crime. Despite knowing that Watts had a nonviable pregnancy and had miscarried at home (*id.* ¶ 50), some of the Hospital Defendants, as alleged, told law enforcement and suggested in Watts's medical file that she had given birth to a live baby and had left it at home. (*Id.* ¶¶ 51, 53–54, 56–57.) Watts further alleges that some of the Hospital Defendants then assisted law enforcement in unlawfully interrogating Watts about her miscarriage and accused her of nefarious conduct. (*Id.* ¶¶ 62, 65, 70–71.)

Law enforcement then charged Watts with abuse of a corpse under Ohio law. (*Id.* ¶ 76.) Watts alleges that some of the Hospital Defendants met with prosecutors to assist in the case against her. (*Id.* ¶ 87.) In the end, a grand jury declined to indict Watts, finding no probable cause to support the charged offense. (*Id.* ¶ 92.)

Watts then filed the present suit bringing various claims under 42 U.S.C. § 1983 for violations of her Fourth, Fifth, and Fourteenth Amendment rights; a claim under the Emergency Medical Treatment and Labor Act ("EMTALA"); and various claims under Ohio law, including as relevant here, a claim for medical negligence. (*Id.* at 16–27.)[2] Discovery in this case is ongoing. Fact discovery will close on March 24, 2026, and expert discovery will close on June 29, 2026. (Doc. No. 69 (Second Amended Case Management Plan and Trial Order).) The Hospital Defendants now argue that they should be allowed to move for early summary judgment based on a deposition of Watts taken early on in discovery. (*See generally* Doc. No. 59.)

---

[2] All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

3

## II.     LEGAL STANDARD

Consistent with other federal courts, this Court "typically permits only one summary judgment motion per party[.]" (Doc. No. 41 (Initial Standing Order), at 9); *see also Crawford v. Tilley*, 15 F.4th 752, 764 n.3 (6th Cir. 2021) ("[M]any federal judges do not favor multiple summary judgment motions[.]" (collecting cases)). Also consistent with other federal courts, this Court anticipates summary judgment motions "only after completion of discovery[]" and "reserves the right to dismiss without prejudice any prematurely filed motion." (Doc. No. 41, at 9); *see also Crawford*, 15 F.4th at 764 n.3 ("[F]ederal court scheduling orders . . . typically contemplate a summary judgment deadline that falls after discovery. And Rule 56(d) allows a party to argue that discovery is necessary in order to oppose summary judgment." (citation omitted)). That said, district courts have discretion to permit early and multiple summary judgment motions. *See Crawford*, 15 F.4th at 764 n.3 ("[C]ourts have the discretion to consider multiple summary judgment motions[.]"); *ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs. LLC*, No. 2:20-cv-1470, 2022 WL 22908259, at *3 (D. Nev. Feb. 17, 2022) ("[I]t is within the Court's discretion to consider granting leave to file an early motion for summary judgment.").

Where, as here, a party seeks leave to file an early dispositive motion without prejudice to their ability to file a successive dispositive motion, courts tend to consider three factors: (1) whether the proposed dispositive motion raises a legal or factual issue, *see e.g., GPB Tr. Co., LLC v. Gemini Ins. Co.*, No. 25-cv-1111, 2025 WL 1666748, at *1 (D. Minn. June 12, 2025) (citation omitted); *Bekaert Corp. v. Standard Sec. Life Ins. Co. of New York*, No. 5:09-cv-2903, 2010 WL 3959629, at *5 (N.D. Ohio Oct. 8, 2010); *XP Glob., Inc. v. AVM, L.P.*, No. 16-cv-80905, 2016 WL 4987618, at *9 (S.D. Fla. Sept. 19, 2016); *Franklin D. Azar & Assocs., P.C. v. Exec. Risk Indem.,*

4

*Inc.*, No. 1:22-cv-01381, 2023 WL 4330621, at *6 (D. Colo. June 9, 2023); (2) whether the nonmovant has had adequate time to conduct the discovery necessary for their opposition, *see e.g., GPB Tr. Co., LLC*, 2025 WL 1666748, at *1 (citations omitted); *Turner Constr. Co. v. Wyatt Inc.*, No. 1:16-cv-58, 2016 WL 9412453, at *1 (N.D.W. Va. Nov. 18, 2016) (citations omitted); *Lowthorp v. Mesa Air Grp. Inc.*, No. 20-cv-00648, 2022 WL 604886, at *1 (D. Ariz. Mar. 1, 2022) (citation omitted); *United States v. Morten*, No. 2:22-cv-730, 2023 WL 5155731, at *1 (M.D. Fla. July 24, 2023); and (3) whether the proposed motion would potentially resolve the entire case or risk inefficient, piecemeal litigation of dispositive motions. *See GPB Tr. Co., LLC*, 2025 WL 1666748, at *1 (citation omitted); *Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*, No. 20-cv-25318, 2021 WL 5505778, at *1 (S.D. Fla. Nov. 24, 2021) (citation omitted).

## III.   DISCUSSION

### a.  Watts's Deposition

The Hospital Defendants first argue that an early dispositive motion should be permitted because Watts, in her deposition, supposedly "refuted almost every material allegation in the [c]omplaint." (Doc. No. 59, at 3.) The Hospital Defendants spend pages comparing Watts's allegations to her deposition testimony. (*Id.* at 3–13.) Watts counters that the Hospital Defendants mischaracterize the deposition transcript. (Doc. No. 66, at 3–5.)[3] But the Court is not now tasked with determining the merits of this argument. Rather, this Court need only decide whether, in light

---

[3] Watts criticizes the Hospital Defendants for relying on "misleading snippets of testimony, answers to questions that lacked foundation, and mischaracterizations of Ms. Watt's [sic] answers." (Doc. No. 66, at 3.) Yet, the Hospital Defendants complain that Watts was "aggressively adamant the entire deposition of [Watts] not be made part of the public record." (Doc. No. 60, at 3 n.2.) If this is true, Watts is cautioned that she is not the arbiter of what the Hospital Defendants my rely on in support of their motion.

5

of the factors identified above, the Hospital Defendants put forth adequate grounds for leave to file an early dispositive motion.

The Court first considers the type of issue the Hospital Defendants seek to raise and whether it is primarily legal or factual. The Hospital Defendants base their motion on Watts's deposition transcript and the claim that it contradicts her allegations. This is a quintessential factual argument. The factual nature of the proposed dispositive motion weighs against granting leave. *See Bekaert Corp.*, 2010 WL 3959629, at *5 (denying leave to file early dispositive motion where movant's argument raised "a factual dispute which is germane to the claims herein[.]").

The Court next turns to whether Watts has had adequate time to develop the record necessary to oppose summary judgment. Watts indicates that "a key Hospital Defendant has not yet been deposed" and that such deposition could create issues of fact precluding summary judgment. (Doc. No. 66, at 5.) Further, many of the deposition excerpts the Hospital Defendants rely on in their motion concern the type, standard, and quality of health care Watts received or should have received. (Doc. No. 59, at 7–12 (discussing allegations and testimony concerning whether Watts received meaningful treatment, whether Watts was appropriately advised as to the availability of a Dilation and Evacuation (or "D&E") procedure, and whether Watts was appropriately advised on how to manage her miscarriage).) Watts's opposition on these points will likely require expert testimony. *See e.g., Carter v. Lake Cnty.*, No. 1:15-cv-37, 2017 WL 10940936, at *2 (N.D. Ohio Dec. 27, 2017) ("The standard of care in the medical community . . . must be established through the testimony of experts."); *Bruni v. Tatsumi*, 346 N.E.2d 673, 676 (Ohio 1976) ("The issue as to whether the physician and surgeon has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the

6

testimony of medical experts."). Here, expert discovery has not concluded. Indeed, Watts's expert disclosure is not due until April 24, 2026. (Doc. No. 69.) Watts has not yet had adequate opportunity to develop the record necessary for her opposition. This factor thus weighs against leave to file an early dispositive motion. *See GPB Tr. Co., LLC*, 2025 WL 1666748, at *2 (denying leave to file early dispositive motion where at least some discovery was still necessary to decide issue); *Morten*, 2023 WL 5155731, at *1 (denying leave to file early dispositive motion where nonmovant "state[d] she require[d] discovery to oppose the . . . motion for summary judgment.").

Finally, the Court looks to whether the proposed early dispositive motion could potentially resolve the entire case. While the motion is unclear as to whether the Hospital Defendants would seek full or partial summary judgment, (*see* Doc. No. 59, at 3 ("[Watts's deposition] has refuted *almost* every material allegation[.]" (emphasis added))), the Court presumes that the Hospital Defendants will seek full summary judgment. This weighs in favor of granting leave to file an early dispositive motion. *Cf. GPB Tr. Co., LLC*, 2025 WL 1666748, at *2 (movant's request for leave to file *partial* summary judgment motion weighed against granting leave).

On the whole, the analysis weighs against granting leave. The Hospital Defendants seek leave to move for summary judgment on issues that will likely require additional fact and expert discovery before Watts has had adequate opportunity to conduct such discovery. In this posture, the Hospital Defendants' desire to file an early summary judgment motion is outweighed by Watts's right to complete discovery before having to defend against summary judgment. To the extent the motion seeks leave to file an early dispositive motion based on Watts's deposition testimony, the motion is **DENIED**.

### b. The "180-Day Letter" and Statute of Limitations

The Hospital Defendants next argue that they should at least be permitted to seek summary judgment on the medical negligence claim[4] against Khavari. (Doc. No. 59, at 13.) By way of background, the statute of limitations for medical malpractice claims is one year, but that time can be extended by 180 days if, before the expiration of the one-year period, the claimant sends a letter (referred to as a "180-day letter") giving notice of the claimant's claims. Ohio Rev. Code § 2305.113(A), (B)(1). The Hospital Defendants argue that the medical negligence claim is time-barred because Khavari was not served within a year of the alleged malpractice, and Watts's 180-day letter was not addressed to or received by Khavari. (Doc. No. 59, at 13–14.) Watts counters that her 180-day letter was addressed to Khavari's employer and explicitly directed them to inform Khavari of the letter, as permitted by the statute.[5] (Doc. No. 66, at 1–3.) Again, the merits of these arguments are not now before the Court. The Court is simply tasked with deciding whether resolution of these issues should wait until after discovery closes.

The Court begins with the type of issue raised. On first blush, the parties appear to raise two largely legal issues: (1) whether the 180-day letter, as written, provided sufficient notice of Watts's claim and (2) whether Watts's 180-day letter had to be received by and/or specifically addressed to Khavari herself to be effective under Ohio Rev. Code § 2305.113. (*Compare* Doc.

---

[4] The Court notes that there are three claims against Khavari—intentional and negligent infliction of emotional distress and medical negligence. (Doc. No. 30, at 22–23.) The Hospital Defendants appear to only argue for early summary judgment on the medical negligence claim. (Doc. No. 59, at 14 (citing case law on statute of limitations for medical negligence claims).)

[5] The Hospital Defendants' motion originally included an incomplete copy of the 180-day letter. (*See* Doc. No. 60-2 (180-day letter with second page omitted).) At the January 7, 2026 status conference, Watts's counsel pointed out that the Hospital Defendants' filing omitted the second page of the letter which specifically named Khavari and directed that she be informed of the letter. The Hospital Defendants then filed a supplement to their motion including the full letter. (Doc. No. 62.) Counsel for the Hospital Defendants are cautioned to carefully review their filings.

8

No. 59, at 14 (Hospital Defendants arguing that "an [sic] 180-day letter not received and/or specifically addressed to a doctor is ineffective"), *with* Doc. No. 66, at 2 (Watts arguing that Ohio Rev. Code § 2305.113(B)(2)(c) allows for delivery of 180-day letters to defendant's employer).) While the Court may be able to decide the first issue on the 180-day letter alone, resolving the second issue in Hospital Defendants' favor may require resort to a potentially disputed factual issue (at least as the parties have presented the matter to the Court): whether Khavari, in fact, received the 180-day letter. (*See* Doc. No. 66, at 3 ("Whether [d]efendants . . . actually did fail to provide the letter to Dr. Khavari remains to be seen.").) This potential mixed issue of law and fact weighs against granting leave to move for early summary judgment. *See XP Glob., Inc.*, 2016 WL 4987618, at *9 (denying leave to file early dispositive motion on statute of limitations where "[a]ddressing [the relevant] doctrines requires a review of the evidence that is likely intertwined with the merits."); *see also Franklin D. Azar & Assocs., P.C.*, 2023 WL 4330621, at *6 ("Although the Court granted leave to file the early [m]otion for [p]artial [s]ummary [j]udgment, . . . it appears that there are, indeed, material factual disputes that would make a ruling on the question of law presented by [p]laintiffs premature.").

The Court next turns to whether Watts has had adequate discovery to respond to the proposed dispositive motion. On this issue, the record is unclear. On one hand, Watts's filings indicate that Khavari herself has already been deposed, (*see* Doc. No. 66-3 (Excerpt of Khavari Depo.)), and Watts could have presumably inquired as to the 180-day letter in that deposition. But the record does not indicate whether, when she took Khavari's deposition, Watts asked Khavari about the 180-day letter. Further, Watts indicates that she may need the information gleaned from the upcoming deposition of the Hospital Defendant's Rule 30(b)(6) witness to adequately respond

9

to the proposed dispositive motion. (Doc. No. 66, at 3.) Given the lack of clarity on this issue, the Court finds this second factor neutral.

Finally, the Court considers whether the proposed dispositive motion could dispose of the entire case. Far from resolving the entire case, the Hospital Defendants' statute-of-limitations argument could, at most, resolve one claim against one defendant. Indeed, the proposed dispositive motion would not even entirely dispose of the claims against Khavari; the claims for negligent and intentional infliction of emotional distress would remain. Granting leave would result in the piecemeal litigation of dispositive motions at the expense of judicial economy. *Cf. Bluegreen Vacations Unlimited, Inc*., 2021 WL 5505778, at *1 (rule against multiple summary judgment motions "conserve[s] judicial and party resources by preventing piecemeal filings[.]"). This factor weighs against granting leave. *See GPB Tr. Co., LLC*, 2025 WL 1666748, at *2 (movant's request for leave to file *partial* summary judgment motion weighed against granting leave).

Consideration of the factors weighs against granting leave. The Hospital Defendant's proposed dispositive motion may involve an issue of fact, and it is unclear whether Watts has had adequate opportunity to fully develop the record on the issue. Additionally, allowing an early dispositive motion here for the limited purpose of disposing of a single claim against a single defendant that is not dispositive of all claims against that defendant will not be an efficient use of judicial resources. Thus, the motion is **DENIED** to the extent it seeks leave to file an early dispositive motion based on the statute of limitations applicable to the medical negligence claim against Khavari. Because the Court denies leave to file an early dispositive motion, the Court sees no reason to stay expert discovery and that portion of the Hospital Defendants' motion is, likewise, **DENIED**.

10

## IV.    CONCLUSION

For the reasons stated above, the Hospital Defendants' motion for leave to file initial motion for summary judgement and a stay of all expert witness discovery (Doc. No. 59) is **DENIED**.

**IT IS SO ORDERED**.

Dated: March 4, 2026

                                                      
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

11