**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| BRITTANY WATTS, | ) | CASE NO. 4:25-cv-49 |
|  | ) |  |
|  | ) |  |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
|  | ) |  |
| vs. | ) |  |
|  | ) | **MEMORANDUM OPINION** |
|  | ) | **AND ORDER** |
| BON SECOURS MERCY HEALTH, *et al.*, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendants. | ) |  |

Before the Court is plaintiff Brittany Watts's motion for leave to file a second amended complaint. (Doc. No. 76 (Motion).) Defendants the City of Warren and Nicholas Carney (collectively, the "City Defendants") and defendants Bon Secours Mercy Health, Mercy Health Youngstown, LLC d/b/a St. Joseph Warren Hospital, Connie Moschell, Jordan Carrino, Parisa Khavari, Suzanne Zupko, and Fred Raines (collectively, the "Hospital Defendants") oppose. (Doc. No. 83 (City Opposition); Doc. No. 86 (Hospital Opposition).) With leave from the Court (04/22/2026 Order [non-document]), Watts replied in support of the motion. (Doc. No. 89 (Reply).) For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## I.     BACKGROUND

### a.  Factual Background

This case begins with the unfortunate miscarriage suffered by Watts in September of 2023.[1] According to the operative complaint, Watts first arrived at St. Joseph Warren Hospital (the "hospital") 21 weeks pregnant and bleeding from her vagina. (Doc. No. 30 (Amended Complaint) ¶¶ 22–23.) Doctors concluded that Watts had developed a premature rupture of membranes, that the amniotic fluid had drained from her uterus, that she had an infection, that her pregnancy was not viable, and that her fetus would likely die in utero or shortly after delivery. (*Id.* ¶¶ 28–31.) Despite these findings, and despite hours of waiting at the hospital over two days, as Watts alleges, Hospital Defendants—including Watts's obstetrician-gynecologist, Khavari—never provided Watts with care. (*Id.* ¶¶ 25–26, 34–39.)

After returning home, Watts painfully miscarried. (*Id.* ¶¶ 42–44.) Watts evacuated blood, blood clots, tissue, and, unbeknownst to her, her now dead fetus. (*Id.* ¶¶ 43–44, 48.) An autopsy would later confirm that the fetus had died in utero. (*Id.* ¶ 75.)

Watts alleges that, upon her return to the hospital following her miscarriage, the Hospital Defendants made false statements, fabricated evidence, and conspired with law enforcement to have Watts wrongfully charged with a crime. Despite knowing that Watts had a nonviable pregnancy and had miscarried at home (*id.* ¶ 50), defendants Carrino and Moschell, both hospital employees, allegedly told law enforcement and suggested in Watts's medical file that she had given birth to a live baby and had left it at home. (*Id.* ¶¶ 51, 53–54, 56–57.) The operative complaint

---

[1] A complete recitation of the allegations in the currently operative complaint can be found in this Court's opinion on Hospital Defendants' motion for judgment on the pleadings. (Doc. No. 73 (Memorandum Order and Opinion).)

further alleges that Carrino and Moschell then assisted defendant Carney, an officer with the City of Warren Police Department, in unlawfully interrogating Watts about her miscarriage and accused her of nefarious conduct. (*Id.* ¶¶ 62, 65, 70–71.)

Carney then charged Watts with abuse of a corpse under Ohio law. (*Id.* ¶ 76). As alleged, Moschell then met with prosecutors to assist in the case against Watts. (*Id.* ¶ 87.) In the end, a grand jury declined to indict Watts, finding no probable cause to support the charged offense. (*Id.* ¶ 92.)

### b.  Procedural Background

Watts filed the original complaint in this action on January 10, 2025, asserting 14 claims: a 42 U.S.C. § 1983 claim for false arrest and prosecution without probable cause (Count I); a § 1983 claim for unconstitutional interrogation (Count II); a § 1983 due process claim (Count III); a § 1983 conspiracy claim (Count IV); a claim for violations of the Emergency Medical Treatment and Labor Act ("EMTALA") (Count V); a malicious prosecution claim under Ohio law (Count VI); two claims for intentional infliction of emotional distress under Ohio law (Counts VII & VIII); a claim for negligent infliction of emotional distress under Ohio law (Count IX); a claim for medical negligence under Ohio law (Count X); a claim for unauthorized disclosure of confidential medical information under Ohio law (Count XI); a conspiracy claim under Ohio law (Count XII); a *respondeat superior* claim under Ohio law (Count XIII); and an indemnification claim under Ohio law (Count XIV). (Doc. No. 1 (Original Complaint), at 16–27.)[2]

---

[2] All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

With leave from the Court (Doc. No. 29 (Memorandum Opinion and Order)), Watts filed her amended (and currently operative) complaint in August of 2025. (Doc. No. 30.) The amended complaint is identical in substance to the original complaint, save that it added Zupko and Raines to various pre-existing causes of action and added allegations that they advised Moschell on her decision to call law enforcement. (*Id.* ¶¶ 52–55.)

Hospital Defendants moved for judgment on the pleadings on October 29, 2025. (Doc. No. 40 (Motion for Judgment on the Pleadings).) Hospital Defendants argued that all claims against them were subject to dismissal. (*See generally id.*) The Court granted in part and denied in part. (*See generally* Doc. No. 73.) As relevant here, the Court held that Watts's allegations of conspiracy between hospital staff and law enforcement were insufficient to plead a state law civil conspiracy or a § 1983 conspiracy. (*Id.* at 7–12.) Because conspiracy was Watts's sole theory for establishing state action on the part of Hospital Defendants, the Court dismissed all § 1983 claims against the Hospital Defendants. (*Id.* at 10–11.)

Under the current case management plan, the time to amend pleadings expired on August 1, 2025. (Doc. No. 69 (Second Amended Case Management Plan and Trial Order), at 1.) Additionally, fact discovery closed on March 24, 2026, and expert discovery will close on June 29, 2026. (*Id.* at 1–2.)

### c. Proposed Amendments

Watts now seeks to make multiple changes to her complaint based on information uncovered in discovery. (Doc. No. 76.) First, Watts seeks to add allegations relating to her existing medical negligence claim against Khavari.[3] Generally, the proposed amendment adds greater detail

---

[3] Defendants offer no specific arguments opposing these new allegations relating to the existing medical negligence

4

about Khavari's assessment of Watts's condition (Doc. No. 76-1 (Proposed Second Amended Complaint or "SAC") ¶¶ 24–25) and a second opinion Khavari requested from a fellow obstetrician. (*Id.* ¶¶ 32–33.) As the SAC alleges, despite both physicians agreeing that Watts needed an induction of labor (consisted with the alleged standard of care (*id.* ¶ 27)), neither Khavari nor anyone at the hospital offered or ordered the procedure. (*Id.* ¶¶ 28, 35–38.)

Second, Watts seeks to add a new medical negligence claim (and related allegations) premised on a theory of nursing malpractice against Moschell, Bon Secours Mercy Health, and St. Joseph Warren Hospital (the "nursing malpractice amendment"). (*Id.* ¶¶ 164–168.) The crux of the nursing malpractice amendment is the allegation that Khavari's failure to provide appropriate care "was a concession to members of the nursing staff . . . , including [] Moschell, who were trying to stop the medically necessary labor induction from happening." (*Id.* ¶ 39.) The SAC alleges, *inter alia*, that, after the hospital's ethics committee had already concurred with the physicians' conclusions regarding labor induction, the "nurses raised frivolous ethical concerns[,]" made false statements to Watts, and "yell[ed]" at the head of the hospital's ethics committee in an attempt to prevent the induction. (*Id.* ¶¶ 29, 40–41.)

Third, Watts seeks to make various additions to her conspiracy allegations in an effort to (1) replead her state law conspiracy claim against Carney, while reviving that same claim as to Moschell and adding Bon Secours Mercy Health and St. Joseph Warren Hospital as defendants thereto and (2) replead her various § 1983 claims against Carney, while reviving those same claims

---

claim against Khavari. The Court thus presumes defendants do not oppose such amendment. *See DG Gas, LLC v. TA Franchise Sys. LLC*, No. 1:24-cv-1002, 2025 WL 814928, at *28 (N.D. Ohio Mar. 14, 2025) ("[B]y not opposing [movant's] argument, [non-movant] has waived any opposition thereto." (citing *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 Fed. App'x 328, 331 (6th Cir. 2008))). Accordingly, the Court will grant the motion to the extent Watts seeks to add these new allegations relating to her existing medical negligence claim against Khavari.

as to Moschell (the "conspiracy amendment"). As will be discussed in greater detail below (*see infra* § III(b)(ii)), the SAC adds allegations bearing on Moschell's and Carney's conversation, their actions before and after their conversation, and their motivations. (*See e.g.,* Doc. No. 76-1 ¶¶ 55–62, 65, 68, 70, 72, 75, 80, 84, 95.)[4]

## II.    LEGAL STANDARD

Once the time for a party to amend as a matter of course under Rule 15(a)(1) expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." *Id.* However, "[a] motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014) (citations omitted).

When, as here, the deadline for amending pleadings established by the court's scheduling order has passed, "a plaintiff first must show good cause under Rule 16(b) [of the Federal Rules of Civil Procedure] for failure earlier to seek leave to amend" and the court "must evaluate prejudice to the nonmoving party 'before a court will [even] consider whether amendment is proper

---

[4] Watts also seeks to remove Carrino, Zupko, and Raines as defendants completely and to add Bon Secours Mercy Health and St. Joseph Warren Hospital to a number of existing claims: the state law malicious prosecution claim, the two intentional infliction of emotional distress claims, the negligent infliction of emotional distress claim, and the medical negligence claim. Defendants make no specific arguments opposing these amendments. The Court thus presumes defendants do not oppose such amendment. *See DG Gas, LLC*, 2025 WL 814928, at *28 ("[B]y not opposing [movant's] argument, [non-movant] has waived any opposition thereto." (citing *Humphrey*, 279 Fed. App'x at 331)). The Court will accordingly grant leave as to these amendments.

under Rule 15(a).'" *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (alterations in original)). "Consequently, the Court is permitted to examine the standard factors governing amendments of the complaints under Rule 15(a) only if it is satisfied that the date for the filing of a motion for leave to amend is properly extended under the good cause provisions of Rule 16(b)." *Craig-Wood v. Time Warner N.Y. Cable LLC*, No. 2:10-cv-906, 2011 WL 4829687, at *2 (S.D. Ohio Oct. 6, 2011).

## III.    DISCUSSION

As a preliminary matter, Hospital Defendants argue that Watts's failure to cite the Rule 16 standard in her opening brief precludes an amendment entirely. (Doc. No. 86, at 2.) This Court will not summarily reject Watts's motion on a mere failure to recite the magic words "Rule 16" or "good cause." So long as Watts's motion sets forth sufficient grounds for granting leave to amend, this Court may grant it. *See e.g., JRS Partners, GP v. Leech Tishman Fuscaldo & Lamp, LLC*, No. 3:19-cv-469, 2021 WL 12099777, at *2 (M.D. Tenn. May 17, 2021) (considering plaintiff's motion for leave to amend despite plaintiff's failure to use "magic words" of "good cause"); *Everett Cash Ins. Co. v. Howell*, No. 2:24-cv-4227, 2026 WL 733644, at *7 (S.D. Ohio Mar. 16, 2026) ("At base, though the [movants] fail to cite the good cause standard in their amendment request, the [c]ourt finds the substance of their request sufficient under Rule 16."). Accordingly, the Court reviews Watts's proposed amendment under the rubrics of Rules 15 and 16.

7

### a. Rule 16

To demonstrate good cause under Rule 16(b), a plaintiff must show that they acted with due diligence in seeking the amendment, and that the opposing party will not suffer prejudice by the amendment. *Leary*, 349 F.3d at 909 (citation omitted); *see Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (noting that "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . Another relevant consideration is possible prejudice to the party opposing the modification") (quotation marks and citations omitted)). Generally, courts find diligence "where parties moved for amendment quickly after new information is discovered." *See Everett Cash Ins. Co.*, 2026 WL 733644, at *7 (collecting cases). Courts typically find prejudice where the proposed amendment would require substantial additional discovery late in the proceedings. *See e.g., Leary*, 349 F.3d at 892 ("Defendant would suffer prejudice by allowing this amendment which would require the reopening of discovery at this late stage of the proceedings.").

#### i. Nursing Malpractice Amendment

Watts fails to establish good cause as to her nursing malpractice amendment. As will be discussed below, Hospital Defendants would be substantially prejudiced by allowing Watts to introduce a new theory of liability at this late stage in proceedings. Resultantly, Watts fails to satisfy the good cause standard regardless of whether she acted diligently. *See Avisar v. Chen*, No. 1:23-cv-1980, 2025 WL 2740951, at *5 (N.D. Ohio Sept. 23, 2025) (finding no good cause where plaintiff, despite diligently moving to amend, failed to establish a lack of prejudice).

The nursing malpractice amendment represents a wholly new theory of liability distinct from Watts's current medical negligence claim, which is premised only on *physician* malpractice.[5] Allowing Watts to assert this new, distinct claim would prejudice Hospital Defendants. *See Leary*, 349 F.3d at 908 (finding amendment would "obviously" prejudice defendant where amendment sought to assert new theory of liability); *cf. Inge*, 281 F.3d at 626 (finding no prejudice where amendment was not "an effort to add new claims or parties"). This prejudice is compounded by the fact that the nursing malpractice claim will likely require additional expert testimony, *see Ramage v. Cent. Ohio Emergency Serv., Inc.*, 592 N.E.2d 828, 833 (Ohio 1992) ("[E]xpert testimony is necessary to establish the prevailing standard of care where the professional skills and judgment of a nurse are alleged to be deficient."), and expert disclosure deadlines have already passed. *See Ross v. Am. Red Cross*, 567 F. App'x 296, 307 (6th Cir. 2014) (holding district court did not abuse discretion in finding prejudice in light of defendant's argument that "it would have had only one month to depose [plaintiff's] expert witnesses and two months to identify its own expert witnesses after the addition of new claims"). Finally, while Watts initially argued that her amendment would require no additional discovery (Doc. No. 76, at 9), she seems to recognize on reply that the new nursing malpractice allegations may require further fact discovery. (*See* Doc. No. 89, at 13 ("Plaintiff would not object to reasonable discovery requests on her new allegations.").) But reopening fact discovery now would only further compound the prejudice. *See McCleese v. Natorp's Inc.*, No. 1:20-cv-118, 2026 WL 874153, at *9 (S.D. Ohio Mar. 31, 2026) ("Allowing amendment after fact discovery may 'create significant prejudice to the defendants in

---

[5] Notably, nurses and physicians are subject to different standards of care. *See Berdyck v. Shinde*, 613 N.E.2d 1014, 1023 (Ohio 1993) (discussing physician's and nurse's "separate duties of care" while recognizing duties can overlap in some instances).

having to reopen discovery and prepare a defense.'" (quoting *Duggins v. Steak 'N Shake, Inc.*,195 F.3d 828, 834 (6th Cir. 1999))). The Court thus finds that allowing the nursing malpractice amendment would substantially prejudice Hospital Defendants.

Watts's attempts to minimize this prejudice are unavailing. Watts first argues that the new nursing malpractice claim is within the scope of the original complaint such that Hospital Defendants were on notice that nursing malpractice was at play. (Doc. No. 76, at 9; Doc. No. 89, at 12.) The new claim's relation to the original complaint does not mitigate the prejudice of adding a new theory of liability this late in proceedings. *Duggins* is instructive. *See* 195 F.3d 828. There, the plaintiff originally alleged a sex-based retaliation claim, but sought leave to add a claim under the Fair Labor Standards Act ("FLSA") after discovery had closed. *Id.* at 831. The district court denied leave to amend, and on appeal, plaintiffs argued that the amendment should have been allowed because the complaint contained allegations raising the possibility of an FLSA claim. *Id.* at 834. The Sixth Circuit rejected the argument, finding that even though "the district court did not deny that the complaint might allege the underlying facts of an FLSA claim[,]" it did not abuse its discretion in finding prejudice because "[a]llowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from the sex-based retaliation claim that was before the court." *Id.* Similarly here, even if the Court accepts that the original complaint raised the possibility of a nursing malpractice claim, the late stage of litigation militates against allowing Watts to add a new theory of liability, particularly where fact discovery is already closed and expert discovery is nearly closed.

10

Second, Watts argues that Hospital Defendants were always on notice that they may require a nursing expert because of Watts's EMTALA claim. (Doc. No. 89, at 12–13.) But an EMTALA claim imposes an entirely different duty than a state law medical negligence claim. *See Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) ("A cause of action under [EMTALA] is not analogous to a state medical malpractice claim[.]"); *Bowen v. Mercy Mem'l Hosp.*, No. 95-cv-73116, 1995 WL 805189, at *2 (E.D. Mich. Dec. 8, 1995) ("EMTALA is not a substitute for state law malpractice actions, and was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis *or medical negligence*." (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994) (emphasis added)). As other courts have recognized, compared to traditional state medical negligence claims, "EMTALA imposes only a limited duty of medical treatment[.]" *See Kiser, ex rel. Austen v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, No. 01-cv-1259, 2002 WL 1398543, at *4 (W.D. Tenn. May 3, 2002) (quoting *Barris v. Cnty. of Los Angeles*, 972 P.2d 966, 972 (Cali. 1999)); *see also id.* ("Proof of professional negligence does not suffice as proof of a violation of EMTALA." (citation omitted)). Thus, even if the EMTALA claim put Hospital Defendants on notice that they required an expert on their "limited duty" under EMTALA, it does not follow that they were on notice that they required an expert on the prevailing standard of care for nurses.

In sum, Hospital Defendants would be substantially prejudiced by the nursing malpractice amendment. Resultantly, Watts fails to show good cause for the amendment regardless of whether she diligently pursued it. *See Avisar*, 2025 WL 2740951, at *5 (finding no good cause where plaintiff, despite diligently moving to amend, failed to establish a lack of prejudice). Because Watts fails to satisfy Rule 16's good cause standard as to the nursing malpractice amendment, the Court

will deny leave to amend as to the nursing malpractice amendment without assessing it under Rule 15.

### ii. Conspiracy Amendment

Nonetheless, Watts establishes good cause as to her conspiracy amendment. As discussed below, the facts underlying this amendment were uncovered during discovery and largely in the weeks before Watts filed the present motion, and Hospital Defendants will not be prejudiced because the amendment only seeks to bolster existing factual allegations.

To begin, Watts diligently pursued the conspiracy amendment. The core of the amendment is that Moschell and Carney shared an intention that Watts be charged with a crime and that the two agreed to interrogate Watts together with the intention that it lead to Watts being charged with a crime. (Doc. No. 76-1 ¶¶ 55, 68, 70, 84.) It appears that the bulk of these allegations come from (1) a recording of a conversation between Moschell and Carney, (2) the February 25, 2026, deposition of a non-defendant nurse at the hospital, and (3) the March 17, 2026, deposition of Moschell. (*See* Doc. No. 76, at 7; Doc. No. 89, at 8.) The limited record before the Court indicates sufficient diligence. The present motion came less than a month after the two depositions. *See Wesley v. Randall Farms, LLC*, No. 3:23-cv-1270, 2025 WL 2322770, at \*5 (N.D. Ohio Aug. 12, 2025) (finding sufficient diligence where amendment sought less than one month after discovery of relevant information). Further, while the parties dispute when Watts had access to the recorded conversation between Moschell and Carney (*compare* Doc. No. 86, at 4 (arguing that recording was available to Watts pre-suit); *with* Doc. No. 89, at 8 (arguing that the full recording was not made available to Watts until discovery), the general timeline of events, including the two

12

depositions, indicates that Watts was diligent enough.[6] *See Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 460 (S.D. Ohio 2021) ("While the parties dispute when Plaintiff discovered the information underlying her Third Amended Complaint, the timeline shows that Plaintiff was diligent enough." (citation omitted)).

Even if Watts failed to diligently pursue the conspiracy amendment, good cause may still exist if there is no prejudice to defendants. *See Mitsui Sumitomo Ins. Co. of Am. v. Vertiv Corp.*, No. 2:23-cv-1398, 2023 WL 8237399, at *7 (S.D. Ohio Nov. 28, 2023) (finding good cause despite lack of diligence because "of the relatively brief delay and the complete lack of prejudice"); *Kacynski v. Dewey*, No. 1:20-cv-126, 2021 WL 5334369, at *4 (W.D. Mich. Apr. 5, 2021) (granting leave to amend despite lack of diligence because "while the delay is inexcusable, the prejudice is minimal or nonexistent"). That is the case here.

There is no prejudice to defendants here because the amendment merely seeks to bolster existing allegations. Watts does not seek to add any new claims or theories of liability. She merely seeks to add more specific allegations regarding Moschell's and Carney's communications, their alleged agreement, and their respective mental states. Reviewing the original complaint reveals that this case has always involved communications between Moschell and Carney (*see e.g.,* Doc.

---

[6] The Court does not rely on the Sixth Circuit's decision in *Inge*, 281 F.3d 613 in finding diligence. Relying on *Inge*, Watts argues that she moved diligently because she moved to amend promptly after this Court dismissed her conspiracy and § 1983 claims as insufficiently pleaded. (Doc. No. 89, at 7.) In *Inge*, the Sixth Circuit found the plaintiff had established good cause to amend where the amendment was "a prompt effort to remedy pleading deficiencies identified by the district court in [its] dismissal order[.]" *Inge*, 281 F.3d at 626. But the Sixth Circuit, albeit in an unpublished opinion, cautions against reading *Inge* to authorize all post-dismissal motions to amend. *See Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 538 (6th Cir. 2008). As *Shane* clarified, *Inge*'s finding of diligence hinged "on the technical nature of the pleading defect identified by the district court and the 'dearth of authority' regarding the pleading requirements [of the relevant claim]." *Id.* (quoting *Inge*, 281 F.3d at 626). Here, the Court did not dismiss the conspiracy and § 1983 claims for a technical pleading defect, and there is certainly no "dearth of authority" on the pleading requirements for conspiracy and § 1983 claims. Accordingly, *Inge* does not apply.

No. 1 ¶ 58 (alleging Moschell and Carney communicating plan to interrogate Watts)), an alleged agreement between the two (*see e.g., id.* ¶¶ 21, 111 (alleging conspiracy and agreement between Moschell and Carney)), and their respective mental states. (*See id.* ¶ 115 (alleging *intentional* misconduct).) It was not until just before the tail end of fact discovery that the conspiracy claims were dismissed (*see generally* Doc. No. 73), so the Court presumes that defendants conducted discovery with these conspiracy allegations in mind. The Court thus does not see how the amendment would require further discovery or otherwise prejudice defendants. *See Woodcock v. City of Bowling Green, Kentucky*, No. 1:13-cv-124, 2015 WL 13546506, at *3 (W.D. Ky. Nov. 13, 2015) (finding no prejudice where amendment merely sought to clarify basis of plaintiff's claim and would not require discovery to be reopened); *Kacynski*, 2021 WL 5334369, at *4 (finding no prejudice where amendment did not seek to assert new, unrelated claims and would not require further discovery).

Watts satisfies Rule 16's good cause standard as to her conspiracy amendment. Accordingly, the Court will now consider the conspiracy amendment under the rubric of Rule 15.

### b. Rule 15

As discussed above, leave to amend under Rule 15 should be granted freely unless, as relevant here, the amendment is sought in bad faith or would be futile. *See Springs*, 567 F. App'x at 443 (citations omitted). "Typically, courts will deny leave to amend for bad faith when it is clear the party is seeking to amend as an exercise in gamesmanship or to protract proceedings." *United Wholesale Mortgage, LLC, v. Mortgage Solutions FCS, Inc.*, No. 24-cv-10376, 2024 WL 7021211, at *3 (E.D. Mich. Nov. 22, 2024).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6)

14

motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citation omitted). To withstand a Rule 12(b)(6) motion to dismiss, the proposed amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a court must construe a complaint in the light most favorable to the plaintiff and accept the truth of well-pleaded factual allegations, it should "not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quotation marks and citation omitted).

### i. Bad Faith

Hospital Defendants spend pages arguing that Watts's proposed amendment is in bad faith because the new allegations are "factually inaccurate" (Doc. No. 86, at 8) according to Hospital Defendants' reading of the evidentiary record. (*Id.* at 8–14.) Essentially, Hospital Defendants ask the Court to weigh the evidence and decide the merits of Watts's new allegations. That is not the appropriate bad faith analysis, and the Court declines Hospital Defendants' invitation to review merits evidence on a motion to amend. *See Esper v. Enlow*, No. 3:23-cv-116, 2023 WL 7004430, at *3 (M.D. Tenn. Oct. 24, 2023) (rejecting defendant's bad faith argument based on merits evidence because "the [c]ourt is disinclined to determine the sufficiency of merits evidence, as implicitly urged by [d]efendants, in the context of a motion to amend." (citation omitted)); *Bozung*

15

*v. Christianbook, LLC*, No. 1:22-cv-304, 2023 WL 4540341, at \*2 (W.D. Mich. July 14, 2023) ("But that issue goes to the merits of [plaintiff's] claim. It is not evidence of bad faith in seeking leave to amend the complaint at this stage of the case."). Beyond pages of merits arguments, Hospital Defendants provide nothing suggesting Watts's amendment is an exercise in gamesmanship, sought to protract litigation, or otherwise a result of bad faith. Accordingly, the Court declines to find bad faith.[7]

### ii. Futility

Defendants argue that the conspiracy amendment is futile because the new allegations are impermissibly conclusory and fail to remedy the pleading deficiencies previously identified by this Court. (Doc. No. 83, at 5–6; Doc. No. 86, at 14–15.) The Court disagrees. With the conspiracy amendment, the SAC now adequately alleges a conspiracy for purposes of the § 1983 claims against Carney and Moschell and for purposes of the state law conspiracy claim against Carney, Moschell, Bon Secours Mercy Health, and St. Joseph Warren Hospital.

### 1. Section 1983 Conspiracy and State Action

The Court previously found the amended complaint did not plead a § 1983 conspiracy between Carney and Moschell or a conspiracy sufficient to establish state action for purposes of the other § 1983 claims against Moschell.[8] (Doc. No. 73, at 9–10.) As the Court read it, the amended complaint, in an effort to plead conspiracy, relied primarily on the fact that Moschell and

---

[7] Related to Hospital Defendants' bad faith argument, Watts argues that Hospital Defendants' "[i]nflammatory [r]hetoric [s]hould [b]e [d]iscouraged." (Doc. No. 89, at 15–16.) The Court "reminds all counsel involved that zealous advocacy need not and should not degenerate into . . . a[] . . . morass of ill will." *Chicago Title Ins. Corp. v. Magnuson*, No. 2:03-cv-368, 2004 WL 5499517, at \*6 (S.D. Ohio Dec. 30, 2004).

[8] The Court also found that the § 1983 claims were insufficiently pleaded against Carrino, Zupko, and Raines. Because Watts removes Carrino, Zupko, and Raines from the SAC, the Court omits them from the discussion.

Carney spoke to each other and made similar falsehoods about Watts. (*Id.*) But, the Court held, the mere fact that Carney spoke to Moschell was consistent with "typical police investigation" and did not raise an inference of conspiracy. (*Id.* at 9.) Relatedly, the fact that Moschell and Carney made similar falsehoods about Watts merely alleged parallel conduct, similarly insufficient to raise an inference of conspiracy. (*Id.* at 9–10.) Without something more, the amended complaint fell short. But the SAC now adds the something more Watts needed.

As the Court previously stated (Doc. No. 73, at 7–8), a § 1983 claim requires the deprivation of a constitutional or other federal right by a person acting under the color of state law, also known as a "state actor." *See Tate v. Comrie*, No. 5:16-cv-3090, 2018 WL 1409288, at \*4 (N.D. Ohio Mar. 21, 2018) (citations omitted). A private party conspiring with a state official will be considered a state actor for purposes of § 1983. *Harcz v. Boucher*, 763 F. App'x 536, 540 (6th Cir. 2019) (citation omitted). To sufficiently allege a § 1983 conspiracy,[9] a plaintiff must "allege facts that, when accepted as true, would allow a juror to find (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Marvaso*, 971 F.3d at 606 (quotation marks and citations omitted). The pleading standard for conspiracy is "relatively strict." *Harcz*, 763 F. App'x at 540 (citation omitted).

---

[9] The pleading standard for a conspiracy sufficient to establish state action is the same as the pleading standard for a § 1983 conspiracy generally. *Compare Harcz*, 763 F. App'x at 540 (pleading standard for conspiracy for purposes of establishing state action (citation omitted)), *with Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) (pleading standard for § 1983 conspiracy (citation omitted)).

The first two elements of conspiracy require an "agree[ment] to a 'single plan'" with a "subjectively 'shared' . . . illegal objective." *See Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887 (6th Cir. 2024) (citation omitted). While circumstantial evidence may establish such an agreement, it is insufficient "if the alleged conduct is just as consistent with independent conduct as it is with a conspiracy." *Pung v. Kopke*, No. 22-1919, 2025 WL 318222, at *6 (6th Cir. Jan. 28, 2025) (quotation marks and citation omitted), *cert. granted sub nom. Pung v. Isabella Cnty., Michigan*, 222 L. Ed. 2d 1241 (Oct. 3, 2025). The third element, the "overt-act element[,] requires only that at least one of the alleged conspirators committed an overt act or omission in furtherance of the conspiracy." *Webb v. United States*, 789 F.3d 647, 671 (6th Cir. 2015) (citation omitted).

The SAC now sufficiently alleges an agreement. Watts now provides specifics regarding the conversation between Carney and Moschell suggesting some agreement was reached. Specifically, she alleges that Carney asked Moschell to join him in interrogating Watts and that Moschell enthusiastically agreed, saying "I'd love to." (Doc. No. 76-1 ¶ 70.) The SAC further specifies that this conversation touched on Moschell's and Carney's "shared objectives[.]" (*Id.* ¶ 68.) As will be discussed in more detail below, the SAC also provides specific factual allegations indicating that Carney and Moschell intended for Watts to be charged with a crime (*id.* ¶¶ 57–61, 65, 72, 84) despite lacking cause to believe she committed a crime. (*Id.* ¶¶ 56, 80.) And, it should not be forgotten, that these new allegations build on preexisting allegations that Carney and Moschell took actions consistent with this intent, including making false statements (*id.* ¶ 61–62, 81–82) and interrogating Watts while she was "in distress" and "in a health crisis." (*Id.* ¶¶ 67, 71–78.) These specifics regarding Carney's and Moschell's conversation, motivations, and actions plausibly allege an agreement. *See Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 902 (S.D.

18

Ohio 2016) (holding plaintiff adequately alleged conspiracy between police officers and private individual where complaint contained specific allegations regarding officers' motivations, communications with private co-conspirator, and actions taken consistent with officers' motivations); *see also Marvaso*, 971 F.3d at 608 (holding plaintiff adequately alleged conspiracy with, *inter alia*, "specific and plausible facts regarding [d]efendants' conspiratorial conversation and agreement"); *Blackwell v. Chisholm*, No. 24-1947, 2025 WL 3091125, at \*4 (6th Cir. Nov. 5, 2025) (holding plaintiff "sufficiently allege[d] a 'single plan'" by alleging co-conspirators' motivations for joining conspiracy).

The SAC also provides specific allegations suggesting that the agreement in question had the shared illegal objective of seeing Watts charged with a crime. As to Moschell, the SAC alleges that she texted a fellow nurse suggesting she wanted Watts charged with a crime (Doc. No 76-1 ¶ 55),[10] tried to enlist the help of hospital staff to escalate the situation to law enforcement (*id.* ¶¶ 57–60), called the police herself after having little luck with the hospital staff (*id.* ¶ 61), and participated in Watts's interrogation despite it being against hospital policy. (*Id.* ¶ 72.) As to Carney, the SAC alleges that he "had previously sought to bring [abuse of corpse] charge[s] against other women" (*id.* ¶ 65), that he "twisted" information gleaned from the interview with Watts to procure abuse of corpse charges (*id.* ¶ 84), and, as previously alleged, that he made false statements in his police report. (*Id.* ¶ 81.) These specific facts plausibly support Watts's allegations that

---

[10] The alleged text in question reads, "[w]e have to have a fetus or she will be charged[.]" (Doc. No. 76-1 ¶ 55.) Hospital Defendants insist that this text should be read as a mere expression of Moschell's belief that Watts would be charged if Watts did not bring her fetus to the hospital—not her intention that Watts be charged. (Doc. No. 86, at 11–12.) On a motion for leave to amend, however, the Court must read the allegations in the light most favorable to Watts. *Young v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am., Loc. 651*, 686 F. App'x 304, 307 (6th Cir. 2017) (citations omitted). Although the Hospital Defendants' interpretation is reasonable, and a factfinder could see it their way, the Court may not adopt it for purposes of this analysis.

19

Carney and Moschell, despite lacking cause to believe Watts had committed a crime (*id.* ¶¶ 56, 80, 105, 122), shared an objective to see Watts charged with a crime. (*Id.* ¶ 84.)[11] The SAC thus sufficiently alleges that Carney's and Moschell's agreement had a shared illegal objective. *See Blackwell*, 2025 WL 3091125, at \*4 (holding plaintiff sufficiently alleged co-conspirator shared in conspiratorial objective by alleging specific conduct by co-conspirator in line with such objective).

Finally, the SAC adequately alleges an overt act. In particular, the SAC alleges that Carney made false statements and "twisted" the contents of Watts's interrogation, eventually resulting in the abuse of corpse charges brought against Watts. (Doc. No. 76-1 ¶¶ 81–82, 84). This is a sufficient overt act. *See Webb*, 789 F.3d at 671 ("The Plaintiffs have identified several overt acts, including false testimony, false reporting, and alteration of recordings."); *Braxton*, 2015 WL 3915857, at \*6 ("[Plaintiff] alleges that [co-conspirators] engaged in a conspiracy to illegally seize his property, arrest him, and institute criminal charges against him, and *that [co-conspirator] engaged in an overt act (the creation of a false police report)*, which caused the seizure of his property, and his arrest and prosecution. This is sufficient to state a claim for conspiracy under § 1983." (emphasis added)).

The SAC adequately alleges a § 1983 conspiracy between Carney and Moschell and, resultantly, adequately alleges a conspiracy sufficient to establish state action for the other § 1983 claims against Moschell. Defendants provide no other grounds for finding the conspiracy

---

[11] Of course, the objective of seeing someone prosecuted without cause is an illegal objective for purposes of § 1983 conspiracy. *See Stillwagon*, 175 F. Supp. 3d at 902 (holding complaint adequately alleged § 1983 conspiracy with objective of maliciously prosecuting plaintiff); *Braxton v. Heritier*, No. 14-cv-12054, 2015 WL 3915857, at \*6 (E.D. Mich. June 25, 2015) (holding complaint adequately alleged § 1983 conspiracy with objective of "illegally seiz[ing] [plaintiff's] property, *arrest[ing] him, and institut[ing] criminal charges against him*" (emphasis added)).

20

amendment futile as to Watts's § 1983 claims against Carney and Moschell. The Court thus concludes that Watts's conspiracy amendment would not be futile as to her § 1983 claims against Carney and Moschell.

### 2. State Law Conspiracy

Neither would the conspiracy amendment be futile as to the state law conspiracy claim. The Court previously found the amended complaint's state law conspiracy allegations deficient for the same reason it found the § 1983 conspiracy allegations deficient—namely, they failed to adequately allege an agreement with an unlawful purpose. (Doc. No. 73, at 11–12). The SAC now remedies that deficiency and satisfies the elements of state law civil conspiracy.

In Ohio, "'[c]ivil conspiracy' has been defined as 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995) (citations omitted). The "malicious combination" element requires "a common understanding or design, even if tacit, to commit an unlawful act." *See S&T Bank, Inc. v. Advance Merch. Servs., LLC*, 255 N.E.3d 164, 176 (Ohio Ct. App. 2024) (citations omitted). The element of "'[i]n a way not competent for one alone' means that if one person could lawfully commit an act, then that act committed by two or more persons cannot support a conspiracy claim[.]" *Id.* (citation omitted). In other words, this element requires that a claim of civil conspiracy be premised on some underlying unlawful act. *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (citations omitted).

The SAC satisfies the "malicious combination" element. As discussed above, the SAC now plausibly alleges that Carney and Moschell entered into an agreement to see Watts charged with a crime despite having no cause to believe Watts committed a crime. (*See supra* § (III)(b)(ii)(1).)

21

Such allegations satisfy the "malicious combination" element. *See Zhelezny v. Olesh*, 2013 WL 5450882, at \*12 (Ohio Ct. App. Sept. 30, 2012) (holding lower court erred in dismissing civil conspiracy claim where complaint alleged defendants agreed to maliciously prosecute plaintiff).

The SAC also satisfies the requirement of an underlying unlawful act. As this Court previously held, Watts adequately alleges a claim for malicious prosecution under Ohio law against Moschell. (Doc. No. 73, at 18.) This malicious prosecution provides the underlying unlawful act. *See Rachlow v. Dee*, 2002 WL 91288, \*5 (Ohio Ct. App. Jan. 25, 2002) (holding plaintiff adequately alleged underlying unlawful act for purposes of conspiracy claim by alleging malicious prosecution).

Finally, the SAC alleges damages as a result of the alleged conspiracy, stemming primarily from Watts's arrest and subsequent prosecution. (Doc. No. 76-1 ¶ 99–102.) The SAC satisfies all the elements of a civil conspiracy claim under Ohio law. The defendants provide no further argument for why the conspiracy amendment would be futile as to a state law conspiracy claim against Carney, Moschell, Bon Secours Mercy Health, or St. Joseph Warren Hospital. The Court thus finds that the conspiracy amendment would not be futile as to the state law conspiracy claim.

\* \* \*

Defendants provide no further grounds for rejecting the conspiracy amendment under Rule 15 or Rule 16. Accordingly, the Court will grant the motion as to the conspiracy amendment.

22

## IV.    CONCLUSION

Watts's motion for leave to file a second amended complaint (Doc. No. 76) is GRANTED in part and DENIED in part. The motion is denied to the extent it seeks to add a new medical negligence claim against Moschell, Bon Secours Mercy Health, and St. Joseph Warren Hospital and related allegations. The motion is granted in all other respects. Watts will have one week from the date of this order to file a second amended complaint consistent with this memorandum opinion and order.

**IT IS SO ORDERED**.

Dated: June 26, 2026

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

23