## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................2

       A.     Plaintiff's medical treatment and events of September 2023. .................2

       B.     The recorded hospital interview of Plaintiff. ..........................................3

       C.     Detective Carney's investigative steps following Plaintiff's interview and his subsequent meeting with the prosecutor. .............................................4

       D.     The Warren Municipal Court found probable cause following the preliminary hearing. ..............................................................................6

       At the conclusion of the preliminary hearing, the Municipal Court Judge found that there was probable cause for the felony abuse of corpse charge. (Carney Dep. at Ex. 5). As a result, the Judge bound the matter over to the Court of Common Pleas to be presented to a grand jury. (Id.)..............................................6

III.   SUMMARY JUDGMENT STANDARD ...............................................................7

IV.   LEGAL ANALYSIS...............................................................................................7

       A.     Plaintiff's § 1983 claims fail as a matter of law. ....................................7

             1.     The evidence fails to establish an underlying constitutional violation. ....................................................................................... 7

                    i.     Plaintiff as a matter of law cannot establish that Detective Carney's interview violated the Fifth Amendment..........................................................................7

                    ii.    Plaintiff's false arrest and prosecution without probable cause claims under the Fourth and Fourteenth Amendments fail as a matter of law. ...............10

                    iii.   Plaintiff's Fourteenth Amendment due process claim fails as a matter of law. .....................................15

                    iv.    Plaintiff's conspiracy claim fails as a matter of law. .........15

              2.     Detective Carney is entitled to Qualified Immunity ................................. 16

       B.     Detective Carney and the City of Warren are entitled to immunity under R.C. Chapter 2744 for state law claims. ..............................................18

1. The City of Warren is entitled to Chapter 2744 immunity and Plaintiff cannot establish any exceptions. .................................................. 19

2. Detective Carney is entitled to Chapter 2744 immunity ........................... 20

C. Plaintiff's state law claims fail on the merits. .......................................................... 22

1. Plaintiff's malicious prosecution claim fails as a matter of law. .............. 22

2. Detective Carney's conduct does not give rise to intentional infliction of emotional distress ................................................................ 23

3. Plaintiff's state law conspiracy claim fails as a matter of law. ................. 24

V. CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Adamson v. May Co.*, 456 N.E. 1212 (8th Dist. 1982) .................................................................. 22

*Albright v. Oliver*, 510 U.S. 266 (1994) ...................................................................... 11

*Anderson v. Creighton*, 483 U.S. 635 (1987) .................................................................. 17

*Anderson v. Massillion*, 134 Ohio St.3d. 380, 2012-Ohio-5711, ¶ 33 ......................................... 21

*Argabrite v. Neer*, 149 Ohio St.3d 349 (2016) .................................................................. 20

*Ayers v. Cleveland*, 160 Ohio St.3d 288, 2020-Ohio-1047 .................................................... 18

*Bell v. Ohio State Bd of Trustees*, 2007-Ohio-2790, ¶ 24 (10th Dist.) ........................................ 23

*Billock v. Kuivila*, 2013 WL 591988 (N.D. Ohio 2013) (unreported) ........................................... 12

*Brooks v. Rothe, 577 F.3d 701* (6th Cir.2009) .................................................................. 11

*Bush v Cleveland Mun. Sch. Dist.*, 8th Dist. No. 99612, 2013-Ohio-5420 ................................... 19

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) ................................................ 22

*Chavez v. Martinez*, 538 U.S. 760 (2003) ...................................................................... 10

*Clark v. Abdallah*, 131 F.4th 432 at 447 (6th Cir. 2025) ...................................................... 15

*Colbert v. Cleveland*, 99 Ohio St. 3d 215, 2003-Ohio-3319 .................................................. 19

*Cook v. Cincinnati*, 658 N.E.2d 814 (1st Dist. 1995) .......................................................... 20

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ...................................................... 17, 18

*Doe v. Dayton City Sch. Dist. Bd. of Educ.*, 738 N.E.2d 390 (2nd Dist. 1999) ............................. 19

*Durbin v. Ohio State Highway Patrol*, 83 Ohio App.3d 693 (10th Dist. 1992) ............................... 24

*Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002) ................................................ 22

*Garvie v. Jackson*, 845 F.2d 647 (6th Cir. 1988) .............................................................. 17

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ................................................ 14

*Griffits v. Newburgh Heights*, 2009-Ohio-493, (8th Dist.) .................................................... 20

*Hamilton v. City of Romulus*, 409 Fed.Appx. 826 (6th Cir. 2010) ........................................... 16

*Harris v. Sutton*, 2009-Ohio-4033, ¶ 15 (8th Dist.) .......................................................... 20

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985) ................................................................ 16

*Howard v. Miami Twp. Fire Div.*, 119 Ohio St. 3d. 1, 2008-Ohio-2792 ..................................... 19

*Hubbard v. Canton City Bd. Of Education*, 97 Ohio St. 3d 451 (2002) ..................................... 20

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019) ................................................ 15

*Jacobs v. Ottawa Hills*, 159 F.Supp2d 693, 698 (N.D. Ohio 2001) ......................................... 21

*Kay v. Minacs Grp. (USA), Inc.*, 580 Fed. App'x 327 (6th Cir. 2014) ....................................... 21

*King v. Harwood*, 852 F.3d 568 at 587 (6th Cir. 2017) ...................................................... 13

*Knox v. Hetrick*, 2009-Ohio-1359 (8th Dist.) .................................................................. 24

*Lester v. Roberts*, 986 F.3d 599 (6th Cir. 2021) .............................................................. 13

*M.B. v. Elyria City Bd. of Educ.*, 2006-Ohio-4533, ¶ 19 (9th Dist.) ......................................... 20

*Mangelluzzi v. Morley*, 2015-Ohio-3143, ¶ 49 (8th Dist.) .................................................... 23

*McKee v. McCann*, 2017-Ohio-40712, ¶ 46 (8th Dist.) ...................................................... 20

*McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005) ............................................ 11, 12

*Miller v. Xenia*, 2002-Ohio-1303 (2nd Dist.) .................................................................. 24

*Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997) .......................................................... 17

*Morrow v. Reminger & Reminger Co., L.P.A.*, 2009-Ohio-2665, ¶ 48 (10th Dist.) ........................ 23

*Noonan v. Cty. Of Oakland*, 683 F.App'x 455 (6th Cir. 2017) .............................................. 12

*Novak v. City of Parma Ohio*, 33 F.4th 296 (6th Cir. 2022) ................................................ 11

*O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 73–74 ....................................... 22

*Oregon v. Elstad* (1985), 470 U.S. 298 ................................................................................ 9

*Pearson v. Callahan*, 555 U.S. 223 (2009) ........................................................................ 17

*Peterson v. Heymes*, 931 F.3d 546 (6th Cir. 2019) ............................................................ 9

*Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711 (6th Cir. 2023) ............................. 13

*Pyle v. Pyle*, 11 Ohio App.3d 31 (8th Dist. 1983) ........................................................... 23

*Reichle v. Howards*, 566 U.S. 658 (2012) ........................................................................ 17

*Roark v. Rydell*, 2007-Ohio-6873, ¶ 55 ........................................................................... 24

*Sampson v. City of Xenia,* 108 F.Supp.2d 821 (S.D.Ohio, 1999) ..................................... 9

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................................... 17

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ............................................................. 9

*Sims v. Cleveland*, 2009-Ohio-4722, (8th Dist.) ............................................................. 19

*State v. Logsdon*, 2d Dist. Montgomery No. 30290, 261 N.E.3d 637, 2025-Ohio-298 .................. 8

*State v. Pyle*, 2d Dist. Greene No. 2003-CA-35, 2003-Ohio-6664 ...................................... 8

*Stiles v. Chrysler Motors Corp.,* 6th Dist. Lucas, 89 Ohio App.3d 256 (1993*)* ........................... 24

*Stuart v. Black*, 2024 WL 3571719, (N.D.Ohio, 2024) (unreported) ................................. 8

*Sutherby v. Sukach*, 2025 WL 3764769 at *11 (W.D. Tennessee Dec. 30, 2025) ................. 13, 15

*Sykes v. Anderson,* 625 F.3d at 308-09 ........................................................................ 11, 12

*Theobald v. Board of Cnty. Comm'rs of Hamilton Cnty.*, 332 F.3d 414 (6th Cir. 2003) ............. 19

*Trader v. Cleveland*, 8th Dist. No. 86227, 2006-Ohio-295 .............................................. 19

*Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732 (1990) .............................. 22

*U.S v. Harper*, 923 F.Supp. 987 (E.D. Mich. April 39, 2996) ........................................... 10

*U.S. v. Justice*, 464 Fed.Appx. 448 (6th Cir. 2012) ........................................................... 8

*U.S. v. Lewis*, 556 F.2d 446 (6th Cir. 1977) ...................................................................... 8

*U.S. v. Wolfe*, 166 Fed.Appx. 228 (6th Cir. 2006) ............................................................. 8

*United States v. Martinez*, 795 Fed.Appx. 367 (6th Cir.2019) .......................................... 8

*United States v. Peete*, 919 F.2d 1168 (6th Cir.1990) ........................................................ 9

*Urbanek v. All State Home Mtge. Co.*, 2008-Ohio-4871, ¶ 19 (8th Dist.) ......................... 24

*Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669 (6th Cir.2005) .............................. 11

*Walls v. Toledo*, 2008-Ohio-4274 (6th Dist.) .................................................................. 24

*Walsh v. Rupkus*, 551 F.Supp.3d 736 (E.D. Mich. July 29, 2021) .................................... 11

*Wiley v. Oberlin Police Dept.*, 330 Fed.Appx. 524 (6th Cir.2009) .................................... 16

*Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464 (1998) ..................................................... 24

*Woodward Const., Inc. v. For 1031 Summit Woods, L.L.C.*, 1st Dist. Hamilton, 2015-Ohio-975 .................................................................................................................. 24

## Statutes

R.C. 2744.01 (C)(2)(a), (b), (i) ......................................................................................... 19

R.C. 2744.02(B)(1)-(5) ....................................................................................................... 20

**BRIEF IN SUPPORT**

## I.  INTRODUCTION

This case arises from a police interview/investigation of Plaintiff Brittany Watts, and a subsequent criminal charge for abuse of corpse resulting from the discovery of Plaintiff's baby in the trap of a toilet.  Plaintiff's Second Amended Complaint attempts to assert federal and state law claims against Defendants City of Warren and City of Warren Police Detective Nicholas Carney. The Second Amended Complaint also attempts to assert federal and state law claims against multiple hospital defendants, including hospital Nurse Connie Moschell.

Plaintiff alleges claims against Detective Carney pursuant to 42 U.S.C. § 1983 for false arrest and prosecution without probable cause in violation of the Fourth/Fourteenth Amendments (Count I); unconstitutional interrogation in violation of the Fifth Amendment (Count II); due process in violation of the Fourteenth Amendment (Count III), and conspiracy (Count IV). Plaintiff's Second Amended Complaint also attempts to assert state law claims against Detective Carney for malicious prosecution, intentional infliction of emotional distress, and conspiracy. Plaintiff attempts to bring these state law claims against the City of Warren via respondeat superior.

As will be established below, Detective Carney's actions did not violate the Fourth, Fifth, or Fourteenth Amendments. Specifically, the undisputed evidence shows that:

- Detective Carney's recorded interview of Plaintiff was an appropriate non-custodial interview, did not coerce or place Plaintiff under duress, and was focused solely upon locating a missing baby.

- The decision to prosecute Plaintiff for abuse of corpse was made solely by a Warren prosecutor and was based on evidence gathered during the investigation.

- During a preliminary hearing, Detective Carney provided truthful testimony and the municipal court judge found based on the evidence presented that there was probable cause for the abuse of corpse charge.

1

Because Plaintiff cannot establish an underlying constitutional violation, Plaintiff's conspiracy claim between Detective Carney and Nurse Moschell fails as well. And Detective Carney is entitled to qualified immunity.  Warren and Detective Carney are entitled to R.C. Chapter 2744 immunity on all state law claims and the state law claims fail on the merits as well.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's medical treatment and events of September 2023.

On September 19, 2023, after experiencing bleeding and the urgency to use the restroom, Plaintiff called her OBGYN's office.  She went in for an appointment the same day.  (Plaintiff Dep. at 10:9-12:25).   During this appointment, she underwent a sonogram and ultrasound, revealing she was about five months pregnant.  Following her OBGYN's instructions, Plaintiff went to the hospital where she was taken to labor and delivery.  (Id. at 13:10-14:8; 19:17-19).  After expressing frustration at having to wait several hours, Plaintiff left the hospital against the medical provider's advice.  (Id. at 16:2-23).  Plaintiff returned to the hospital on September 20, 2023, but again chose to leave against the medical provider's advice. (Id. at 18:6- 21:20).

In the early morning of September 22, 2023, Plaintiff experienced severe cramping and sat on the toilet to have a bowel movement but instead miscarried into the toilet, describing a splash when the fetus fell into the toilet.  (Id. at 27:12-28:8). Following the miscarriage, Plaintiff tried to flush and plunge the toilet.  (Id. at 29:8-23).  Also following the miscarriage, Plaintiff cleaned the bathroom and drove herself to a hair appointment. (Id. at 30:12-31:8).  Later that day, Plaintiff walked into the hospital by herself and was admitted. (Id. at 36:18-37:5). Nursing staff realized Plaintiff was no longer carrying her baby and could not confirm the location of the baby.  (Carney Dep. at 124:1-10). A nurse then contacted the Warren Police Department to obtain assistance in locating the baby.  (Plaintiff Dep. at 41:21-42:15).

A Warren Police Sergeant dispatched Detective Carney to the hospital, informing him that a female "was pregnant a day ago and now she's there and there's no baby."  (Carney Dep. at 124:1-10).  Officers were dispatched to Plaintiff's house to try to locate the baby.  (Id. at 185:2-17).  At the hospital, medical staff informed Detective Carney that the baby was possibly born alive and might survive for a brief period of time.  Specifically, before interviewing Plaintiff, Detective Carney was told by Nurse Moschell that Plaintiff was about 22 weeks (give or take two weeks) pregnant and that there was a small potential the baby could be alive.  (Id. at 128:22-129:2).  Detective Carney asked Nurse Moschell whether Plaintiff was awake, alert, and able to answer questions. (Id. at 154:24- 155:12, 158:20-159:2). Nurse Moschell conveyed to Detective Carney that Plaintiff was alert and fine to be spoken to. (Id. at 155:13-15, 181:13-15). Detective Carney's primary goal for Plaintiff's interview was to locate the baby.  (Id.  at 125:13-23, 129:1-130:8).

> **B.**      **The recorded hospital interview of Plaintiff.**

Because Plaintiff was receiving medical care, Nurse Moschell sat in on the interview.  (Id. at 159:18-160:1).  Detective Carney and Nurse Moschell did not discuss nor plan how the interview would be conducted.  (Id. at 164:2-5).  Out of caution given the unique circumstances – including Detective Carney's understanding there was a missing baby – and despite Plaintiff not being in custody at that time, Detective Carney read Plaintiff her Miranda Rights.  (Id. at 162:1-13).  In addition to being read her Miranda Rights, Detective Carney presented Plaintiff with a Miranda waiver form, which she signed knowingly and voluntarily.  (Id. at 175:4- 178:3, at Ex. 3; Plaintiff Dep. at 49:14-50:3, 51:7-14). The Miranda waiver form expressly stated Plaintiff was not under arrest and could end the interview at any time. (Carney Dep. at Ex. 3).  Detective Carney sought to ensure Plaintiff understood she did not have to speak with him and verbally made clear that if she chose not to speak, he would leave.  (Id. at 171:24-172:5).

3

During the interview, Detective Carney asked Plaintiff multiple times if the baby was in the toilet. (Id. at 188:16-22; Plaintiff Dep. at Ex. 2; Laprocina Aff. at Ex. 1). Plaintiff initially denied it and claimed she had removed everything in a black bucket but later suggested the baby might still be in the toilet. (Id. at 188:16-22). Plaintiff also stated that she attempted to plunge and flush the toilet after the miscarriage. (Plaintiff Dep. at 29:8-23, 58:2-5).

During the interview, Detective Carney briefly stepped out of the room on one occasion to confirm with Nurse Moschell physical characteristics of the fetus, including whether they were looking for a full-term baby. (Id. at 183:21-184:3). Detective Carney also stepped out of the room to speak with his Sergeant – who was at Plaintiff's house – to provide information and coordinate the attempts to locate the baby. (Id.).

Plaintiff testified that during the interview, Detective Carney never raised his voice and never physically or verbally threatened her. (Plaintiff Dep. at 46:3-10).) During the interview, Plaintiff was treated professionally and in a kind manner. (Id. at Ex. 2, Laprocina Aff. at Ex. 1). Plaintiff stated during the interview that Detective Carney was nice and she wanted to continue talking with him. (Plaintiff Dep. at 56:23-57:12). Detective Carney's questions during the interview were focused on locating the missing baby. (Id. at Ex. 2; Laprocina Aff. at Ex. 1). Plaintiff testified during her deposition that she wanted to help Detective Carney find the baby. (Plaintiff Dep. at 90:7-93:3).

**C.    Detective Carney's investigative steps following Plaintiff's interview and his subsequent meeting with the prosecutor.**

Based on the information Detective Carney learned from Plaintiff, officers at the house discovered that the fetus was in the P-trap of the toilet. (Carney Dep. at 151:16-19). Sergeant Laprocina reached into the toilet and felt feet. (Id. at 220:15-221:8). The toilet was taken to the coroner's office where it was taken apart, and Detective Carney removed the baby from the trap.

4

(Id. at 256:12-20).  The baby was deceased, but was fully formed with facial features, hair, arms, legs, and genitalia.  (Id. at 228:13-23).

Detective Carney transferred the audio and downloaded the recorded interview into a file for the report.  (Id. at 209:2-16).  The recording was then uploaded into the department's server used to store investigation materials. (Id.; Laprocina Aff.).  At all times the recorded interview was available for review by prosecutors or defense counsel. (Carney Dep. at 20:2-20, 23:6-24:7).

Detective Carney did not know whether the deceased fetus was a crime victim. (Id. at 215:19-23).  The coroner's report, completed on September 28, 2023, determined that the fetus died in utero and, therefore, Detective Carney was able to exclude a murder investigation.  (Id. at 217:4-15, 237:15-20).  Nevertheless, and per department policy, Detective Carney took the investigation to a prosecutor to determine whether there were any other potential criminal charges. (Id. at 69:22-70:22, 75:2-11, 217:16-218:7, 302:21-303:1).

On October 4, 2023, Detective Carney met with Warren assistant prosecutor, Gil Blair. (Id. at 237:21-238:9).  Detective Carney provided Prosecutor Blair with his report and informed Prosecutor Blair that the recorded interview was available.    (Id. at 243:21-244:17, 245:13-15).

Prosecutor Blair researched relevant criminal statutes and conducted legal research as to what constitutes a "human corpse."  Based upon his review and analysis of the law, Prosecutor Blair determined and authorized the charge of felony abuse of a corpse under Ohio Revised Code 2927.01(B).  (Blair Dep. at 56:13-57:19, 62:11-64:15, 65:6-18).

After Prosecutor Blair made the determination to file the abuse of corpse charge and Detective Carney signed the criminal complaint, Detective Carney arrested Plaintiff at her house. He handcuffed her hands in front and seated her in the front passenger seat.  (Id. at 257:10-258:1). Before her arraignment, Detective Carney asked the judge to consider a personal bond and to avoid

5

fingerprinting so Plaintiff did not have to go to county jail.  (Id. at 258:22-259:9).  As a result, Plaintiff was never placed in jail, booked, fingerprinted, or processed.  (Plaintiff Dep. at 66:2-4).

### D. The Warren Municipal Court found probable cause following the preliminary hearing.

At the preliminary hearing, Detective Carney testified generally regarding the facts and that the "abuse" element of the abuse of corpse statute was Plaintiff's act of plunging the toilet. (Carney Dep. at 259:20-24).  Detective Carney testified that his understanding that the plunging constituted abuse of a corpse was based on the prosecutor's determinations. (Id. at 259:25-260:2).

Plaintiff was represented by criminal defense attorney Traci Timko at the preliminary hearing.  (Plaintiff Dep. at 70:21-72:1).  It is undisputed that Timko knew Detective Carney recorded his interview with Plaintiff, did in fact listen to the interview, and reviewed the investigative report prior to the preliminary hearing.  (Timko Dep. at 99:15-100:8, 116:10-19). Timko cross-examined all witnesses presented by the prosecution, including Detective Carney, during the preliminary hearing.  (Plaintiff Dep. at 71:19-72:10).  In her deposition, Timko testified that her legal defense was predicated upon legal and medical definitions that Timko conceded Detective Carney would have no knowledge of.  (Timko Dep. at 97:23-98:99:10).  Timko further testified she had no issue with the facts Detective Carney testified to during the preliminary hearing.  (Id. at 108:24-109:2).

At the conclusion of the preliminary hearing, the Municipal Court Judge found that there was probable cause for the felony abuse of corpse charge.  (Carney Dep. at Ex. 5).  As a result, the Judge bound the matter over to the Court of Common Pleas to be presented to a grand jury.  (Id.).

Detective Carney testified at the grand jury and recalled questions similar to those at the preliminary hearing.  (Id. at 210:13-211:3).  Detective Carney did not know whether the coroner testified.  (Id. at 211:11-13).  Per the county prosecutor's instructions, Detective Carney was not

6

allowed to show evidence – including photographs of the fully formed fetus – to the grand jury. (Id. at 211:14-212:8).  The grand jury declined to indict. (Id. at 235:14-25).

## III.    SUMMARY JUDGMENT STANDARD

The well-established summary judgment standards under Federal Rule of Civil Procedure 56, and as established by common law, applies to the instant matter.

## IV.    LEGAL ANALYSIS

### A.    Plaintiff's § 1983 claims fail as a matter of law.

#### 1.    The evidence fails to establish an underlying constitutional violation.

##### i.    Plaintiff as a matter of law cannot establish that Detective Carney's interview violated the Fifth Amendment.

The Second Amended Complaint contends that Detective Carney's interview of Plaintiff violated the Fifth Amendment claiming it was an unconstitutional custodial interrogation that resulted in a compelled confession.  Because Plaintiff's statements during the recorded interview were made knowingly and voluntarily during a non-custodial interview, as a matter of law the Fifth Amendment was not violated.

At the outset, any contention that Plaintiff was not mentally or physically competent to answer Detective Carney's interview questions are belied by the recorded interview, statements by medical providers, and Plaintiff's voluntary consent via the Miranda waiver.  Plaintiff testified that at the time of the interview she was able to hear and understand Detective Carney, and was able to read, understand, and sign the Miranda waiver form.  (Plaintiff Dep. at 49:14-50:3, 51:7-14).  Plaintiff was informed both verbally and in writing that she could stop speaking to Detective Carney at any time.  Likewise, Plaintiff testified at her deposition that despite being in the hospital, she wanted to help Detective Carney and Nurse Moschell locate the baby.  As a result, the

7

undisputed evidence establishes that Plaintiff was knowingly and voluntarily speaking with Detective Carney.

Further, the fact that Miranda rights were read and waived does not transform the noncustodial interview into a custodial interrogation of a criminal suspect. Indeed, it is well established under the law that providing Miranda warnings does not transform a noncustodial interview into a custodial interrogation. *U.S. v. Lewis*, 556 F.2d 446, 449 (6th Cir. 1977); *U.S. v. Wolfe*, 166 Fed.Appx. 228 (6th Cir. 2006); *U.S. v. Justice*, 464 Fed.Appx. 448, 453 (6th Cir. 2012); *Stuart v. Black*, 2024 WL 3571719, at ¶86 (N.D.Ohio, 2024) (unreported). At no time during the interview did Detective Carney state that Plaintiff was under arrest; nor did Detective Carney take any steps to restrain Plaintiff. Plaintiff was informed verbally and in writing that she was not under arrest. Accordingly, as a matter of law, Detective Carney reading and obtaining a Miranda waiver does not establish that Plaintiff was subject to a custodial interrogation.

Furthermore, the fact that Plaintiff was in a hospital room does not establish that Plaintiff was in custody. *See e.g., State v. Logsdon*, 2d Dist. Montgomery No. 30290, 261 N.E.3d 637, 2025-Ohio-298, at ¶¶17-19; *State v. Pyle*, 2d Dist. Greene No. 2003-CA-35, 2003-Ohio-6664. Despite being in a hospital room, at no time during the interview did Detective Carney state that Plaintiff was under arrest and Detective Carney took no steps to restrain Plaintiff. To the contrary, both verbally and in writing, Detective Carney informed Plaintiff that she was not under arrest and that if she did not want to talk to him, he would leave the room. Thus, Plaintiff was not subject to an in-custody interrogation despite being in a hospital room. *Logsdon*; *Pyle*.

The undisputed evidence establishes that as a matter of law, under the circumstances presented, no reasonable person in Plaintiff's position would consider themselves to be subjected to an in-custody interrogation. *United States v. Martinez*, 795 Fed.Appx. 367 (6th Cir.2019). Thus,

8

for this reason alone, Plaintiff cannot establish a Fifth Amendment violation and Count II must be dismissed. *Oregon v. Elstad* (1985), 470 U.S. 298, 304-305; *United States v. Peete*, 919 F.2d 1168, 1177 (6th Cir.1990); *Sampson v. City of Xenia,* 108 F.Supp.2d 821, 833 (S.D.Ohio, 1999).

Additionally, the Fifth Amendment claim fails because there is no evidence that Plaintiff's statements were obtained via coercion or duress.  In determining whether a confession is compelled, the constitutional inquiry is whether "a defendant's will was overborne in a particular case," considering the "totality of all the surrounding circumstances."  *Peterson v. Heymes*, 931 F.3d 546, 555 (6th Cir. 2019) quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (noting that the United States Supreme Court has taken into account the age, education, and intelligence of the accused, length of detention, repeated or prolonged nature of questioning, physical punishment, and psychological impact on the accused).

Here, there is no evidence that Plaintiff's statements made to Detective Carney were compelled via coercion or duress.  Included with this Motion is the recorded interview and transcript of the alleged unconstitutional interrogation.  The undisputed recording and transcript of the interview establish that Detective Carney was soft spoken and friendly to Plaintiff throughout the interview.  The initial conversation established that Detective Carney worked with Plaintiff's father at the Warren Police Department.  During the interview, Plaintiff stated that Detective Carney was nice and that she wanted to continue talking to him.

The recording and transcript make clear that at no time did Detective Carney place Plaintiff under any type of physical or mental duress. Plaintiff conceded during her deposition that Detective Carney did not physically, verbally, or mentally attempt to intimidate her.  Additionally, to the extent that Plaintiff argues that Detective Carney telling her that she was "not in trouble right now" constitutes a false promise of leniency, that claim fails as a matter of law.  See, e.g. *U.S v.*

9

*Harper*, 923 F.Supp. 987 (E.D. Mich. April 39, 2996) (The Court rejected the argument that an officer's statement indicating a limited investigative interest- communicating to the subject that they were not the focus of the investigation at the moment- constituted an impermissible inducement.). Although Detective Carney was unsure of the nature of the circumstances he was investigating, his focus was locating the baby, and his interview questions confirm this focus.

Thus, the undisputed evidence shows Plaintiff was not coerced or under duress during the interview. For these additional reasons, Plaintiff's Fifth Amendment claim under Count II fails as a matter of law.

Finally, a Fifth Amendment violation occurs only if the coerced confession is used against the defendant at trial. *Chavez v. Martinez*, 538 U.S. 760, 767 (2003). Here, the undisputed evidence establishes that not only was the recorded interview not used during trial, but it was also not used during the preliminary hearing. For this additional reason, Plaintiff's Fifth Amendment claim fails as a matter of law and should be dismissed.

> **ii. Plaintiff's false arrest and prosecution without probable cause claims under the Fourth and Fourteenth Amendments fail as a matter of law.**

Plaintiff attempts to establish a false arrest and an apparent malicious prosecution claim under the Fourth and Fourteenth Amendments. Plaintiff alleges that Detective Carney misled Prosecutor Blair to get him to authorize charging Plaintiff with abuse of corpse and by alleging that Detective Carney provided false or misleading testimony during the preliminary hearing. The following establishes that these §1983 claims fail as a matter of law.

First, Plaintiff's Fourteenth Amendment claim fails because it is the Fourth Amendment that provides the specific constitutional protection at issue. "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of

10

government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Walsh v. Rupkus*, 551 F.Supp.3d 736, 742 (E.D. Mich. July 29, 2021) quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J.) (plurality opinion) (punctuation modified, citation omitted). Thus, Plaintiff's claims for false arrest and malicious prosecution only invoke the Fourth Amendment, therefore the Fourteenth Amendment claim under Count I must be dismissed with prejudice.

Moreover, under the Fourth Amendment "[a] false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir.2005); see also *Brooks v. Rothe, 577 F.3d 701, 706* (6th Cir.2009). When a prosecutor independently makes the determination of probable cause to charge and arrest, the plaintiff must show that the prosecutor's decision was the result of the officer knowingly submitting false information upon which the prosecutor relied in making the probable cause determination. See, e.g., *Novak v. City of Parma Ohio*, 33 F.4th 296, 306 (6th Cir. 2022).

To succeed on a malicious prosecution claim under §1983, a plaintiff must prove that the defendant officer participated in the decision to prosecute. *Id.; McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005). Second, because a §1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d at 675. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty" apart from the initial seizure. *Sykes v. Anderson,* 625 F.3d at 308-09. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Id.*

11

First, the malicious prosecution claim fails as a matter of law because Plaintiff cannot show that "as a consequence of a legal proceeding," she suffered a "deprivation of liberty" apart from the initial seizure. *Sykes*, supra.  Here, Plaintiff was arrested at her home and brought directly to the Municipal Court for an arraignment.  At no time was she booked, processed, or detained in jail. (Carney Dep. at 258:22-259:9).  As a result, there was no deprivation of liberty and Plaintiff's malicious prosecution claim fails as a matter of law.  See, e.g. *Noonan v. Cty. Of Oakland*, 683 F.App'x 455, 463 (6th Cir. 2017); *Billock v. Kuivila*, 2013 WL 591988 at *6 (N.D. Ohio 2013) (unreported) (Noting that, "[s]ervice with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation.") (internal citation omitted).

Furthermore, for both the false arrest and malicious prosecution claims, probable cause determinations were made by the prosecutor and Municipal Court.  As a result, Plaintiff must show that these determinations of probable cause were the result of Detective Carney presenting knowingly false or perjured testimony to the prosecutor or at the preliminary hearing.  *Sykes* at 314; *McKinley* at 444.  Despite Plaintiff's allegations to the contrary, there is no evidence in the record that Detective Carney did anything other than provide the prosecutor with complete and truthful information obtained during the investigation and Plaintiff's interview.  Furthermore, the evidence is undisputed that Detective Carney testified truthfully during the preliminary hearing.

Specifically, on October 4, 2023, Detective Carney met Prosecutor Blair and provided him with his report, all information contained in it, and informed Prosecutor Blair that the audio recorded interview with Plaintiff was available.  (Carney Dep. at 243:21- 245:15; Blair Dep. at 56:13-57:19, 65:6-18).  It is also undisputed that the coroner's determination that the baby died in utero was provided to Prosecutor Blair.  Prosecutor Blair testified that after reviewing the relevant criminal statutes and conducting legal research regarding what constitutes a "human corpse," he

12

independently made the legal determination and authorized the charge of felony abuse of corpse to be filed against Plaintiff.  (Id.).  Based on Prosecutor Blair's legal determination, Detective Carney arrested Plaintiff.

To the extent Plaintiff attempts to argue that Detective Carney's written reports omitted certain facts or failed to draw all inferences in favor of Plaintiff's innocence to support her false arrest or malicious prosecution claim, that argument is unavailing. First, the incident reports provided to Prosecutor Blair included a summary of Detective Carney's interview with Plaintiff and his additional investigatory conduct post interview – including chiseling open the toilet to extract the baby.  It is undisputed that the full recorded interview with Plaintiff along with all photographic and documentary evidence of the investigation was submitted and available for Prosecutor Blair's review.  Accordingly, the claim that Detective Carney withheld evidence from Prosecutor Blair is patently false.  Therefore, Plaintiff cannot establish that the Prosecutor's decision to charge with abuse of corpse was the result of false information provided by Plaintiff.

Moreover, "[o]mitting supposed exculpatory evidence is not the same as 'affirmative false statements.'" *Sutherby v. Sukach*, 2025 WL 3764769 at *11 (W.D. Tennessee Dec. 30, 2025) (slip copy) citing *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (citing *King v. Harwood*, 852 F.3d 568 at 587 (6th Cir. 2017)).  The failure "to disclose potentially exculpatory evidence differs from affirmatively falsifying evidence." *Id.* (collecting cases).  "And even if the omission of context-framing information gave a misleading impression, the omissions are not outright falsehoods and fail to show that an officer "'knowingly or recklessly made false statements, falsified evidence, or fabricated evidence to set a prosecution in motion.'" *Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 725 (6th Cir. 2023).  Thus, for this additional reason, Plaintiff

13

cannot establish that Prosecutor Blair's decision to charge Plaintiff with felony abuse of corpse was the result of Detective Carney knowingly providing false information.

Likewise, Plaintiff cannot point to, and there is no evidence in the record, that Detective Carney stated a deliberate falsehood or showed reckless disregard for the truth at the preliminary hearing.  Furthermore, and equally as fatal to these claims, there is no evidence in the record that any allegedly false or omitted information by Detective Carney was material to the court's finding of probable cause." *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006).  Indeed, the record is entirely devoid of *any* evidence that the Municipal Court relied on Detective Carney's testimony to establish probable cause.

On the contrary, Plaintiff's own criminal defense attorney testified that Detective Carney did not present false testimony at the preliminary hearing.  Plaintiff's criminal defense attorney, Ms. Timko, listened to Detective Carney's interview of Plaintiff and had a full opportunity to cross-examine Detective Carney with respect to all available evidence at the preliminary hearing. Ms. Timko testified that Detective Carney did not present any factually false testimony.  (Timko Dep. at 108:24-109:2, 116:10-19).  And Ms. Timko testified that the defense she presented at the preliminary hearing was predicated upon legal and medical based determinations of which Detective Carney's knowledge and testimony would have no impact.  (Timko Dep. at 97:23-99:10).  Thus, the undisputed evidence establishes that Detective Carney's testimony at the preliminary hearing was truthful, but not material to the Municipal Court's probable cause determination.

Based upon the above, Detective Carney's investigation resulted in accurate and truthful information relied upon by the Prosecutor and Municipal Court to determine probable cause for

14

the arrest and prosecution of Plaintiff for abuse of corpse.  Thus, Plaintiff's claims for false arrest and malicious prosecution under Count I fail as a matter of law and must be dismissed.

### iii. Plaintiff's Fourteenth Amendment due process claim fails as a matter of law.

Next, Plaintiff attempts to bring a Fourteenth Amendment due process claim against Detective Carney for intentionally fabricating evidence against Plaintiff "that was then used to deprive her of liberty in violation of the Due Process Clause." (ECF # 97 at PageID # 1016).  The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving a person of liberty without due process of law.  *Sutherby v. Sukach*, 2025 WL 3764769 at *11.  "The due-process right is infringed when the prosecution presents evidence that is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Id.* quoting *Clark v. Abdallah*, 131 F.4th 432 at 447 (6th Cir. 2025) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019) (cleaned up).  The "core of the Fourteenth Amendment due process right is "not the deprivation of liberty but the right to a fair trial." *Id.*

As an initial matter, as established above, there is absolutely no evidence of Detective Carney fabricating evidence.  To the contrary, the undisputed evidence establishes that Detective Carney fully and accurately provided the evidence gathered during the investigation to Prosecutor Blair and during the preliminary hearing.  Further, Plaintiff's Complaint fails to allege- and the record of evidence fails to establish-how any evidence supposedly fabricated by Detective Carney affected Plaintiff's rights at trial.  It is undisputed that Plaintiff did not face a trial as the grand jury did not indict her.  Therefore, for these reasons, Plaintiff's Fourteenth Amendment claim under Count III fails as a matter of law and should be dismissed.

### iv. Plaintiff's conspiracy claim fails as a matter of law.

15

The Sixth Circuit has defined a civil conspiracy under § 1983 as: an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  What must be shown is that there was a single plan, that the alleged coconspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.  *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  Conspiracy claims must be pled with a degree of specificity.  *Hamilton v. City of Romulus*, 409 Fed.Appx. 826, 835-36 (6th Cir. 2010).  Moreover, a plaintiff cannot succeed on a conspiracy claim pursuant to §1983 where there is no underlying constitutional violation that injured her.  *Wiley v. Oberlin Police Dept.*, 330 Fed.Appx. 524, 530 (6th Cir.2009).

Plaintiff's conspiracy claim fails as a matter of law.  The Second Amended Complaint's attempts to bolster allegations related to a conspiracy between Detective Carney and Nurse Moschell are futile because Plaintiff cannot establish an underlying constitutional violation.  For this reason alone, the Count IV conspiracy claim fails as a matter of law.

Furthermore, the undisputed evidence shows that Detective Carney had a brief and appropriate meeting with Nurse Moschell prior to conducting Plaintiff's interview.  During this meeting, Detective Carney obtained information regarding Plaintiff's pregnancy and that Plaintiff was of sound mind to speak with him.  Nurse Moschell was in the hospital room during the interview and made reasonable inquiries in an attempt to help locate the baby.  This evidence completely fails to establish a conspiracy between Detective Carney and Nurse Moschell, and for this additional reason the conspiracy claim fails and must be dismissed.

**2.      Detective Carney is entitled to Qualified Immunity**

16

Detective Carney is entitled to qualified immunity under § 1983 unless Plaintiff can establish that (1) he violated a constitutional right, and (2) the unlawfulness of his conduct "was clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 64 quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Determining whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. The Supreme Court has stressed that the "specificity" of the rule is "especially important in the Fourth Amendment context." *Wesby* at 64. The issue of whether or not a right is clearly established is a question of law, not fact. *Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997); *Garvie v. Jackson*, 845 F.2d 647 (6th Cir. 1988).

As shown above, Plaintiff has failed to establish any constitutional violation by Detective Carney. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For this reason alone, Detective Carney is entitled to qualified immunity under the first prong and the §1983 claims under Counts I, II, III, and IV must be dismissed.

Additionally, based upon the clearly established law, no reasonable officer under similar circumstances to that of Detective Carney would know that their actions would result in a

17

constitutional violation.  If a defendant relies on the defense of qualified immunity, the plaintiff must show that a defendant's probable-cause finding violated clearly established law. *Wesby* at 63.  In this fact-dependent context, that test will generally require the plaintiff to "identify a case where an officer acting under similar circumstances… was held to have violated the Fourth Amendment." *Id.* at 64. (internal citation omitted).  There is no clearly established law under the circumstances Detective Carney faced.  In fact, as established by the legal analysis and citations above, the law clearly demonstrates that Detective Carney's actions were constitutional. Therefore, Plaintiff cannot establish the second prong of qualified immunity, and as a result, Counts I, II, II, and IV must be dismissed.

> **B.      Detective Carney and the City of Warren are entitled to immunity under R.C.
> Chapter 2744 for state law claims.**

In addition to the federal claims above, Plaintiff's Second Amended Complaint includes state law claims against Detective Carney for malicious prosecution, intentional infliction of emotional distress, and conspiracy.  Plaintiff further attempts to bring these state law claims against the City of Warren under the theory of respondeat superior.  Finally, Plaintiff's Second Amended Complaint also includes a claim for indemnification. However, the indemnification of public employees is an operation of law and is not a viable cause of action to be pursued by third parties, therefore it requires no further discussion and should be dismissed as a matter of law. *See* R.C. 2744.07; *Ayers v. Cleveland*, 160 Ohio St.3d 288, 2020-Ohio-1047.

As established below, the City of Warren and Detective Carney are entitled to political subdivision immunity under R.C. Chapter 2744 on state law claims, warranting summary judgment for Defendants.  Furthermore, Plaintiff's claims are not supported by evidence and therefore fail on the merits.

    **1.**       **The City of Warren is entitled to Chapter 2744 immunity and Plaintiff cannot establish any exceptions.**

Chapter 2744 of the Ohio Revised Code, the Political Subdivision Tort Liability Act, provides a general grant of immunity to political subdivisions in actions seeking damages for injuries, death or loss to persons or property. *Theobald v. Board of Cnty. Comm'rs of Hamilton Cnty.*, 332 F.3d 414, 416 (6th Cir. 2003). The issue of whether a city is entitled to immunity is an issue of law that is particularly apt for resolution by summary judgment. *Trader v. Cleveland*, 8th Dist. No. 86227, 2006-Ohio-295, ¶ 10.

The Ohio Supreme Court has established a three-tiered analysis to determine whether a political subdivision is immune from tort liability. *Colbert v. Cleveland*, 99 Ohio St. 3d 215, 2003-Ohio-3319, ¶ 7; *Bush v Cleveland Mun. Sch. Dist.*, 8th Dist. No. 99612, 2013-Ohio-5420, ¶ 7. Under the first tier, pursuant to R.C. 2744.02 (A), political subdivisions are entitled to immunity when engaging in governmental functions or proprietary functions. As a municipal corporation, the City of Warren is unquestionably a political subdivision pursuant to R.C. 2744.01(F) engaging in law enforcement activities that are clearly governmental functions. R.C. 2744.01 (C)(2)(a), (b), (i).  Accordingly, the first tier of the analysis has been satisfied, and Warren is entitled to the general grant of immunity provided by R.C. 2744.02(A)(1).

Under the second tier of the analysis, a political subdivision's blanket immunity under R.C. 2744.02 (A)(1) is subject to five very limited exceptions listed at R.C. 2744.02(B). *Howard v. Miami Twp. Fire Div.*, 119 Ohio St. 3d. 1, 2008-Ohio-2792, ¶ 18. Once immunity is asserted, the plaintiff has the burden of establishing that one of these narrowly construed immunity exceptions applies. *Sims v. Cleveland*, 2009-Ohio-4722, ¶ 15 (8th Dist.); *Doe v. Dayton City Sch. Dist. Bd. of Educ.*, 738 N.E.2d 390, 392 (2nd Dist. 1999).  Plaintiff's claims are not causally related to a motor vehicle accident, a proprietary function, a roadway obstruction, or a physical defect on a

governmental building; nor does the Ohio Revised Code expressly impose liability upon Warren. R.C. 2744.02(B)(1)-(5). Thus, none of the exceptions apply.

Moreover, Ohio courts have consistently held that the exceptions to immunity under R.C. 2744.02(B)(1)–(5) relate only to negligence. Accordingly, political subdivisions are immune from intentional and other tort claims involving enhanced standards of misconduct beyond negligence. *Griffits v. Newburgh Heights*, 2009-Ohio-493, ¶¶ 26–27 (8th Dist.) (collecting cases). Plaintiff's Second Amended Complaint asserts state law claims for intentional infliction of emotional distress and malicious prosecution, claims which are premised upon conduct other than negligence. *Hubbard v. Canton City Bd. Of Education*, 97 Ohio St. 3d 451, 453 (2002); *Harris v. Sutton*, 2009-Ohio-4033, ¶ 15 (8th Dist.). Furthermore, there is no respondeat superior liability for an employee's actions when no exception to political subdivision immunity can be established. *McKee v. McCann*, 2017-Ohio-40712, ¶ 46 (8th Dist.)

Since no immunity exception applies, Warren is immune from liability on all state law claims asserted against it per R.C. Chapter 2744, including Count XIII - respondeat superior, and summary judgment must be entered for the municipality.

### 2. Detective Carney is entitled to Chapter 2744 immunity.

As an employee of a political subdivision, police officers are entitled to immunity under R.C. 2744.03 (A)(6) with certain limited exceptions. *Argabrite v. Neer*, 149 Ohio St.3d 349, 350 (2016). By its terms, R.C. 2744.03 (A)(6) operates as a presumption of immunity. *Cook v. Cincinnati*, 658 N.E.2d 814, 821 (1st Dist. 1995). As with the subdivision itself, this presumption may only be overcome by demonstrating that an exception to immunity applies. *M.B. v. Elyria City Bd. of Educ.*, 2006-Ohio-4533, ¶ 19 (9th Dist.).

The exceptions to immunity afforded to employees of political subdivisions are:

(a) The employee's acts or omissions were manifestly outside the scope

20

of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code. R.C. 2744.03 (A)(6).

None of these exceptions apply in this case.  The Second Amended Complaint concedes that Detective Carney was acting within the scope of his employment and "[f]actual assertions in pleadings…are considered judicial admissions conclusively binding on the party who made them." (ECF 97 at ¶ 18); *Kay v. Minacs Grp. (USA), Inc.*, 580 Fed. App'x 327, 331 (6th Cir. 2014). Therefore, the R.C. 2744.03 (A)(6)(a) exception does not apply. Nor does the R.C. 2744.03(A)(6)(c) exception apply, as no Revised Code provision expressly imposes civil liability under the circumstances of this case.

The exception under R.C. 2744.03 (A)(6)(b) is also inapplicable. There is no evidence that Detective Carney acted with malicious purpose, in bad faith, or in a wanton or reckless manner. For purposes of subdivision immunity, malicious purpose involves "the willfull and intentional design to do injury, or the intention or desire to harm another usually seriously, through conduct that is unlawful or unjustified." *Jacobs v. Ottawa Hills*, 159 F.Supp2d 693, 698 (N.D. Ohio 2001). Bad faith is the opposite of good faith, "generally implying or involving actual or constructive fraud or a design to mislead . . . [and] is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Id*.  Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances where there is a probability that harm will result." *Anderson v. Massillion*, 134 Ohio St.3d. 380, 2012-Ohio-5711, ¶ 33. Reckless conduct is characterized by a conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Id*. ¶ 34. Both reckless and wanton misconduct require that the

21

actor be conscious that his conduct will, in all probability, result in injury. *Id*. ¶¶ 33–34; *see also* *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 73–74 ("recklessness is a perverse disregard of a known risk").

As established above, Detective Carney did not act with the requisite level of mental culpability to establish maliciousness, bad faith, wanton or reckless conduct. Rather, Detective Carney acted appropriately and in good faith in furtherance of his duty to safeguard the public when he interviewed Plaintiff regarding the location of her baby and provided the prosecutor with all the information from the investigation.

Finally, federal and Ohio courts have held that where qualified immunity is established, an officer is also entitled to immunity under Ohio law. *Chappell v. City of Cleveland*, 585 F.3d 901, 914–16 (6th Cir. 2009); *Ewolski v. City of Brunswick*, 287 F.3d 492, 517 (6th Cir. 2002). As a result, Detective Carney is entitled to R.C. Chapter 2744 immunity.

### C.  Plaintiff's state law claims fail on the merits.

#### 1.  Plaintiff's malicious prosecution claim fails as a matter of law.

To maintain a state law claim for malicious prosecution, Plaintiff must demonstrate: (1) malice in instituting (or continuing) the prosecution, (2) lack of probable cause, and (3) termination of the action in favor of the criminal defendant. *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732, 735 (1990).

Like Plaintiff's federal claims above, her state law claim for malicious prosecution fails due to the establishment of probable cause.  Under Ohio law, the finding of probable cause by a neutral magistrate in the underlying criminal case creates a legal presumption that probable cause existed if a bind over results, unless the preliminary hearing had perjured testimony or was otherwise significantly irregular. *Adamson v. May Co.*, 456 N.E. 1212, 1216-16 (8th Dist. 1982).

22

As established above, the evidence demonstrates that Detective Carney acted in good faith and with probable cause. It is undisputed that the full recorded interview with Plaintiff along with all photographic and documentary evidence of the investigation was submitted and available for Prosecutor Blair's review. Additionally, Plaintiff was represented by counsel at the preliminary hearing, and her attorney listened to Detective Carney's interview of Plaintiff and had a full opportunity to cross-examine him with respect to all available evidence at the preliminary hearing. Moreover, Ms. Timko conceded that Detective Carney did not present any factually false testimony. Thus, Plaintiff's state law claim for malicious prosecution fails as a matter of law.

2. **Detective Carney's conduct does not give rise to intentional infliction of emotional distress.**

In order to establish a claim for IIED, a plaintiff must prove that (1) defendant intended to cause emotional distress, or knew or should have known that his actions would result in serious emotional distress, (2) defendant's conduct was extreme and outrageous, (3) defendant's actions proximately caused plaintiff's psychiatric injury, and (4) the mental anguish suffered by plaintiff was serious and of the nature that "no reasonable man could be expected to endure it." *Pyle v. Pyle*, 11 Ohio App.3d 31, 34 (8th Dist. 1983) (quoting Restatement of Torts 2d 77, Section 46, comment j).

"Whether conduct is 'extreme and outrageous' is initially a question of law for the court." *Morrow v. Reminger & Reminger Co., L.P.A.*, 2009-Ohio-2665, ¶ 48 (10th Dist.) (quoting *Bell v. Ohio State Bd of Trustees*, 2007-Ohio-2790, ¶ 24 (10th Dist.). "Parties cannot generally be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform." *Mangelluzzi v. Morley*, 2015-Ohio-3143, ¶ 49 (8th Dist.) (citing *Morrow*, 2009-Ohio-2665, at ¶ 49). Claims for intentional infliction of emotional distress based upon lawful actions taken by police have consistently failed in the State of Ohio. *See, e.g., Knox v. Hetrick*,

23

2009-Ohio-1359 (8th Dist.); *Walls v. Toledo*, 2008-Ohio-4274 (6th Dist.); *Miller v. Xenia*, 2002-Ohio-1303 (2nd Dist.); *Durbin v. Ohio State Highway Patrol*, 83 Ohio App.3d 693 (10th Dist. 1992).

As established above, Plaintiff cannot establish a constitutional violation based on Detective Carney's actions. Accordingly, because Detective Carney's actions were lawful and reasonable, Plaintiff's claim for intentional infliction of emotional distress must be dismissed.

### 3. Plaintiff's state law conspiracy claim fails as a matter of law.

The elements to establish a civil conspiracy are (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. *Urbanek v. All State Home Mtge. Co.*, 2008-Ohio-4871, ¶ 19 (8th Dist.) (external citation omitted). While a party need not prove an express agreement to establish the malicious combination necessary for a civil conspiracy, it must at least show "a common understanding or design, even if tacit, to commit an unlawful act." *Woodward Const., Inc. v. For 1031 Summit Woods, L.L.C.*, 1st Dist. Hamilton, 2015-Ohio-975, ¶ 22 (external citation omitted). The most critical element of an Ohio state law civil conspiracy claim is the requirement for an underlying unlawful act, independent of the conspiracy itself. *Roark v. Rydell*, 2007-Ohio-6873, ¶ 55 (citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998). "The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *William*s, 83 Ohio St.3d at 475.

"An underlying tort is necessary to give rise to a cause of action for conspiracy." *Stiles v. Chrysler Motors Corp.,* 6th Dist. Lucas, 89 Ohio App.3d 256, 266 (1993*).* As established above, the undisputed evidence shows that Detective Carney had a brief and appropriate meeting with Nurse Moschell prior to conducting Plaintiff's interview. During this meeting, Detective Carney

24

obtained information regarding Plaintiff's pregnancy and that Plaintiff was of sound mind to speak with him.  Nurse Moschell was in the hospital room during the interview and made reasonable inquiries in an attempt to help locate the baby. This evidence completely fails to establish a conspiracy between Detective Carney and Nurse Moschell, and as addressed above, Plaintiff's remaining state law claims fail as a matter of law.  Therefore, Plaintiff cannot maintain her claim for civil conspiracy under state law and it should be dismissed.

## V.      CONCLUSION

Based upon the foregoing, Plaintiff's claims against the City of Warren and Detective Nicholas Carney fail as a matter of law.  Therefore, summary judgment is appropriate, and all claims stated against these Defendants should be dismissed.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/ Jillian Eckart*
JOHN D. PINZONE (0075279)
JILLIAN ECKART (0088770)
ZACHARY W. ANDERSON (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:    jpinzone@mrrlaw.com
               jeckart@mrrlaw.com
               zanderson@mrrlaw.com

*Counsel for Defendant City of Warren, Ohio and Nicholas Carney*

25