



**EXHIBIT**

**O**

# CASE NO. 4:25-CV-00049

# BRITTANY WATTS

# V.

# BON SECOURS MERCY HEALTH, ET AL.

## DEPONENT:

## TRACI TIMKO

## DATE:

## MARCH 25, 2026

✉ schedule@yourdepos.com

📞 866.800.7031



www.yourdepos.com

that isn't a fact pattern that was in front of me.
For my fact pattern --

BY MR. KASSON:

Q. Right.

A. -- that's correct.

Q. You recall a coroner testifying that the difference between a fetus and a baby is the -- if the baby is born alive, it's a baby, from the coroner's perspective. It's a fetus if it's not born alive.

MS. RICKERT: Objection to foundation.

THE WITNESS: Yes. Yes.

BY MR. KASSON:

Q. That was his view. And it's fair to say whether it was a corpse that that was chargeable or not, there were differing views in the City of Warren between the prosecutor, the judge, and you?

MS. RICKERT: Objection to form and foundation.

THE WITNESS: Differing opinions on whether or not this constituted abuse of corpse?

BY MR. KASSON:

Q. Yes.

A. So yes.

Q. Right.

A. Yes.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

BY MR. KASSON:

Q. And Julia was right. It was a compound question.

A. Yeah.

Q. Let's just break it down.

A. Yeah. Okay.

Q. The viability, Detective Carney told you that?

A. Detective Carney told me that Dr. Khavari told him that.

Q. Right.

A. Yes.

Q. Carney knew before he met with the prosecutor and made the decision to charge her the fetus was not viable, fair?

A. I believe so.

Q. Okay. And then at the probable cause hearing, you put the coroner on to testify to that, right?

A. Yes.

Q. If I recall correctly, the coroner by that time had Brittany's medical records?

A. Yes.

Q. And you actually used those medical records in Brittany's defense --

A. Yes.

Q. -- at the probable cause hearing, correct?

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

A.   Yes.

Q.   Was there anything at the probable cause hearing that the prosecution used with respect to Brittany's medical history to establish probable cause?

MS. RICKERT:  Objection to the form of the question.

THE WITNESS:  Yeah.  Not that I recall, but I cannot swear to that.

BY MR. KASSON:

Q.   Sure.

A.   Yeah.

Q.   Other than the fact she was pregnant?

A.   Correct.  Yes.  Yeah.  I don't -- yes.  I don't recall anything --

Q.   Right.

A.   -- beyond that.

Q.   Did anybody from the hospital testify at the probable cause hearing?

A.   No.

Q.   Did anybody from the hospital come to the probable cause hearing?

A.   Not that I'm aware of.  But there were quite a few people in the courtroom.

Q.   Sure.

A.   So I don't know who was who.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

MR. KASSON: So this is muted because it's a -
- the reverberation.

THE WITNESS: Oh, okay. I just saw the mute thing up there in my view.

MR. KASSON: But you guys can hear her, can't you?

THE WITNESS: Can you hear me?

MS. RICKERT: Yes.

THE WITNESS: Okay.

MR. KASSON: We muted one of the things, so it appears muted on the screen.

THE WITNESS: Okay. Okay. That's perfect.

BY MR. KASSON:

**Q. Have you told me everything you remember Brittany actually said about the three days at the hospital?**

A. Everything that I can remember at this point, yes.

**Q. Okay.**

A. There certainly could be more, but that's all I remember right now.

**Q. Did you have any involvement in Brittany's -- what do they call that? GoFundMe Page?**

A. Yes.

**Q. All right. Tell me about that.**

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

A.   It -- someone else wrote it, but -- and I ran it through an e-mail account.  So like I said, the -- the e-mail account is one I set up.  Nothing came to me, near me, around me.  It all went through her, but yes.  It was through --

Q.   Who wrote it?

A.   Friend of mine.

Q.   Okay.

A.   Yeah.

Q.   Who was that?

A.   Melissa Dinsio.

Q.   And what was her relationship to Brittany?

A.   Just very interested in the case.

Q.   Okay.

A.   Didn't know Brittany personally.

Q.   Is she a lawyer or just --

A.   She is.

Q.   Okay.  And then -- and how did she learn about the case?  Through you or talking to Brittany?

A.   In media and -- yeah.

Q.   Okay.  Fair enough.  I think that it was close to quarter of a million dollars that came in that account.  Did it all go to Brittany or did it go anywhere else?

A.   It all went to Brittany.  Yeah.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

A. So there was one reporter that was there. That's how it started.

Q. Okay. Did you have any contact with anybody at the hospital?

A. No.

Q. Did you speak to anybody at the hospital?

A. No.

Q. Okay. Do you recall -- other than police saying, we got a call from the hospital, do you recall any of the information from the police calls being entered into evidence to the probable cause?

A. Say that again?

Q. Sure. The information in the police calls -- the two police calls -- other than the fact that the hospital had called and met -- referenced what occurred, was any of the other information that the hospital employees gave in that entered into evidence at the 911, or is that the probable cause hearing?

A. I cannot be certain as to whether -- it seems to me, but maybe not, that Carney referenced a conversation with Connie Moschell during the hearing about viability maybe. But other than that, no. But I -- I believe he mentioned her name during the hearing, but I can't swear to that.

Q. Other than the fact that the fetus wasn't

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

viable, can you recall anything else that occurred at the hospital coming into evidence at the probable cause hearing?

A. No.

Q. Okay. And do you know whether, when Carney took it to the prosecutor and said, hey, should I prosecute this? Whether the prosecutor even heard the call or the interview that occurred at the hospital?

MS. RICKERT: Objection to foundation.

THE WITNESS: I don't know that. Yes, I -- I don't have that information.

BY MR. KASSON:

Q. But your take from the prosecutors is they had an emotional reaction to the baby in the toilet and that kind of drove them?

A. Ultimately, yes. I mean, I -- I don't want to oversimplify it. I -- I think --

Q. Sure.

A. I think that abuse of a corpse had language that on its face could say, this looks like it applies, and -- and go with it. I think the fact that, when presented with contrary information that I was able to provide, the pictures had an emotional impact to say, hey, we're not backing out on it. Let the grand jury figure it out, basically.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Q.   Okay.  All right.  So you respect the prosecutors as professional?

A.   Yes.

Q.   You think that on its face, it could be abuse of a corpse, but when you gave them information that maybe suggested it wasn't, the emotional reaction from the toilet kept them from backing off?

A.   Correct.

Q.   Got it.

A.   Yes, that's right.

Q.   Got it.

THE REPORTER:  I hate to interrupt.  Do -- are we expecting a Renee Spence to join us?

MR. KASSON:  Maybe.

MS. RICKERT:  Oh.  Yes.

MR. KASSON:  Let her in.  Let her in.

THE REPORTER:  Sorry.

MR. KASSON:  It's all right.

BY MR. KASSON:

Q.   Did the prosecutors ever tell you when anybody from the hospital came and talked to them?

A.   They didn't tell me that, no.

Q.   All right.  So let's go over and make sure I kind of -- I mean, I make these notes and I never look at them.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

murder, right?

A.   It -- it -- I get that concept.  It is this viability issue that -- that clouds everything.

Q.   I mean, we all have a viability limit, don't we?

A.   Well, it --

Q.   Right?

A.   Yeah.  But that's not the definition of viability.

MS. RICKERT:  Objection to foundation.

THE WITNESS:  No.

BY MR. KASSON:

Q.   Well, let's talk about it.  I mean, if -- a baby born with a congenital heart disease and they're only going to live six months --

A.   Uh-huh.

Q.   -- and they die after six months, I mean, is that a corpse?

A.   Oh, corpse, we have no idea because there's no definition for corpse.  It's a matter of whether or not it's a fetus still.  Like the corpse part, we don't -- we don't know because we don't have a definition of it.

Q.   Got it.  Okay.  Well, I mean, is -- if a baby is born with a congenital heart defect, we know it's not going to live very long, and the baby lives six months,

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 4:25-cv-00049-SL Doc #: 114-15 Filed: 08/07/26 11 of 16 PageID #: 6535
The Deposition of TRACI TIMKO, taken on March 25, 2026

97

sole decision maker with respect to issuing a charge of abuse of corpse against Brittany Watts?

A.    I believe that, yes.

Q.    And would that be based on your experience as a lawyer and prosecutor?

A.    Yes.

Q.    And I think you had kind of initially outlined the process that results in a felony charge.  And it sounded like initially the police officer or detective brings information to a prosecutor, correct?

A.    Yes.

Q.    And then based on that information, the prosecutor is the one that makes the decision to charge, correct?

A.    That's correct.

Q.    My understanding, though, is at that point, the prosecutor instructs the police officer or the detective to fill out and submit the complaint that the charge -- based on the charge that the prosecutor has determined?

A.    Yeah, that's correct.  The prosecutor is approving the charge for the detective to file.  Yes.

Q.    Got it.  All right.  Okay.  So I think you mentioned this is a sticky legal issue with this abuse of corpse charge, and it sounded like it intertwined

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

both some legal issues and certain understandings of medical determinations.  Would you agree with me about that?

A.   Abuse of corpse is a very vague statute that presents legal challenges, yes.

Q.   And you would agree with me that you wouldn't expect a detective such as Detective Carney to have an understanding as to those legal issues with respect to an abuse of corpse charge, correct?

MS. RICKERT:  Object to the form of the question.

THE WITNESS:  Yeah.  So as a general rule, that is something that would be up to the prosecutor to point out.  I think we're going there, but in Detective Carney's case, that's -- it -- it's an issue that he was familiar with from previous dealings.  At least from my perspective. I mean, he -- he -- he had --

BY MR. PINZONE:

Q.   Sure.

A.   We had handled another charge like that where those issues were brought up.

Q.   So he might have had some preexisting knowledge about the abuse of corpse charge, correct?

A.   Correct, yes.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

Case: 4:25-cv-00049-SL Doc #: 114-15 Filed: 08/07/26 13 of 16 PageID #: 6537

interview, express that she didn't want to talk to him anymore?

A.   No.

Q.   Would you agree with Brittany's characterization that they were being friendly towards her?

A.   Yeah.  That was the demeanor that was put forth to her, yes.  I agree with that.  The demeanor. Not -- yeah.  Yes.  Okay. --.

Q.   And I want to make sure I understand.  Was it your understanding that, from at least the police perspective and Detective Carney's perspective, they had received information that there was the potential that there was a live birth and a live baby prior to the interview?

MS. RICKERT:  Objection to foundation.

THE WITNESS:  Can you ask me that one more time?  I'm sorry.

BY MR. PINZONE:

Q.   Sure.  Let me break that up.  I think we had talked about non-viability with respect to, you know, nurse's knowledge regarding non-viability and what that means.  But for purposes of what information was passed to the police and Detective Carney, you would agree with me that the information they received was that there was

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

a potential of a live birth and they needed to locate the baby, correct?

A. So what I know -- what -- what Carney told me when we talked initially about this was that Connie had told him that the fetus wasn't viable. I am not precluding the possibility that there was a question as to whether the fetus took a breath, but -- if that's the question. But I believe that ultimately, Connie tells 911 as well as Carney that this fetus was not viable and not going to be alive -- I think was what Connie said to 911. So I -- I believed him to know that this was not a homicide investigation.

Q. Well, I think that based on some of my recollections, there was -- well, strike that. And you said you had gathered that from a -- two things, it sounds like. A conversation with Detective Carney and a 911 call?

A. Yes.

Q. Okay. Let's go over first, when did you have that conversation with Detective Carney?

A. There was a -- it was before the prelim. After the charges were filed, but before the prelim, but I don't have the exact date. I think we had at least two or possibly three conversations at different points about it. I reached out to him after -- after the

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

charge just to say, what do we have?  What are we looking at here?  And he had told me that Dr. Khavari told him and that Connie Moschell told him that the fetus wasn't viable.

Q.   And do you recall when that was in relation to the preliminary hearing?

A.   Before it is all I could -- before it.  But probably a week to two weeks before it.

Q.   When -- do you recall anything else from that conversation with Detective Carney?

A.   I -- I mean, Detective Carney -- it -- it -- his -- what he was telling me was, I'm not looking for anything here.  I'm fine with amending this to a misdemeanor.  So he was presenting this, I'm not looking to come after her hard perspective, and telling me not viable and -- and that's why it was the abuse of corpse charge in his view.

Q.   Okay.  So as we discussed before, Detective Carney ultimately doesn't have any authority as to determine whether these charges could be amended, correct?

A.   That's correct.

MS. RICKERT:  Objection to foundation.

BY MR. PINZONE:

Q.   And I take it that that's why you actually

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202


THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com

right.  I don't have any more questions for you.

THE WITNESS:  Okay.

REDIRECT EXAMINATION

BY MR. KASSON:

Q.   I'm going to ask three quick ones, all right?
I read the hearing.  You thought you did a good job in
the probable cause hearing, didn't you?

A.   Yes.

Q.   If you thought there was something from the
hospital recording or other evidence that Carney should
have testified to, you would've crossed him on it, if
you thought it would've made a difference, right?

A.   If I thought it would've made a difference in
a probable cause hearing, yes.  Yeah.

Q.   Second, what happened with Carney, that he
talked to the coroner, and said to you, "Coroner made me
think I made a mistake.  I'm going to go to the
prosecutor and get him to pull it," right?

A.   Yep.

Q.   He went to the prosecutor and it didn't get
pulled?

A.   Correct.

Q.   And he goes on the stand and he said, "I
didn't make a mistake"?

A.   Yeah.

The Ohio Reporting Company
312 Walnut St, Suite 1600
Cincinnati, OH 45202

THE OHIO
REPORTING COMPANY
YOUR PATH THROUGH LITIGATION

Phone: 1-866-800-7031
Fax: 502-584-0119
schedule@yourdepos.com
www.yourdepos.com