**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRITTANY WATTS | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-00049 |
| v. | ) | Hon. Judge Sara Lioi |
| BON SECOURS MERCY HEALTH, et al. | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS**

Plaintiff Brittany Watts alleges in part that Defendants committed medical malpractice, maliciously prosecuted her, and violated her constitutional rights in connection with her pregnancy loss. During expert discovery, the Hospital Defendants disclosed the opinions of a pathologist, Dr. Theonia Boyd. Many of Dr. Boyd's opinions were based on her own personal microscopic analysis of biological material—placenta and umbilical cord specimens—that were recovered from Plaintiff's body when she was hospitalized in 2023. Plaintiff was given no notice that any specimens from her body had been preserved and retained by Defendant St. Joseph Hospital, however, and these materials and their existence were *withheld from Plaintiff* during discovery in this case. Indeed, Plaintiff did not know these specimens were in Defendants' possession until Dr, Boyd's report and deposition, despite that Defendants were required under multiple discovery tools—Rule 26(a)(1)(A)(ii) and in response to Plaintiff's requests for production—to disclose to Plaintiff the existence of them (and any other physical evidence that may be in their possession). Instead, Defendants explicitly denied that they had any such specimens in their possession, custody, or control, stating in response to discovery request for all physical evidence relating to the case that "This Defendant does not have any document and/or

physical evidence responsive to this request." In these ways, Defendants violated their discovery obligations.

Dr. Boyd's opinions that rely in any way on her microscopic analysis of the undisclosed physical evidence should be excluded as a sanction for these discovery violations.[1] Plaintiff will be prejudiced if these opinions are not excluded. Though the evidence in question was collected from Plaintiff's own body, she did not have access to it to seek her own analysis during discovery. Such withholding and selective deploying of evidence is a very serious violation. For this reason, the Hospital Defendants also should be compelled to give a full accounting of their misstatements during discovery, a full accounting of exactly what physical evidence is in their possession, and how and by whom the slides provided to Dr. Boyd were prepared and transferred. Plaintiff also seeks fees and costs associated with preparing this motion.

## RELEVANT FACTUAL BACKGROUND

The Hospital Defendants made their initial disclosures in April 2025. The disclosure of physical evidence that may be relied upon to defend the case is supposed to be automatic under Rule 26(a)(1)(A)(ii), which requires disclosure of:

> a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

But the Hospital Defendants did not disclose the existence of any physical evidence. Plaintiff then propounded requests for production on Defendant Mercy Health, and Defendant responded on July 17, 2025.

> **Request for Production Number 19**: All physical evidence relating to any of the allegations in Plaintiff's Complaint or any of Defendants' defenses to Plaintiff's Complaint"

[1] Plaintiff will present additional arguments to exclude opinions of Dr. Boyd under *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), at the time of pretrial filings.

> **Defendants' Response**: This Defendant does not have any document and/or physical evidence responsive to this request.

Ex. 1 (RFP Response) at Request No. 19.

Without updating their disclosures at any point to reveal the existence of this evidence, and after the deadline for Plaintiff to disclose her own experts had passed, the Hospital Defendants disclosed an expert report from Dr. Theonia Boyd, a pathologist, on May 28, 2026. Ex. 2 (Boyd Report). Shortly after Defendants disclosed Dr. Boyd's report, Plaintiff served a document subpoena seeking Documents and Communications relating to the civil case. Ex. 3 (Subpoena to Dr. Boyd). This would include any packaging, cover letters, and documents relating to chain of custody of the specimens. Hospital Defendants, on behalf of Dr. Boyd, responded to Plaintiff's subpoena, and said they would produce responsive documents, but did not produce any such documents. Ex. 4 (Subpoena Response). Hospital Defendants did produce one page of illegible handwritten notes presumably reflecting Dr. Boyd's analysis of the slides.

Until reviewing Dr. Boyd's report, Plaintiff was unaware that any pathology slides had been prepared and retained by St. Joseph. The only mention of physical specimens come from a pathology report that says the specimens were "received in buffered formalin," and then further identified as A1-A4. Ex. 5 (Pathology Report). They are not otherwise mentioned in the medical records or at all in the coroner's report. But even if they had been mentioned, Plaintiff would not have known these specimens were retained by Mercy Health, especially after the Hospital Defendants explicitly denied it during discovery. Moreover, until Dr. Boyd's deposition on August 11, 2026, Plaintiff was not certain the slides referenced in the report were actual physical specimens that had been provided to Dr. Boyd, as opposed to photos or a report.

Several of Dr. Boyd's opinions rely at least in part on her microscopic analysis of the pathology slides, including her conclusions about the umbilical cord, the placenta, and the

autopsy report. Ex. 2 (Dr. Boyd Report) at 2-4. Dr. Boyd confirmed as much during her deposition on August 11, 2026.[2] In her report, she made the observations and conclusions based on her microscopic analysis, such as:

- "Microscopically, aside from features related to fetal inflammation secondary to infection, there are no findings that would be seen with spontaneous cord tearing (rupture) such as ulceration, hemorrhage or pathologic cord narrowing (stricture)." Ex. 2 (Boyd Report) at 2.
- "As for the umbilical cord, umbilical cord rupture/transection/tearing without intentional instrument-assisted cutting is exceedingly rare and only occurs in equally rare circumstances where cord integrity is compromised by ulceration, extreme narrowing, or hemorrhage…. None of these findings were either described or visualized microscopically." *Id.*
- "The microscopic evaluation of the placenta showed no changes attributable to fetal death *in utero*." *Id.* at 3.
- "As for an autopsy diagnosis of cord hemorrhage, this is not described in the autopsy report nor the placenta description, and there is no microscopic cord evidence of hemorrhage in the placenta slides." *Id.* at 4

Dr. Boyd relies on these observations to support her broader conclusions about whether Ms. Watts's fetus died in utero and how the umbilical cord was severed. *Id.* at 2-4. Regarding the former, Dr. Boyd disagrees with the coroner who performed the autopsy, and opines that the fetus did not die in utero. As for the latter, Plaintiff must have cut the cord intentionally, Dr. Boyd reasons—a conclusion that Dr. Marshall Carpenter, an expert retained by Plaintiff, disagrees with, Ex. 6 (Carpenter Report) at 8—and that Plaintiff adamantly denies.

Plaintiff raised this issue to Defendants in an email on August 12, 2026. The parties exchanged emails and agreed to discuss the issue on the phone. The parties had a meet and confer on the phone on August 17, 2026, and reached impasse.

---

[2] Plaintiff has not yet received the transcript of Dr. Boyd's deposition, but can provide relevant citations if necessary in reply.

**ARGUMENT**

Under Rule 37(c)(1), if a party fails to provide information as required under Rules 26(a) or 26(e), "the defaulting party is not permitted to use that witness or information to supply evidence on a motion, at a hearing, or at trial. This preclusion sanction is automatic and self-executing unless the offending party can demonstrate that its failure was either 'substantially justified' or 'harmless.'" *Powell v. CBRE, Inc.*, No. 1:22-CV-496, 2026 WL 1791462, at *3 (S.D. Ohio June 23, 2026) (quoting Fed. R. Civ. P. 37 (c)(1) and citing *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004)). The burden is on the defaulting party to explain its failure to disclose. *See U.S. ex rel. Tennessee Valley Auth. v. 1.72 Acres of Land In Tennessee*, 821 F.3d 742, 752 (6th Cir. 2016). "Beyond preclusion, Rule 37(c)(1) grants courts the discretion to impose additional or alternative sanctions, including an order requiring the non-compliant party to pay the reasonable expenses and attorney's fees caused by the failure." *Powell*, 2026 WL 1791462, at *3.

To evaluate whether Defendants' failure to disclose the existence of the physical specimens is "substantially justified" or "harmless," Courts consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 396-97 (4th Cir.2014)).

For instance, the Sixth Circuit has held that "[e]xamples when it may be appropriate to permit the use of such evidence include: 'the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the

requirement to make disclosures.'" *Vaughn v. City of Lebanon*, 18 F. App'x 252, 262-63 (6th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's note to the 1993 amendments). In other words, truly harmless or reasonable errors will not be sanctioned. Hospital Defendants have no such excuse here. The weight of these factors favors excluding Dr. Boyd's report.

**Surprise.** Plaintiff was surprised by Dr. Boyd's microscopic analysis of "Pathology slides provided by Mercy Health" because Mercy Health represented in its response to Plaintiff's requests for production that it had no physical materials. Ex. 1 (RFP Response) at Response 19. Plaintiff was entitled to rely upon Defendants representations and thus no reason to believe these slides existed or to inquire about them specifically.

**Prejudice/Inability to cure.** Hospital Defendants' concealment of these materials prejudices Plaintiff in a number of ways. For one, Plaintiff had no access to, or awareness of, these physical specimens or slides when she identified and disclosed her experts. By the time she learned of the materials, it was too late for her to make any use of them. The case management order allowed Plaintiff to disclose experts, and then Defendants to disclose rebuttals. ECF No. 69 at 1-2. The case management order does not contemplate that Plaintiff would be allowed to disclose rebuttals to Defendants' experts. *Id.* Thus, disclosure of these physical materials was necessary during discovery and certainly before plaintiff's opening expert disclosures.

Even if Plaintiff were to receive the materials now, Plaintiff would need time to identify an expert, have the expert analyze the materials, and disclose a report. But Plaintiff's deadline to disclose experts passed in May 2026, ECF No. 69, and expert discovery is closed, *id.*, and this Court has been clear that no further extensions will be given, Text Order of August 17, 2026. Indeed, in its order granting in part and denying in part Plaintiff's motion for leave to file an amended complaint, this Court held that additional expert discovery compounds prejudice when

the expert deadline has passed. ECF No. 95 at 9; *see also Silitonga v. Kentucky State Univ.*, No. 3:16-CV-29-REW-EBA, 2018 WL 3969951, at *3 (E.D. Ky. Aug. 20, 2018) ("Reopening discovery, at this late stage, would invite dilatory tactics and discovery abuse and do nothing to 'secure the just, speedy, and inexpensive determination' of this case.") (citations and quotation marks omitted); *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *4 (E.D. Ky. May 25, 2017), *objections overruled sub nom. EQT Prod. Co. v. Magnum Hunter Prod. Co.*, No. 5:16-CV-150-JMH, 2017 WL 4974782 (E.D. Ky. July 19, 2017) ("if the nondisclosure would require significant compromise in the status and schedule of a case, or would require consequential management in terms of discovery costs, burdens, and sequence, then the failure to disclose has indeed caused harm beyond the unilateral curative powers of any party").

In addition, Defendants produced no documents relating to the chain of custody of these physical materials, and therefore there are no guarantees that the chain of custody has been preserved.

**Importance.** The analysis into the importance of the withheld materials can cut both ways: the more important the evidence, the greater the impact on the defaulting party of excluding it, but also the greater the prejudice to the non-defaulting party. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019). Assuming for the sake of argument that the evidence is important to Defendants, it is important to Plaintiff, too, since she needs to be able to rebut it. But Plaintiff is then doubly prejudiced, because she does not have the chance to analyze it.

**Non-Disclosing Party's Explanation.** The inquiry into Defendants' explanation is the one factor "that speaks directly to whether [Defendants'] untimely disclosures were

'substantially justified.'" *Silitonga v. Kentucky State Univ.*, No. 3:16-CV-29-REW-EBA, 2018 WL 3969951, at *4 (E.D. Ky. Aug. 20, 2018) (alteration in original) (citation omitted). Hospital Defendants offer no explanation for their failure to disclose this evidence other than to say that they are "specimens," and "not documents," and "can't be produced." Ex. 7 (Email Correspondence). Of course, this is inaccurate, as Rule 26 requires Defendants to describe physical evidence and where it is stored, and physical evidence is routinely produced and inspected in cases as a matter of course.

Hospital Defendants' only other explanations are to divert the blame to Plaintiff for not asking for the materials specifically. But Hospital Defendants represented in response to Plaintiff's request for production that they did not have any physical evidence in their possession or control. Ex. 1 (RFP Response) at Response 19. They then provided physical evidence collected from Plaintiff's own body during the course of medical treatment to a third party with no notice to Plaintiff. Defense counsel attempts to excuse this course of conduct by asserting that the specimens used for the slides were referenced somewhere in the 1,200+ pages of Plaintiff's medical records. But a mention in the documents that specimens existed at one time would not relieve Defendants of their discovery obligations with respect to this physical evidence, and it certainly could not justify representing in a discovery response that they had no physical specimens. Rule 37(a)(4) is clear that an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." And in this case, Defendants were worse than evasive; they explicitly misled Plaintiff.

Defense counsel further contends that Plaintiff should have known that any specimens collected by the Hospital were retained because Plaintiff sent them a preservation letter demanding retention. But these specimens were collected on September 23, 2023, and Plaintiff

sent her preservation letter on August 2, 2024. ECF No. 66-1 (180-Day Letter). Plaintiff did not know the Hospital's retention policy for physical specimens, and had no reason to think the Hospital still had them once the Hospital told Plaintiff it did not have them.

Any argument that it was Plaintiff's fault for not sussing out that these materials still exist despite Defendants' claims to the contrary flips the discovery rules on their head. "Rule 26 puts the burden on the party intending to present a document to notify the other party of its intent to do so." *Johnson v. United Parcel Serv., Inc.*, 236 F.R.D. 376, 378 (E.D. Tenn. 2006). The fact that the material was one mentioned in the medical records "does not excuse [Defendant's] failure to disclose….[Plaintiff] is not required to sift through every document in its possession that might possibly be relevant to [Defendant's] claims and assume they all will be presented at trial." *Id*. at 378. Indeed, "[o]ur system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case." *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428–29 (6th Cir. 1996).

Here, the Hospital Defendants hid the ball and are now saying Plaintiff is to blame for not knowing that she needed to go looking for what they told her they did not have. They denied Plaintiff an opportunity to have physical evidence analyzed by her own experts. The fact that this physical evidence was biological material collected from her own body and then shipped off to a doctor retained by Defendants, without a clear chain of custody, after they told her physical evidence did not exist, makes this situation much worse.

Thus, the weight of the five factors clearly favor a sanction. Barring Dr. Boyd's opinions that rely in part on microscopic evidence as described above is reasonable, and the minimum sanction that should be imposed for the Hospital Defendants' conduct in discovery. Exclusion is

the most appropriate remedy considering that expert discovery is closed. *Johnson v. United Parcel Serv., Inc.*, 236 F.R.D. 376, 378 (E.D. Tenn. 2006) (granting motion for sanctions to exclude evidence that was not timely disclosed); *In re ClassicStar Mare Lease Litig.*, No. 5:06-CV-243-JMH, 2012 WL 1135771, at *1 (E.D. Ky. Apr. 4, 2012) ("In this way, the Court can prevent frustration of the discovery process by giving the frustrated party or parties the benefit of an inference that the deposition would have yielded evidence favorable to its position—or at least unfavorable to that defendant."); *Silitonga*, 2018 WL 3969951, at *5 (noting that "Defendants untimely produced a swath of evidence and untimely disclosed certain witnesses"; finding the untimeliness neither substantially justified nor harmless; and holding that "the consequence should be and is the usual Rule 37 remedy: exclusion of the tardily-produced proof") (internal citations and quotation marks omitted); *see also EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017), objections overruled sub nom. *EQT Prod. Co. v. Magnum Hunter Prod. Co.*, No. 5:16-CV-150-JMH, 2017 WL 4974782 (E.D. Ky. July 19, 2017). As discussed above, any other potential sanction, such as reopening discovery and moving the trial date, is in and of itself a prejudice.

In addition, when the Hospital Defendants' entire conduct with regard to physical evidence is better understood, further sanctions could be warranted.[3] In the meantime, they should be compelled to explain and to back up their explanations with documentation.

[3] Plaintiff has reason to believe this is not the only evidence that Medical Defendants failed to disclose. As she will explain in her response to Medical Defendants' motion for summary judgment, Defendants attached to their summary judgment motion a declaration from Defendant Khavari in which she states that she had reviewed "surgery documents" that reminded her that she was in surgery on one of the days Ms. Watts was in the hospital. ECF No. 114-10 at ¶¶ 2-3. Any such "surgery documents" are responsive to Plaintiff's document requests, but none have been produced.

Finally, Plaintiff requests that this Court enter an order awarding her fees and costs under 37(c)(1)(A) for her time and resources spent addressing this issue and preparing this motion.

**CONCLUSION**

WHEREFORE, Plaintiff requests that this Court enter an order barring those portions of Dr. Boyd's report and testimony that rely on her microscopy; awarding Plaintiff fees and costs for meeting and conferring about this issue, and in preparing and filing this motion; and granting any other relief the Court deems just and proper.

Respectfully Submitted,

/s/ Rachel Brady
*One of Plaintiff's Attorneys*

Jon Loevy
Renee Spence
Julia Rickert*
Rachel Brady*
Theresa Kleinhaus*
Loevy + Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
P: 312-243-5900
F: 312-243-5902
E: brady@loevy.com
*Admitted *Pro Hac Vice*